**SILVERMANACAMPORA LLP**
Attorneys for Kenneth P. Silverman, Esq.,
  the Chapter 11 Trustee
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Ronald J. Friedman, Esq.
Brian Powers, Esq.

Hearing Date: **December 19, 2019**
Time: **2:00 p.m.**

Objections Due: **December 12, 2019**
Time: **4:00 p.m.**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In re:

305 EAST 61ST STREET GROUP, LLC,

Chapter 11
Case No. 19-11911 (SHL)

Debtor.
--------------------------------------------------------x

**NOTICE OF HEARING ON
TRUSTEE'S MOTION FOR ENTRY
OF A FINAL ORDER (1) AUTHORIZING THE TRUSTEE
TO OBTAIN POST-PETITION FINANCING FROM LAZARUS 5, LLC
ON, *INTER ALIA*, A SENIOR, FIRST PRIORITY SECURED AND
SUPERPRIORITY ADMINISTRATIVE BASIS AND (2) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE**, that upon the annexed motion (the "**Motion**"),[1] of Kenneth P.

Silverman, Esq., the chapter 11 trustee (the "**Trustee**") of 305 East 61st Street Group, LLC (the

"**Debtor**"), by his counsel, SilvermanAcampora LLP, will move before the Honorable Sean H.

Lane, United States Bankruptcy Judge for the Southern District of New York, Alexander

Hamilton U.S. Custom House, One Bowling Green, Courtroom 701, New York, New York,

10004, on **December 19, 2019 at 2:00 p.m.** (the "**Hearing**"), or as soon thereafter as counsel can

be heard, seeking the entry of an order: (1) authorizing the Trustee, on behalf of the Debtor's

estate (as defined in the Bankruptcy Code) (the "**Estate**") to incur post-petition secured

indebtedness pursuant to that certain Senior Superpriority Post-Petition Loan and Security

Agreement with Lazarus 5, LLC and/or its nominee as Lender ("**Post-Petition Lender**");

(2) granting Post-Petition Lender a senior valid, perfected and first priority security interest and

---

[1] Capitalized terms used but not defined herein have the meanings given to them in the Motion.

lien, pursuant to 11 U.S.C. §§ 364(c) and (d), on, among other things, all of Debtor's pre- and post-petition now existing and after acquired, assets; and (3) granting related relief.

**PLEASE TAKE FURTHER NOTICE**, that objections, if any, to the relief sought in the Motion must be in writing, must conform to the Bankruptcy Rules and the Local Rules, must set forth the name of the objecting party, the basis for the objection and the specific grounds therefore, and must be filed electronically with the Bankruptcy Court in accordance with General Order M-399 (General Order M-399 and the User's Manual for the Electronic Case Filing System may be found at www.nysb.uscourts.gov, the official website for the Bankruptcy Court) by registered users of the Bankruptcy Court's case filing system, and by all other parties in interest on a disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with courtesy copies delivered directly to Chambers), and must be served upon: (i) counsel to the Trustee, SilvermanAcampora LLP, 100 Jericho Quadrangle, Suite 300, Jericho, New York, 11753, Attn: Ronald J. Friedman, Esq.; (ii) counsel to the Post-Petition Lender, Westerman Ball Ederer Miller Zucker & Sharfstein, LLP, 1201 RXR Plaza, Uniondale, New York 11556, Attn: Thomas Draghi, Esq and (iii) The Office of the United States Trustee, 201 Varick Street Suite 1006, New York, New York, 10014, Attn: Paul Schwartzberg, Esq., no later than **December 12, 2019 at 4:00 p.m.**

**PLEASE TAKE FURTHER NOTICE**, that the Hearing may be adjourned without further notice other than by announcement of such adjournment in open Court or by the filing of a notice of such adjournment on the Court's docket for the Debtors' lead case.

BPOWERS/2360905.1/010001

**PLEASE TAKE FURTHER NOTICE**, that you need not appear at the Hearing if you

do not object to the relief sought in the Motion.

Dated: Jericho, New York
     December 3, 2019

                 **SILVERMANACAMPORA LLP**
                 Counsel to Kenneth P. Silverman, Esq.,
                 the Chapter 11 Trustee


        By:     *s/Ronald J. Friedman*
                 Ronald J. Friedman
                 A Member of the Firm
                 100 Jericho Quadrangle, Suite 300
                 Jericho, NY 11753
                 (516) 479-6300

BPOWERS/2360905.1/010001

**SILVERMANACAMPORA LLP**
Attorneys for the Chapter 11 Trustee
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Ronald J. Friedman
Brian Powers

*Attorneys for the Chapter 11 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In re:

305 EAST 61ST STREET GROUP, LLC,                    Chapter 11
                                                    Case No. 19-11911 (SHL)

                                        Debtor.
--------------------------------------------------------x

### TRUSTEE'S MOTION FOR ENTRY OF A FINAL ORDER (1) AUTHORIZING THE TRUSTEE TO OBTAIN POST-PETITION FINANCING FROM LAZARUS 5, LLC ON, *INTER ALIA*, A SENIOR, FIRST PRIORITY SECURED AND SUPERPRIORITY ADMINISTRATIVE BASIS AND (2) GRANTING RELATED RELIEF

Kenneth P. Silverman, Esq., the chapter 11 operating trustee (the "**Trustee**") of 305 East

61st Street Group, LLC (the "**Debtor**" or "**Borrower**"), submits this motion (the "**Motion**")

seeking the entry of a _final_ order[1] approving the terms and conditions under which the Borrower

may obtain post-petition financing and related relief, and in support of the Motion, respectfully

sets forth and represents as follows:

### PRELIMINARY STATEMENT

1.      As the Court knows, it is a key imperative of this case that the secured claim

asserted by 305 East 61st Lender, LLC ("**Existing Lender**") be addressed as soon as practicable.

On August 28, 2019, Existing Lender filed a proof of claim asserting a first priority secured

claim in the amount of $39,132,878.14, including outstanding principal in the amount of

---

[1] Based on the particular circumstances of this case, the Trustee is not requesting interim relief, but rather seeks to proceed directly to a final hearing on the Motion.

$26,947,264.12 as of the date the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code on June 10, 2019 (the "**Filing Date**"), which claim was assigned no. 5 (the "**Existing Lender's Claim**").  Pursuant to the Existing Lender's Claim, the Existing Lender is claiming it is entitled to default interest at the rate of 24% per annum on the principal balance of its claim, which the Existing Lender calculates to equal approximately $18,000 per diem. (Existing Lender's Claim at Schedule 1).  Upon information and belief, the Trustee estimates that the Existing Lender's claim should be, at most, approximately $43 million as of November 25, 2019.[2]

2.      The Trustee was able to secure post-petition financing ("**Post-Petition Financing**") in the amount of up to $45 Million from Lazarus 5, LLC ("**Lender**") to: (a) satisfy the allowed amount of the Existing Lender's Claims,[3] (b) pay the administrative expenses of the chapter 11 case in accordance with an agreed upon budget, and (c) pay certain other agreed upon costs and expenses, on terms that are extremely fair, reasonable and beneficial to the Debtor's estate.  As discussed more fully below, the proposed Post-Petition Financing does not require the Trustee to make any monthly payments to the Lender (it provides for the accrual of interest until maturity), does not include any commitment fees, exit fees, or prepayment penalties, and

---

[2] The last payoff letter provided by the Existing Lender was dated July 19, 2019 and claimed a payoff amount of $40,090,408.18 through July 31, 2019.  (Status Report, defined below, at Exhibit A; ECF No. 68).  The Trustee has requested a more up to date payoff letter from the Existing Lender but has not yet received it.  Through November 25, 2019, the Debtor had been in bankruptcy for 168 days.  If you multiply the 168 days by the asserted per diem interest and other charges of $18,194.81, the amount totals $3,056,728.08.  If you add that sum to the $39,132,878.14 claimed due as of the Filing Date, the total is $42,189,606.22.  Thus, even assuming the Existing Lender seeks and is awarded additional post-petition sums above the asserted per diem amounts for interest, late charges, etc., as part of its payoff amount, the Trustee believes the proposed Post-Petition Financing is more than sufficient to fully satisfy any such allowed claim.

[3] The Trustee is aware that there are disputes between the parties with respect to the amount asserted by the Existing Lender as due and owing with respect to the Existing Loans.  As set forth below, the Trustee intends to use a substantial portion of the Post-Petition Financing to pay the undisputed portion of the Existing Lender's Claim (estimated to be approximately $33,493,917.80), and escrow the disputed portion (estimated, at most, to be approximately $10,043,281.70) (the "**Disputed Pre-Maturity Default Interest and Other Charges Amount**") pending a determination of the Existing Lender's claims.

BPOWERS/2360171.1/010001

provides for a fixed rate of interest on the total unpaid principal balance of the post-petition loan at a rate per annum equal to 8.34%. This results in a substantial reduction of the per diem interest rate from approximately $18,000 to $10,425.00, a savings of approximately 42%.[4] The meaningful savings and other benefits to the Debtor's estate provide compelling support and justification for the Court's approval of the proposed Post-Petition Financing.

3. The proposed Post-Petition Financing will be implemented through, *inter alia*, (a) that certain Senior Superpriority Post-Petition Loan and Security Agreement, in substantially the form attached hereto as **Exhibit A** (the "**Financing Agreement**"),[5] between Borrower and the Lender, and (b) proposed final financing order, substantially in the form attached hereto as **Exhibit B** (the "**Final Financing Order**"). The Trustee negotiated the proposed Financing Agreement with the Lender in good faith and at arm's-length, and believes that the terms of the Financing Agreement are competitive and the best that could be obtained under the totality of the circumstances.[6] For these reasons, and as more fully explained below, the Trustee requests that the Court grant the relief requested herein.

## JURISDICTION AND VENUE

4. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§157 and 1334, and the "Amended Standing Order of Reference" of the United States District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.).

5. This is a core proceeding pursuant to 28 U.S.C. §157(b).

---

[4] The per diem interest on $45 million calculated at the fixed rate of 8.34% per annum, equals $3,753,000.00 per annum or $10,425.00 per diem ($45 million x .0834 = $3,753,000; $3,753,000 ÷ 360 days = $10,425.00). If you divide $10,425.00 by $18,000, it equals approximately 58%, resulting in a savings of approximately 42%.

[5] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Financing Agreement.

[6] Prior to the filing of this Motion, the Trustee has been engaged with various parties, including the Lender and the Existing Lender, with respect to the resolution of certain outstanding issues in this case. Accordingly, the Trustee reserves the right to amend the Financing Agreement and/or Final Financing Order in connection therewith, including to, among other things, provide for the assignment of the Existing Lender's mortgage to the Lender.

6.      Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

7.      The statutory predicates for the relief requested herein are Bankruptcy Code §§105, 361, 362, 363 and 364 of title 11, United States Code (the "**Bankruptcy Code**"), Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 4001-2 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**").

## SUMMARY OF RELIEF REQUESTED

8.      By this Motion, the Trustee requests entry of the Final Financing Order, (a) authorizing the Trustee to obtain the Post-Petition Financing from the Lender pursuant to the terms of the Financing Agreement; and (b) granting related relief, including vacating and modifying the automatic stay imposed by Bankruptcy Code §362 to the extent necessary to implement and effectuate the terms and provisions of any approved Final Financing Order.  In accordance with Bankruptcy Rule 4001(c)(1)(B) and Local Rule 4001-2. The following is a summary of material provisions of the Financing Agreement:

   a.   <u>Amount of Credit</u>:    Lender has agreed to provide a senior secured superpriority post-petition financing loan to the Debtor in the amount of up to Forty-Five Million Dollars ($45,000,000.00).  Interest on the total unpaid principal balance of the Loan will accrue at a rate per annum equal to eight and 34/100 percent (8.34%).  Interest will accrue on the total unpaid principal balance of the Loan after the occurrence of an Event of Default at a rate equal to the lesser of either (i) eighteen and 78/100 percent (18.78%) per annum for any Events of Default occurring and continuing prior to the Maturity Date or twenty-four percent (24%) at any time following the Maturity Date, or (ii) the highest rate permitted by applicable laws for a default in payment  Financing Agreement at §§2.1, 3.1, 3.2.

   b.   <u>Use of Proceeds</u>:     The Loan proceeds shall be used solely (1) to satisfy the amounts outstanding on the Existing Loans (defined below),[7] (2) to pay the

---

[7]   As previously mentioned, the Trustee is aware that there are disputes between the parties with respect to the amount asserted by the Existing Lender as due and owing with respect to the Existing Loans.  The Financing Agreement contemplates the Trustee depositing the Disputed Pre-Maturity Default Interest and Other Charges Amount into a segregated account pending a determination of the Existing Lender's claims. Financing Agreement at §2.2.

BPOWERS/2360171.1/010001

administrative expenses of the Chapter 11 Case in accordance with the Budget, and (3) to pay Costs and Expenses. For the avoidance of doubt, the portion of the Existing Loans representing the Disputed Pre-Maturity Default Interest shall be deemed satisfied when the Borrower deposits proceeds of the Loan in the amount of the Disputed Pre-Maturity Default Interest into a segregated interest-bearing account held by the Trustee or his counsel, or as otherwise ordered by the Bankruptcy Court, pending the entry of a court order that either (a) approves a settlement between the Borrower and Existing Lender, or (b) determines the entitlements of Existing Lender and Borrower to such funds.    Financing Agreement at §2.2.

c.    <u>Funding Reserve</u>:    Upon execution of the Financing Agreement, Lender shall deliver the sum of Two Hundred Fifty Thousand Dollars and 00/100 ($250,000.00) (the **"Funding Reserve"**) to SilvermanAcampora, LLP, counsel to the Trustee (**"Escrow Agent"**), to be held in escrow by Escrow Agent in a segregated account. At Closing, the Funding Reserve will constitute a portion of the Carve-Out for Professional Fees and Expenses described in Section 5.2 of the Financing Agreement.    Except as otherwise set forth in Section 14.17 of the Financing Agreement concerning Liquidated Damages, in the event the Closing does not take place by January 15, 2019 (or such other date as may be agreed to in writing by the Parties, the **"Termination Date"**), time being of the essence, upon Lender's written request to Escrow Agent, Escrow Agent shall immediately return the Funding Reserve together with any accrued interest to Lender.    Financing Agreement §2.3.

d.    <u>Security</u>:    The Loan shall be secured, (i) pursuant to Section 364(d) of the Bankruptcy Code, by a first priority valid, binding, fully perfected, non-avoidable continuing and enforceable security interest in and lien on all currently owned or hereafter acquired assets and property of the Debtor's estate (as defined in the Bankruptcy Code), real and personal; (ii) pursuant to Section 364(c)(2) of the Bankruptcy Code, by a first priority valid, binding, fully perfected, non-avoidable continuing and enforceable security interest in and lien on all property of Debtor's estate that is not subject to any liens, after giving effect to the repayment of the Existing Loans, and (iii) pursuant to Section 364(c)(3), by a junior valid, binding, fully perfected, non-avoidable continuing and enforceable security interest in and lien on all property of the Debtor's estate that was subject to a valid and perfected lien on the Filing Date or subject to valid rights of setoff, to the extent the Bankruptcy Court determines that such liens and rights cannot be primed pursuant to Section 364(d).    In confirmation of the foregoing, as further security for the full and timely payment and performance of the Loan, Borrower hereby grants to Lender a mortgage, lien and security interest in and on all existing and after-acquired property of the Debtor's estate of any kind or nature, except for those arising under Chapter 5 of the Bankruptcy Code.    Lender's Liens are also subject to and subordinate of Carve-Out (described below).    Financing Agreement at §5.2(a) – (r); Final Financing Order at ¶6.

BPOWERS/2360171.1/010001

e.   Carve-Out.   The Carve-Out is comprised of the following: (i) All fees due to the Clerk of the Bankruptcy Court and the Office of the Unites States Trustee pursuant to 28 U.S.C. § 1930(a); (ii) Up to an amount of $1,250,000 to pay any allowed fees, expenses, or commissions incurred by the Trustee and/or any duly retained professionals of the Debtor's estate ("**Professional Fees and Expenses**"), *provided*, *however*, that nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement or compensation described above; and (iii) if Lender acquires the Property through a sale in the Chapter 11 Case, all agreed upon fees and expenses allowed by final order of the Bankruptcy Court of any broker(s) retained by the Trustee for the sale of the Property.  At Closing, the Funding Reserve will be released from escrow by the Escrow Agent and delivered to the Borrower to be included as part of the Loan Proceeds.  The Borrower shall place the Funding Reserve in a segregated account to be reserved for the payment of Professional Fees and Expenses and applied against the amount of the Carve-Out.  Financing Agreement §5.2; Final Financing Order at ¶23.

f.   Maturity Date: The Maturity Date is the date that is the earliest to occur of (i) seven (7) months from the date of the Closing (the "**Term**"), (ii) conversion of the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code, (iii) the effective date of an plan of reorganization or liquidation permitted under this Agreement, or (iv) any other termination or acceleration of the Loan in accordance with the Final Financing Order and Loan Documents or following an Event of Default under this Agreement. All obligations and liabilities of Borrower to Lender which remain outstanding or in existence on the Maturity Date shall be due and payable in full, in cash on the Maturity Date. Financing Agreement at §1.1(ii).

g.   Costs and Expenses.   All reasonable and documented fees, costs, expenses, and disbursements, including reasonable attorneys' fees, and any indemnifiable losses, incurred by the Lender in connection with the negotiation, preparation, documentation, administration and enforcement of this Agreement and the Loan, shall be due and payable by Debtor upon demand by Lender.  Provided no Event of Default has occurred, such costs, fees and expenses shall be payable from proceeds of the Loan in accordance with this Agreement.  Debtor shall be responsible for servicing fees, and reimbursement of Lender's and/or servicer's actual costs associated with enforcement of the Loan.  Financing Agreement §4.2.

h.   Optional Prepayment of Loan.  Debtor may, upon at least three (3) Business Days' notice to the Lender stating the proposed date and aggregate principal amount of the prepayment, prepay the outstanding principal amount of the Loan in whole or in part, together with (i) accrued interest to the date of such prepayment and any outstanding Costs and Expenses, without penalty.  Financing Agreement §4.3

i.   Mandatory Prepayment of Loan.   Debtor shall prepay outstanding amounts under

BPOWERS/2360171.1/010001

the Loan with one hundred percent (100%) of the proceeds from the sale or recovery of any Collateral (including the receipt of any tax refunds or insurance proceeds), or a casualty or condemnation with respect to the Property. Any sale of any portion of the Collateral shall be subject to Lender's prior written approval of such sale and the terms and conditions thereof. Any and all such prepayments from the sale or other recovery of any Collateral will be applied first to fund a cash collateral escrow account in an amount equal to the Carve Out Balance; second, to pay any accrued but unpaid fees of Lender and any Costs and Expenses; third, to pay accrued but unpaid interest on the Loan; and fourth, to repay the principal amount of the Loan; provided, however, that upon the occurrence of an Event of Default, such payments may be applied in any such order (with unpaid interest to be paid at the Default Rate) as Lender, in its sole discretion, elects following the funding of the Carve Out Balance. Financing Agreement §4.4.

j.   <u>Indemnity</u>. Debtor shall indemnify and hold harmless the Lender and its affiliates and each of their respective officers, directors, members, partners, employees, agents, advisors, attorneys, financing sources and representatives of each (each, an "**Indemnified Party**") from and against any and all claims, damages, losses, liabilities and expenses (including, without limitation, reasonable fees and disbursements to counsel, financial advisors and consultants), that may be incurred by or asserted or awarded against any Indemnified Party (including, without limitation, in connection with or relating to any investigation, litigation or proceeding or the preparation of any defense in connection therewith), in each case arising out of or in connection with or by reason of the Loan, the Loan Documents or any of the transactions contemplated thereby, or any actual or proposed use of the proceeds of the Loan, except to the extent such claim, damage, loss, liability or expense is found in a final judgment by a court of competent jurisdiction to have resulted from such Indemnified Party's gross negligence or willful misconduct. In the case of an investigation, litigation or other proceedings to which the indemnity in this paragraph applies, such indemnity shall be effective whether or not such investigation or proceeding is brought by the Borrower, any of their directors, security holders or creditors, an Indemnified Party or any other person, or an Indemnified Party is otherwise a party thereto and whether or not the transactions contemplated hereby are consummated. The Borrower further agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract, tort, or otherwise) to the Borrower, the Debtor's estate, the Debtor, or any of the Debtor's officers, directors, members, partners, employees, agents, advisors, attorneys and representatives or any of their security holders or creditors for or in connection with the transactions contemplated hereby, except for direct damages (as opposed to special, indirect, consequential or punitive damages (including, without limitation, any loss of profits, business or anticipated savings)) determined in a final non-appealable judgment by a court of competent jurisdiction to have resulted from such Indemnified Party's gross negligence or willful misconduct. Financing Agreement §4.6.

k.    <u>Sale Process</u>.    The Borrower shall meet the following milestones for the completion of the sale of the Property pursuant to section 363 of the Bankruptcy Code: (1) No later than January 17, 2019, the Bankruptcy Court shall have entered an order approving the bidding procedures and sale of the Property, in form and substance satisfactory to the Lender and expressly authorizing a credit bid by Lender and provide the Trustee with an option to select a stalking-horse bidder; (2) If there is more than one qualified bidder for the Property, no later than April 8, 2020 an auction for the Property shall be completed; (3) No later than April 22, 2020, the Bankruptcy Court shall have entered an order approving the sale of the Property to the winning bidder, in form and substance satisfactory to the Lender; and (4) No later than May 15, 2020, the sale of the Property shall have closed and the Borrower shall have made the mandatory prepayments from the proceeds thereof in accordance with Section 4.5.    Financing Agreement §7.27.

l.    <u>Default and Remedies</u>:    Usual and customary Event of Default provisions for financings of this type are set forth at §9 of the Financing Agreement.    *See* Financing Agreement at §§9.1(a) – (x).    At the option of the Lender and subject to the terms and conditions of the Final Financing Order, upon the occurrence of an Event of Default, the automatic stay shall be lifted without further notice to or action by the Bankruptcy Court to permit the Lender on such date or at any time thereafter: (a) To declare the entire unpaid principal of the Loan or any part thereof, all interest accrued thereon, all fees due hereunder and all other obligations of Borrower to Lender hereunder or under any other agreement, note or otherwise arising immediately due and payable without any further demand or notice; (b) To increase the interest rate on the Loan to the applicable default rate set forth herein, without notice; (c)To take possession of the Collateral and any records relating thereto; and/or (d) To enforce all liens and security interests and to exercise each and every right and remedy granted to it under (i) the Loan Documents, (ii) the Final Financing Order and (iii) under the Uniform Commercial Code and under any other applicable law or at equity.    Financing Agreement at §9.2; Final Financing Order at ¶17.

m.    <u>Liquidated Damages.</u>    Notwithstanding anything contained herein to the contrary, if after entry of the Final Financing Order the Debtor is ready, willing and able to Close but Lender fails or refuses to extend the Loan by the Termination Date for no reason other than Lender's sole failure or refusal to do so, the Trustee may direct the Escrow Agent in writing to remit the Funding Reserve to the Trustee as liquidated damages for, *inter alia*, the Trustee's costs and fees, including reasonable attorneys' fees, in negotiating this Agreement and moving for its approval.    Each of the Parties agrees that the Funding Reserve shall be the sole damages, rights and remedies the Trustee, the Debtor's creditors and/or estate shall have against the Lender arising out of or related to the Loan or the Financing Agreement.    Financing Agreement at §14.17.

## **BACKGROUND**

    BPOWERS/2360171.1/010001

9.       On the Filing Date, the Debtor commenced the Chapter 11 Case in this Court.

10.      The Debtor owns and, prior to the appointment of the Trustee, managed a real estate project involving a 10-story building located at 305 East 61st Street, New York, New York (the "**Building**"), a former warehouse which was purchased by the Debtor for conversion into a condominium (the "**Project**").   The Debtor is a New York limited liability company, whose members consist of 61 Prime, LLC ("**Prime**"), Little Hearts Marks Family II, LP ("**LHM**"), Thaddeus Pollack, and Onestone305, LLC.    The sole member of Prime is Jason Carter ("**Carter**").

11.      The acquisition of the Building (for a total of $40 million) was financed, in part, with a $20 million acquisition loan, and construction of the Project was financed, in part, by a $10 million construction loan.  The Debtor is currently indebted to the Existing Lender, as assignee of Popular Bank (f/k/a Banco Popular North America) ("**PB**"), in connection with three (3) loans made on or about June 8, 2017 by PB to the Borrower (collectively, the "**Existing Loans**"):

     a.      Acquisition loan (the "**Acquisition Loan**") (i) evidenced by that certain (i) *Secured Restated Promissory Note*, dated as of June 8, 2017, in the original principal amount of $20,000,000.00 (the "**Acquisition Loan Note**"), made by Borrower in favor of PB; and (ii) secured by that certain *Mortgage Extension, Modification and Security Agreement* (the "**Acquisition Mortgage**"), dated as of June 8, 2017, in the original principal amount of $20,000,000.00 encumbering the real property commonly known as 305-307 East 61ST Street, New York, New York (Block 1436; Lot 5) (including all improvements thereon, the "**Property**"), which Acquisition Mortgage was recorded in the City Register of the City of New York, County of New York (the "**Register**") on July 7, 2017 as CRFN 2017000250851; and that certain

     b.      Building loan (the "**Building Loan**") (i) evidenced by: (x) that certain *Building Loan Agreement*, dated as of June 8, 2017, in the original principal amount of up to $7,830,000.00 (the "**Building Loan Agreement**"), between Borrower and PB, and (y) that certain *Building Loan Note*, dated as of June 8, 2017, in the original principal amount of up to $7,830,000.00 (the "**Building Loan Note**"), made by Borrower in favor of PB; and (ii) secured by that certain *Building Loan*

9

*Mortgage and Security Agreement* (the "**Building Mortgage**"), dated as of June 8, 2017, in the original principal amount of $7,830,000.00 encumbering the Property, which Building Mortgage was recorded in the Register on July 7, 2017 as CRFN 2017000250852; and that certain

c.   Project loan (the "**Project Loan**"; and together with the Acquisition Loan and the Building Loan, collectively referred to herein as, the "**Loans**") (i) evidenced by: that certain (x) *Project Loan Agreement*, dated as of June 8, 2017, in the original principal amount of up to $2,170,000.00 (the "**Project Loan Agreement**"; and together with the Building Loan Agreement, collectively referred to herein as the "**Agreements**"), between Borrower and PB; and (y) that certain *Project Loan Note*, dated as of June 8, 2017, in the original principal amount of up to $2,170,000.00 (the "**Project Loan Note**"; and together with the Acquisition Loan Note and the Building Loan Note, collectively referred to herein as the "**Notes**"), made by Borrower in favor of PB, and (ii) secured by that certain *Project Loan Mortgage and Security Agreement* (the "**Project Mortgage**"; and together with the Acquisition Mortgage and the Building Mortgage, collectively referred to herein as the "**Mortgages**"), dated as of June 8, 2017, in the original principal amount of $2,170,000.00 encumbering the Property, which Project Mortgage was recorded in the Register on July 7, 2017 as CRFN 2017000250853.

Reference is further made to that certain (i) *Assignment of Mortgage*, dated as of November 15, 2018 (the "**Acquisition Assignment**"), through which PB assigned all of its right, title and interest in and to the Acquisition Loan to Existing Lender, (ii) *Assignment of Mortgage*, dated as of November 15, 2018 (the "**Building Assignment**"), through which PB assigned all of its right, title and interest in and to the Building Loan to Existing Lender, and (iii) *Assignment of Mortgage,* dated as of November 15, 2018 (the "**Project Assignment**"; and together with the Acquisition Assignment and the Building Assignment, collectively referred to herein as the "**Assignments**"), through which PB assigned all of its right, title and interest in and to the Project Loan to Existing Lender. All of the foregoing Assignments were recorded in the Register on or about January 28, 2019 as CRFN 2019000031748 (for the Acquisition Assignment), and CRFN 2019000031749 (for the Building Assignment), CRFN 2019000031750 (for the Project Assignment), respectively.

12.   Following the Filing Date and prior to the appointment of the Trustee, the Debtor retained possession of its assets and was authorized under the Bankruptcy Code to continue the operation of its business as a debtor-in-possession.

13.   On September 13, 2019, this Court "So Ordered" and approved *a Stipulation and Order Appointing Interim Manager and Resolving Motions of United States Trustee and Marks*

BPOWERS/2360171.1/010001

*LP to Appoint a Trustee* (ECF No. 59), appointing Nat Wasserstein as Interim Manager for the Debtor (the "**Interim Manager**").

14.    On October 16, 2019, the Interim Manager filed with the Court a *Status Report of Interim Manager for the Debtor* (ECF NO. 68) (the "**Status Report**").  In the Status Report, the Interim Manager provided a detailed report describing, among other things, the investigation he had conducted with respect to the status of the Building and Project, the claims of the Existing Lender, and his efforts to refinance the Existing Loans.  (Status Report at p. 4). The entities with whom the Interim Manager met and/or spoke with that expressed interest in providing potential post-petition financing included, among others, NorthMarq Capital ("**NorthMarq**") and Columbia Pacific Advisors ("**CPA**").  The Interim Trustee was also dealing with a broker, Sandy Marks, who is a founder of Clearnote Capital and the brother of Mitchell Marks, a principal of LHM.

15.    The Trustee understands that during a hearing before the Court conducted on October 17, 2019 in connection with a motion filed by the Existing Lender seeking the appointment of a chapter 11 trustee, counsel to the Debtor advised the Court that a proposed term sheet had been received by the Interim Manager from the Lender for post-petition financing on substantially similar terms to the Financing Agreement.  The Trustee has also been advised that the Debtor's counsel circulated a copy of that term sheet to, among others, several potential financing sources that the Interim Manager had reached out to and/or met with, including NorthMarq and Columbia, as well as Sandy Marks.  To date, none of these parties has submitted a firm offer with terms better than those proposed in the Financing Agreement.

16.    October 24, 2019, the Bankruptcy Court entered an Order Appointing a Chapter 11 Trustee (ECF No. 72).  On October 25, 2019, the Office of the United States Trustee filed the

Application for the Appointment of Kenneth P. Silverman as Chapter 11 Trustee and Affidavit of Disinterestedness of the Trustee (ECF No. 73), and by Order of the Bankruptcy Court dated October 28, 2019 (ECF No. 79), the appointment of the Trustee was approved.

17.     Following his appointment, the Trustee conducted his own investigation of matters concerning the Building, the Project, and potential financing sources to refinance or otherwise address the claims of the Existing Lender and the accruing default rate of interest asserted by the Existing Lender under the Existing Loans.   The Trustee's efforts included engaging in arm's-length negotiations with the Lender and others, including the Existing Lender (and its affiliate, Maverick Real Estate Partners, LLC).   The Trustee has successfully worked with NortMarq in connection with other cases, and NorthMarq has indicated that the terms of the financing proposed by the Lender are better than terms which would be offered by a third party in the marketplace.

18.     The negotiations between the Trustee and the Lender culminated in the Trustee requesting that the Lender make a loan to the Borrower, to which Lender agreed, subject to and upon the terms and conditions contained in the Financing Agreement, which loan shall be evidenced by the Financing Agreement and a Note (as defined in the Financing Agreement).[8] The loan is to be secured by the Debtor's Collateral, all as more particularly defined in Section 5 of the Financing Agreement.[9]

19.     The Trustee determined, after completion of his search for post-petition financing and a review of the facts and circumstances preceding his appointment, that the proposed Post-

---

[8]  The Lender is wholly-owned by a newly formed entity that is an affiliate of Carter, who is the principal of Prime, the largest equity holder of the Debtor, and may include other members of the Debtor.

[9]   The Trustee was provided financial information on a confidential basis concerning the ability of Lender to close on this transaction and is satisfied that the Lender and Carter have the financial wherewithal to consummate this transaction.  Although the transaction is not subject to any financing contingency, Lender has informed the Trustee that Carter, through an affiliate, has been working with SKW Funding, LLC to finance a part of the Post-Petition Financing to Lender.

BPOWERS/2360171.1/010001

Petition Financing offered by Lender pursuant to the Financing Agreement represents the best available financing for the Debtor's estate under the circumstances.

## ARGUMENT

### The Post-Petition Financing Represents the Best Available Financing.

20.     As discussed above, the Interim Manager approached several potential sources regarding a potential post-petition financing arrangement.  Those efforts included engaging in extensive discussions and/or negotiations with NorthMarq, Columbia, the Existing Lender, and the Lender, as well as working with a broker, Sandy Marks, the brother of Mitchell Marks.[10] Beginning with the Interim Manager and then the Trustee, who has engaged in discussions with several parties, this process occurred over a period of more than two months and included the Trustee engaging in substantial discussions and negotiations with the Lender, the Existing Lender, and Mitchell Marks.  The Trustee's efforts led to the Trustee negotiating the definitive financing terms and conditions set forth in the Financing Agreement and related documents.

21.      Here, Lender is proposing financing at a reasonable interest rate that will result in significant savings to the Debtor's estate, is not charging any transactional fees, closing costs, or pre-payment penalties, provides for the accrual of interest, and offers the other substantial benefits described above.  The Post-Petition Financing also provides the Trustee with additional time to conduct his administration of this case.

22.     After exploring the various financing options and engaging in extensive negotiations with concessions from the Lender, the Trustee has determined, in the exercise of his reasonable business judgement, that the proposal from Lender represents the best and most favorable financing under the circumstances in light of the particular needs in the Debtor's case.

---

[10]   Prior to the hearing on this Motion, the Trustee and his counsel have commenced discussions and will continue to discuss with each potentially interested party the terms of potential financing.

BPOWERS/2360171.1/010001

For these reasons, the Trustee submits that the proposed financing is in the best interests of the Debtor's creditors and is necessary to preserve the value of estate assets and is a sound exercise of the Trustee's business judgment.

### Refinancing Of The Existing Loans Should Be Approved.

23.    There is an existing dispute regarding the amount due to Existing Lender.  The Financing Agreement provides adequate protection to Existing Lender by calling for a payment in full of the undisputed amount of the Existing Lender's claim and an interest-bearing reserve of the disputed amount of Existing Lender's claim pending a final determination of the Existing Lender's claim amount.  Approval of refinancing of prepetition debt has been approved in this district and others.  *See, e.g., In re Lyondell Chem Co.,* Case No. 09-10023 (REG) (Bankr. S.D.N.Y. Jan. 8 2009); *In re Bally Total Fitness of Greater New York, Inc.*, Case No. 07-12395 (Bankr. S.D.N.Y. Aug. 2, 2007); *In re Twinlab Corp.,* Case No. 03-15564 (Bankr. S.D.N.Y. Sept. 4, 2003); *In re Bear Island Paper Co., LLC,* Case No. 10-31202 (Bankr. E.D. Va.Feb. 26, 2010); *In re Movie Gallery, Inc.,* Case No. 10-30696 (Bankr. E.D. Va. Feb. 3, 2010).

### Authorization of Post-petition Financing on a Senior Secured and Superpriority Basis Should Be Approved.

24.    Bankruptcy Code §364 authorizes this Court to allow the Trustee to obtain post-petition financing for the benefit of the Debtor from Lender in the manner proposed by Lender in the Financing Agreement.  As security for all borrowings under the Post-Petition Financing, the Trustee proposes to grant the Lender a superpriority administrative claim and a superpriority lien on and security interest in all or substantially all of the Debtor's assets, subject only to the Carve Out.  Such relief is authorized pursuant to Bankruptcy Code §§364(c)(1)(2) and (3), 364(d)(1), 503(b) and 507.

25.    The granting of superpriority administrative credit is allowable under Bankruptcy

Code Section 364(c) which provides:

If the trustee is unable to obtain unsecured credit allowable under Section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring debt –

(1) with priority over any and all administrative expenses of the kind specified in Sections 503(b) and 507(b) of this title;
(2) Secured by a lien on property of the estate that is not otherwise subject to a lien; or
(3) secured by a junior lien on property of the estate that is subject to a lien.

11  U.S.C. §364(c).

26. To satisfy the requirements of Section 364(c) of the Bankruptcy Code, a debtor need only demonstrate 'by a good faith effort that credit was not available' to the debtor on an unsecured or administrative basis. *Bray v. Shenandoah Fed. Savs & Loan Ass'n (In re Showshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986).

27. The granting of superpriority lien status is governed by Bankruptcy Code §364(d)(1) which provides:

 (d)(1) The Court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien if –

(A) the trustee is unable to obtain such credit otherwise; and

(B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted

11 U.S.C. §364(d)(1).

28. Here, after a good faith inquiry the Trustee has concluded that the Debtor is unable to obtain financing other than on a secured superpriority basis.

**The Existing Lender is Adequately Protected.**

29. In addition to authorizing financing under Section 364(c) of the Bankruptcy Code, courts may also authorize a debtor to obtain postpetition credit secured by a lien that is senior or

BPOWERS/2360171.1/010001

equal in priority to existing liens on the encumbered property, without the consent of the existing lienholders, if the debtor cannot otherwise obtain such credit and the interests of the existing lien holders are adequately protected. *See* 11 U.S.C. §364(d)(1). Since the term "adequate protection" is not defined in the Bankruptcy Code, courts have held that the precise contours of the concept must be determined on a case-by-case basis. *See, e.g., In re O'Connor,* 808 F.2d 1393, 1396 (10th Cir. 1987). The focus of the requirement is to protect a secured creditor from diminution in the value of its interest in collateral during the reorganization process. *See, e.g., In re Beker Indus. Corp.,* 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986).

30.    Here, the Financing Agreement calls for the Existing Loans to be paid in full up to the agreed amount of such Existing Loans (estimated to be approximately $33.5 million), with the disputed amount (estimated to be approximately $10 million) held in full in an interest-bearing segregated account by the Trustee pending final determination of the Existing Lender's Claims. As such, the Existing Lender will receive the entire principal amount of its claim, plus accrued and unpaid interest at the contract rate set in the Existing Lender's Loan Documents up to the date of maturity of the Existing Lender's loan, plus accrued and unpaid interest at the default rate of 24% as of the Closing Date (defined in the Financing Agreement). **The only material disputed amounts at issue are the claimed late fees and whether an amount equal to the difference between the contract rate and the default rate of interest is due to Existing Lender from the outset of the Existing Lender's Loans.** The amount at issue will be held in a segregated, interest-bearing account pending resolution of this issue. The Trustee submits that the foregoing constitutes ample evidence of adequate protection, as the Existing Lender will ultimately be paid the allowed amount of its claim, in full, with interest.

31.    When determining whether to authorize a debtor to obtain credit secured by a

16

"priming" lien as authorized by section 364(d) of the Bankruptcy Code, courts consider a number of factors, including the following:

    a.   Whether alternative financing is available on any other basis (*i.e.,* whether any better offers, bids or timely proposals are before the court);

    b.   Whether the proposed financing is necessary to preserve estate assets and is necessary, essential and appropriate for continued operation of the debtors' business;

    c.   Whether the terms of the proposed financing are reasonable and adequate given the circumstances of both the debtor and proposed lender; and

    d.   Whether the proposed financing agreement was negotiated in good faith and at arm's length and entry therein is an exercise of sound and reasonable business judgment and in the best interest of the debtor's estate and its creditors.

*See*, *e.g., Ames Dep't Stores*, 115 B.R. at 37-39; *Bland v. Farmworker Creditors,* 308 B.R. 109, 113-14 (S.D. Ga. 2003); *Farmland Indus.*, 294 B.R. at 862-79; *In re Lyondell Chem. Co.,* No. 09-10023 (Bankr. S.D.N.Y. March 5, 2009).

    32.    Here, to date the Trustee has received no better offers than that presented by the Lender for proposed financing.[11]  Rather, the proposed financing will reduce the Debtor's debt service obligations by approximately $8,000 per day.  The proposed financing will thus preserve estate assets pending the sale of the Property and assist the Trustee in maximizing the return to creditors in this case.  The Trustee also submits that the contract rate of 8.34% and the other terms and conditions of the Financing Agreement are well within the range of reasonableness for proposed financing of this nature.  The Financing Agreement was negotiated in good faith and at arm's length.

    33.    In sum, the Trustee believes that the terms and conditions of the Post-Petition Financing represent the most favorable option for post-petition financing and, for the foregoing

---

[11]  To the extent that the Trustee receives an offer that is more favorable to the Debtor's estate prior to the hearing on this Motion, the Trustee reserves all rights, including to withdraw this Motion.

BPOWERS/2360171.1/010001

reasons, are in the best interests of the Debtor, its estate, and its creditors. The Trustee submits

that the terms and conditions of the Financing Agreement are fair and reasonable and are the

result of arms' length negotiations between the Trustee and the Lender.  Accordingly, the Lender

should be accorded the benefits of Bankruptcy Code §364(e) in respect of the Post-Petition

Financing and the Trustee requests entry of the Final Order attached hereto as Exhibit A

approving the proposed Post-Petition Financing.

### The Lender Should Be Deemed a Good Faith Lender under Section 364(e)

34.     Bankruptcy Code section 364(e) protects a good faith lender's right to collect on

loans extended to a debtor, and its right in any lien securing those loans, even if the authority of

the debtor to obtain such loans or grant such liens is later reversed or modified on appeal.

Section 364(e) provides that:

> The reversal or modification on appeal of an authorization under this section [364 of the
> Bankruptcy Code] to obtain credit or incur debt, or of a grant under this section of a
> priority or a lien, does not affect the validity of any debt so incurred, or any priority or
> lien so granted, to an entity that extended such credit in good faith, whether or not such
> entity knew of the pendency of the appeal, unless such authorization and the incurring of
> such debt, or the granting of such priority or lien, were stayed pending appeal.

11 U.S.C. § 364(e).

35.     As explained above, the Post-Petition Financing, including the Financing

Agreement and other Loan Documents, are the result of the Trustee's reasonable and informed

determination that the Lender offered the most favorable terms pursuant to which the Borrower

could obtain necessary post-petition financing.  All negotiations of the Post-Petition Financing

were conducted in good faith and at arms' length.  The terms and conditions of the Post-Petition

Financing are fair and reasonable, and the proceeds of the Financing Agreement and the will be

used only for purposes that are permissible under the Bankruptcy Code, and in accordance with

the Final Financing Order and the Financing Agreement.  Further, no consideration is being

BPOWERS/2360171.1/010001

provided to any party to the Financing Agreement other than as described herein. Accordingly, the Court should find that the Lender is a "good faith" lender within the meaning of section 364(e) of the Bankruptcy Code and is entitled to all of the protections afforded by that section.

### Modification of Automatic Stay Is Warranted

36.    The relief requested herein contemplates a modification of the automatic stay to permit the Trustee to: (i) grant the security interests, liens, and superpriority claims described above with respect to the Lender and to perform such acts as may be requested to assure the perfection and priority of such security interests and liens; (ii) permit the Lender to exercise, upon the occurrence and during the continuance of an Event of Default (as defined in the applicable Financing Agreement), after the expiration of the applicable grace period, if any, or the occurrence of an Event of Default, as applicable, certain remedies under the Financing Agreement after giving the required notice to the Trustee (subject to the terms of the Financing Agreement); and (iii) implement the terms of the proposed Final Financing Orders including payment of all amounts referred to in the Financing Agreement.

37.    Stay modifications of this kind are ordinary and standard features of post-petition financing facilities and, in the Trustee's business judgment, are appropriate under the present circumstances. *See, e.g.*, *In re The Great Atl. & Pac. Tea Co., Inc.*, Case No. 15-23007 (RDD) (Bankr. S.D.N.Y. July 21, 2015) [Docket No. 88]; *In re Chassix Holdings, Inc.*, Case No. 15-10578 (MW) (Bankr. S.D.N.Y. Mar. 13, 2015) [Docket No. 67]; *In re The Reader's Digest* 32 *Assoc.*, Case No. 09-23529 (RDD) (Bankr. S.D.N.Y. Aug. 26, 2009) [Docket No. 26]; *In re Lear Corp.*, Case No. 09-14326 (ALG) (Bankr. S.D.N.Y. July 7, 2009) [Docket No. 59].

### Request for Final Hearing

BPOWERS/2360171.1/010001

36.     Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Trustee requests that the Court proceed directly to a final hearing on the Motion.

**Bankruptcy Rule 4001(a)(3) Should Be Waived**

38.     The Trustee requests a waiver of the stay of the effectiveness of the order approving this Motion under Bankruptcy Rule 4001(a)(3). Bankruptcy Rule 4001(a)(3) provides, "[an] order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of fourteen days after entry of the order, unless the court orders otherwise." Here, the Financing Agreement contemplates a timetable sale of the Property. In addition, the sooner the Trustee can utilize the loan proceeds to make a substantial payment to the Existing Lender (thus substantially reducing the interest accruing) and otherwise administer this estate for the benefit of creditors, the better.

39.     Accordingly, the Trustee submits that sufficient cause exists to justify the waiver of the fourteen-day imposed by Bankruptcy Rule 4001(a)(3), to the extent such applies.

**Bankruptcy Rule 6003(b) is Satisfied**

40.     Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may approve "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" prior to twenty-one (21) calendar days after the Petition Date. As described above, the Trustee would suffer immediate and irreparable harm if the relief sought herein is not promptly granted.

41.     Accordingly, the Trustee submits that the relief requested herein is necessary to avoid immediate and irreparable harm, and, therefore, Bankruptcy Rule 6003 is satisfied.

**Request for Bankruptcy Rule 6004(a) and (h) Waivers**

BPOWERS/2360171.1/010001

42. To implement the foregoing successfully, the Trustee seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen (14) day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h). Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  As explained above, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtor's estate by reducing the rate of interest to be paid.

43. Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent such stay applies.

### **Reservation of Rights**

44. Nothing contained herein is or should be construed as (a) an admission as to the validity of any claim against the Debtor, including the Existing Lender's Claim; (b) a waiver of the Trustee's, Debtor's or any party in interest's rights to dispute any claim on any grounds, including the Existing Lender's Claim; (c) a promise to pay any claim; (d) an assumption or rejection of any executory contract or unexpired lease pursuant to Bankruptcy Code section 365; or (e) otherwise affecting the Debtors' rights under Bankruptcy Code section 365 to assume or reject any executory contract with any party subject to this Motion. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Trustee's or Debtor's rights to dispute such claim subsequently.

45. No previous application for the relief sought herein has been made to this or any other Court.

BPOWERS/2360171.1/010001

**WHEREFORE,** the Trustee respectfully requests that the Court enter the Final Order authorizing the Debtor's estate to obtain financing on the terms set forth herein and in the Financing Agreement and grant such further relief as is just and proper.

Dated: December 3, 2019
      Jericho, New York

                                       **SILVERMANACAMPORA LLP**

                                       s/Ronald J. Friedman
                                       Ronald J. Friedman
                                       Brian Powers
                                       100 Jericho Quadrangle, Suite 300
                                     Jericho, New York 11753
                                     (516) 479-6300

                                     *Attorneys for the Chapter 11 Trustee*

BPOWERS/2360171.1/010001