UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In re:

305 EAST 61ST STREET GROUP, LLC,

                               Debtor.

--------------------------------------------------------x

Chapter 11

Case No. 19-11911 (SHL)

**FINAL ORDER PURSUANT TO SECTIONS 105, 361, 362, 363, 364(c), 364(d), 364(e), 503 AND 507(b) OF THE BANKRUPTCY CODE AUTHORIZING TRUSTEE TO INCUR POST-PETITION SECURED INDEBTEDNESS, GRANTING SECURITY INTERESTS AND PRIORITY CLAIMS, AND GRANTING ADDITIONAL RELIEF**

Upon the Motion (the "**Motion**")[1] dated December 3, 2019 of Kenneth P. Silverman, Esq. (the "**Trustee**"), chapter 11 trustee of 305 East 61st Street Group, LLC (the "**Debtor**") in the above-captioned chapter 11 case (the "**Chapter 11 Case**"), for an Order: (1) authorizing the Trustee, on behalf of the Debtor's estate (as defined in the Bankruptcy Code) (the "**Estate**") to incur post-petition secured indebtedness pursuant to that certain Senior Superpriority Post-Petition Loan and Security Agreement with Lazarus 5, LLC and/or its nominee as Lender ("**Post-Petition Lender**"); (2) granting Post-Petition Lender a senior valid, perfected and first priority security interest and lien, pursuant to 11 U.S.C. §§ 364(c) and (d), on, among other things, all of Debtor's pre- and post-petition now existing and after acquired, assets; and (3) granting related relief; the Court hereby finds and concludes as follows:[2]

A.      On June 10, 2019 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief pursuant to Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

[2] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. To the extent any findings of fact constitute conclusions of law, they are adopted as such. To the extent any conclusions of law constitute findings of fact, they are adopted as such.

From the Petition Date until October 28, 2019, the Debtor operated its business and managed its properties as debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B.  By Order dated October 28, 2019 (ECF Doc. No. 79), the Trustee was appointed as chapter 11 trustee of the Debtor.

C.  The Debtor is currently indebted to 305 E. 61st Street Lender LLC ("**Existing Lender**"), as assignee of Popular Bank (f/k/a Banco Popular North America) ("**PB**"), in connection with three (3) loans made on or about June 8, 2017 by PB to the Debtor:

1.  Acquisition loan (the "**Acquisition Loan**") (i) evidenced by that certain (i) *Secured Restated Promissory Note*, dated as of June 8, 2017, in the original principal amount of $20,000,000.00 (the "**Acquisition Loan Note**"), made by the Debtor in favor of PB; and (ii) secured by that certain *Mortgage Extension, Modification and Security Agreement* (the "**Acquisition Mortgage**"), dated as of June 8, 2017, in the original principal amount of $20,000,000.00 encumbering the real property commonly known as 305-307 East 61ST Street, New York, New York (Block 1436; Lot 5) (including all improvements thereon, the "**Property**"), which Acquisition Mortgage was recorded in the City Register of the City of New York, County of New York (the "**Register**") on July 7, 2017 as CRFN 2017000250851; and that certain

2.  Building loan (the "**Building Loan**") (i) evidenced by: (x) that certain *Building Loan Agreement*, dated as of June 8, 2017, in the original principal amount of up to $7,830,000.00 (the "**Building Loan Agreement**"), between the Debtor and PB, and (y) that certain *Building Loan Note*, dated as of June 8, 2017, in the original principal amount of up to $7,830,000.00 (the "**Building Loan**

2

**Note**"), made by Debtor in favor of PB; and (ii) secured by that certain *Building Loan Mortgage and Security Agreement* (the "**Building Mortgage**"), dated as of June 8, 2017, in the original principal amount of $7,830,000.00 encumbering the Property, which Building Mortgage was recorded in the Register on July 7, 2017 as CRFN 2017000250852; and that certain

3. Project loan (the "**Project Loan**"; and together with the Acquisition Loan and the Building Loan, collectively referred to herein as, the "**Existing Loans**") (i) evidenced by: that certain (x) *Project Loan Agreement*, dated as of June 8, 2017, in the original principal amount of up to $2,170,000.00 (the "**Project Loan Agreement**"; and together with the Building Loan Agreement, collectively referred to herein as the "**Existing Agreements**"), between Debtor and PB; and (y) that certain *Project Loan Note*, dated as of June 8, 2017, in the original principal amount of up to $2,170,000.00 (the "**Project Loan Note**"; and together with the Acquisition Loan Note and the Building Loan Note, collectively referred to herein as the "**Existing Notes**"), made by Debtor in favor of PB, and (ii) secured by that certain *Project Loan Mortgage and Security Agreement* (the "**Project Mortgage**"; and together with the Acquisition Mortgage and the Building Mortgage, collectively referred to herein as the "**Existing Mortgages**"), dated as of June 8, 2017, in the original principal amount of $2,170,000.00 encumbering the Property, which Project Mortgage was recorded in the Register on July 7, 2017 as CRFN 2017000250853.

D. The outstanding principal amount due under the Existing Notes is $26,947,264.12 (the "**Existing Loan Principal Amount**"). The accrued and unpaid non-default interest and

3

post-maturity default interest on the Existing Loans as of the Petition Date was $6,546,653.68 (the "**Undisputed Pre-Petition Interest Amount**"). Since the Petition Date, default interest has continued to accrue on the Existing Loans at a rate of approximately $18,000 *per diem* ("**Post-Petition Interest**"). The Existing Lender has alleged, and the Debtor has disputed, that an additional $10,043,281.70 (the "**Disputed Pre-Maturity Default Interest and Other Charges Amount**") is due and owing, consisting of (i) default interest accrued prior to the maturity date of the Existing Loans, and (ii) late fees and other charges.

E.   The Trustee seeks to enter into the Senior Superpriority Post-Petition Loan and Security Agreement and the other documents contemplated thereby (collectively, the "**Facility Documents**"). Pursuant to the Facility Documents, Post-Petition Lender will make loans and advances to the Trustee for the benefit of the Estate, secured by a first priority lien on and security interest in, substantially all of the assets of the Debtor's estate including but not limited to, all right, title and interest in and to the land, buildings and improvements located at 305-307 East 61st Street, New York, New York (Block 1436, Lot 5), as more particularly described in the Facility Documents, all of Debtor's existing and after acquired bank accounts, deposits and cash, wherever located, whether now existing or hereafter acquired, and all causes of action of whatever kind or nature (except Avoidance Actions, as defined herein) and all proceeds (including the proceeds of any asset sales to third parties), products, rents, revenues and profits of any of the foregoing;

F.   The successful preservation of the value of the assets of the Estate for the benefit of all the Debtor's stakeholders and the Trustee's ability to administer the estate, including to propose and consummate a sale of the Estate's assets, is dependent on its ability to obtain, among other things, the loans and advances proposed to be made by Post-Petition Lender;

G.  The Estate requires, and is unable to obtain, the working capital and credit necessary to successfully administer the Chapter 11 Case absent entry of this Order;

H.  The Post-Petition Lender financing proposed hereunder and the payoff of the Existing Loans with the proceeds thereof, are in the best interest of the Debtor, the Estate, creditors, and parties in interest;

I.  Post-Petition Lender is willing to lend the Trustee, on behalf of the Estate, funds upon the terms and conditions of the Facility Documents and this Order;

J.  The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of the Debtor's Chapter 11 case and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409;

K.  The statutory predicates for the relief sought in the Motion are §§ 105, 361, 362, 363, 364, 503 and 507 of the Bankruptcy Code and Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Rules**") and Local Rule 4001-2;

L.  The Post-Petition Lender has indicated a willingness to provide financing to the Trustee (the "**Financing**") solely on the terms and conditions set forth in the Facility Documents and this Order.  The terms of the Financing are fair and reasonable and reflect the Trustee's exercise of prudent business judgment consistent with his fiduciary duties, and are the best available under the circumstances.  It is in the best interest of the Estate that the Trustee enter into the Financing under the terms and conditions set forth in the Facility Documents and this Order, as such is necessary to permit the orderly administration of the Estate;

M.  The Trustee and the Post-Petition Lender have negotiated the terms and conditions of the Financing in good faith and at arm's length, and any credit extended and loans and advances made to the Trustee pursuant to the Facility Documents and this Order shall be,

5

and hereby are, deemed to have been extended or made, as the case may be in "good faith" within the meaning of section 364(e) of the Bankruptcy Code and the Post-Petition Lender shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event the Facility Documents or this Order or any provision thereof or hereof is vacated, reversed, or modified, whether on appeal or otherwise. The Financing is being extended by Post-Petition Lender in good faith and Post-Petition Lender is entitled to the protection of § 364(e) of the Bankruptcy Code;

N.   The Financing is the best source of post-petition financing available to the Trustee. The Trustee is unable to obtain sufficient levels of unsecured credit allowable under section 364(b) and 503(b)(1) of the Bankruptcy Code as an administrative expense necessary to maintain and conduct the Debtor's business. The Trustee is unable to obtain secured credit allowable only under § 364(c)(1) and (c)(2) of the Bankruptcy Code. The Trustee is unable to obtain secured credit allowable under section 364(d)(1) of the Bankruptcy Code, except from sources other than the Post-Petition Lender under the terms and conditions more favorable than the terms and conditions in the Facility Documents and this Order;

O.   The proposed adequate protection to the Existing Lender described in the Motion and provided herein is sufficient under the circumstances to satisfy the requirements of § 361 of the Bankruptcy Code;

P.   Due notice of the Motion has been given to all creditors, all those who filed Notices of Appearance prior to the date of service of the Motion, all relevant taxing authorities, and the Office of the United States Trustee, pursuant to Rules 2002, 4001(c) and 9014 and any and all applicable Local Bankruptcy Rules;

Q. Based upon the foregoing findings and conclusions, and upon the record made before the Court at the hearing regarding the Financing, and good and sufficient cause appearing therefor:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1. The Motion is granted on a final basis, as set forth in this Order. Any objections to the Motion that have not been previously withdrawn or resolved are hereby overruled. This Order shall become effective immediately upon its entry. To the extent the terms of the Facility Documents differ from the terms of this Order, the terms of this Order shall control.

2. The Trustee, on behalf of the Estate, is hereby authorized to: (i) obtain extensions of credit pursuant to the Facility Documents in accordance with and solely for the purposes set forth therein and subject to the terms set forth in this Order; (ii) pay off the Existing Loans in accordance with paragraph 8; (iii) make disbursements in accordance with, and subject to, the budget, a copy of which is annexed hereto as Exhibit 1 (the "**Budget**"); (iv) incur any and all liabilities and obligations under the Facility Documents. Post-Petition Lender is authorized to make funds available to the Trustee in accordance with the Facility Documents, including, at Post-Petition Lender's sole discretion, to make funds available to the Trustee in excess of the budgeted amounts. All obligations owed by the Estate to Post-Petition Lender shall be due and payable, and shall be paid, by the Estate in accordance with the requirements of this Order and the Facility Documents.

3. Post-Petition Lender's post-petition advances, loans, rights, and remedies, and the Estate's obligations, consents, and requirements shall be governed in all respects by the terms and conditions of the Facility Documents, which is deemed incorporated herein, and which shall be in full force and effect with respect to the Financing provided by Post-Petition Lender. The

7

Facility Documents shall constitute a valid, binding, and enforceable obligation of the Debtor in accordance with their terms. The Trustee, on behalf of the Estate, is authorized to do and perform all acts, to make, execute, and deliver any and all agreements, assignments, instruments and documents (all of which, upon execution and delivery shall be deemed Facility Documents) and to pay all filing fees and recording fees in accordance with and to give effect to any of the terms and conditions of the Facility Documents.

4. The Trustee's obligations under the Facility Documents are (a) legal, valid, binding and enforceable against the Trustee and the Estate each in accordance with its terms, (b) not subject to any recoupment, rejection, avoidance, reductions, recharacterization, set-off, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses, or any other claims, causes of action, or challenges of any nature under the Bankruptcy Code, any other applicable law or regulation or otherwise, and (c) shall constitute "allowed claims" within the meaning of section 502 of the Bankruptcy Code.

5. Pursuant to sections 364(c)(1), 503 and 507 of the Bankruptcy Code, all obligations under the Facility Documents shall constitute allowed superpriority administrative expense claims against the Estate with priority over any and all administrative expenses of the Trustee or the Debtor, including without limitation those specified in sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code, whether heretofore or hereafter incurred, subject and subordinate only to the Carve-Out, as defined below.

6. Subject and subordinate only to the Carve Out, as defined below, to secure the Financing, Post-Petition Lender is hereby granted, pursuant to sections 364(c)(2), 364(c)(3), and 364(d)(1), first priority, valid, binding, fully perfected, non-avoidable, continuing and enforceable security interests in and liens on all currently owned or hereafter acquired assets and

property of the Estate, real and personal, tangible and intangible, including, but not limited to, the real property (including the Property and all improvements thereon), inventory, accounts receivable, chattel paper contract rights, documents, equipment, fixtures, deposit accounts, general intangibles (including, without limitation, all tax refunds, copyrights, licensing agreements, patents, trademarks and trade names), leases, instruments, real property, securities and other investment property, all cash collateral, causes of action (except those arising under Chapter 5 of the Bankruptcy Code (the "**Avoidance Actions**")), as well as any proceeds or funds recovered by the Trustee, the Debtor, or the Estate from Existing Lender, including any proceeds of the Facility paid to the Existing Lender and subsequently recovered by the Estate, and all products and proceeds of each of the foregoing assets and property of the Estate (collectively, the "**Post-Petition Lender Collateral**").

7. This Order shall be sufficient evidence of Post-Petition Lender's perfected post-petition liens and security interests in and to Post-Petition Lender Collateral and shall be valid, binding, enforceable and fully perfected, and not subject to challenge, dispute, avoidance, impairment or subordination (other than with respect to the Carve-Out) upon the entry of this Order. The Trustee, on behalf of the Estate, is authorized to execute such documents including, without limitation, Uniform Commercial Code financing statements, mortgages, notices of lien or similar instruments and to pay such costs and expenses as may be reasonably required to perfect Post-Petition Lender's security interests in the Post-Petition Lender Collateral as provided herein; Post-Petition Lender is authorized (but not required) to file and record financing statements, mortgages, notices of lien or similar instruments with respect to such security interests and liens, all such financing statements being deemed to have been filed or recorded on the closing date of the Financing.

8. The Trustee is authorized and directed, as soon as reasonably practicable following entry of this Order, to (i) pay to the Existing Lender the Existing Loan Principal Amount, the Undisputed Pre-Petition Interest and Other Charges Amount, and Post-Petition Interest from the Petition Date to the date of such payment, and (ii) deposit the Disputed Pre-Maturity Default Interest and Other Charges Amount in a segregated interest-bearing account of the Trustee. The Disputed Pre-Maturity Default Interest and Other Charges Amount shall not be distributed to any party other than pursuant to a further order of this Court; <u>provided</u> that any portion of the Disputed Pre-Maturity Default Interest and Other Charges Amount received by the Trustee shall be subject to the mandatory prepayment provisions of the Facility Documents as a recovery on Post-Petition Lender Collateral.

9. The Trustee is authorized and directed, as soon as reasonably practicable following entry of this Order, to add the Post-Petition Lender as additional insured and loss payee on each insurance policy maintained by the Estate which in any way relates to the Post-Petition Lender Collateral and shall distribute any proceeds thereof in accordance with the terms of the Facility Documents.

10. So long as any obligations under the Facility Documents remain outstanding and not been indefeasibly paid in full, in cash, the Trustee shall not sell, transfer, lease, encumber or otherwise dispose of any Post-Petition Lender Collateral, except as required or permitted under the Facility Documents. The Post-Petition Lender, or its assignees, designees, or successors shall be permitted to credit bid all or any portion of the obligations under the Facility Documents as consideration in any sale of the Post-Petition Lender Collateral or any portion thereof, without the need for further order of the Court, and regardless whether that sale is effectuated through section 363 or 1129 of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the

Bankruptcy Code or otherwise. All proceeds of the Post-Petition Lender Collateral shall be applied in accordance with the Facility Documents.

11. So long as any obligations under the Facility Documents remain outstanding and not been indefeasibly paid in full, in cash, the Trustee shall not incur or suffer to exist any lien or indebtedness, except as permitted under the Facility Documents and the Budget.

12. With the exception of the Carve-Out, none of the Post-Petition Lender Collateral shall be subject to (a) surcharge by the Trustee or any other party in interest pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise without the prior express written consent of the Post-Petition Lender or (b) the equitable doctrine of marshalling or any similar doctrine.

13. The provisions of this Order shall inure to the benefit of Post-Petition Lender and shall be binding upon the Estate and its successors and assigns (including any successor trustee or other fiduciary herein appointed as a legal representative of the Estate in this Chapter 11 case or in any succeeding case under Chapter 7 or otherwise with respect to the property of the Estate).

14. No payments and transfers of property of the Estate to Post-Petition Lender as provided, permitted, and/or required under the Facility Documents and this Order shall be avoidable or recoverable from Post-Petition Lender. The application of the proceeds of the Post-Petition Lender Collateral shall be in accordance with the Facility Documents and this Order.

15. Post-Petition Lender is hereby authorized to charge and as applicable, continue to charge, the Estate's loan account for all interest, administrative and other reasonable fees, transaction costs, legal fees, and expenses with respect to the Financing, and any and all other expenses as provided in the Financing. In the event that Post-Petition Lender seeks reimbursement of fees and expenses of its counsel ("**Counsel**"), Counsel's invoices shall be sent

to the Trustee, the Debtor, and the United States Trustee. In the event that no objection is received by Post-Petition Lender within ten (10) days of transmission of such invoices, Counsel's fees and expenses may be paid without further Court order.

16. The Trustee shall provide Post-Petition Lender with such written reports as reasonably requested by Post-Petition Lender. In addition, on the 15th and 30th days of each month, the Trustee shall provide the Post-Petition Lender with a variance report covering the two full weeks prior to such date. All reports must be in a format acceptable to the Post-Petition Lender.

17. Each of the following shall constitute an "Event of Default" for purposes of this Order:

(a) The failure of Trustee to pay any amount of principal or interest on the Note, or any fee or other sums payable thereunder, on the date on which such payment is due, at the stated maturity or due date thereof, or by reason of any requirement for the prepayment thereof, by acceleration or otherwise;

(b) The failure of Trustee to duly perform or observe any obligation, covenant or agreement on its part contained herein or in any other Facility Document not otherwise specifically constituting an Event of Default under Section 9.1 of the Facility Documents and such failure continues unremedied for a period of five (5) business days after the earlier of (i) notice from Lender to Trustee of the existence of such failure, which notice may be provided by email, or (ii) the date the Trustee knows or should have known of the existence of such failure, provided that, in the event such failure is incapable of remedy, or was willfully caused or permitted by Trustee, Trustee shall not be entitled to any notice or grace thereunder;

(c) The failure of Trustee to pay or perform any other obligation to Lender under any other agreement or note or otherwise arising, whether or not related to the Facility Documents, after the expiration of any notice and/or grace periods permitted in such documents;

(d) Any representation or warranty of Trustee in any of the Facility Documents is discovered to be untrue in any material respect or any statement, certificate or data furnished by Trustee pursuant hereto is

discovered to be untrue in any material respect as of the date as of which the facts therein set forth are stated or certified;

(e) An order with respect to the Chapter 11 Case shall be entered by the Bankruptcy Court converting such Chapter 11 Case to a Chapter 7 case;

(f) The filing of a Chapter 11 plan of liquidation or reorganization by the Trustee, or the support by the Trustee of a chapter 11 plan of liquidation or reorganization filed by a third party, that does not provide for: (i) the termination of the commitments of Lender to Trustee under this Loan Agreement and payment in full in cash of the Indebtedness owed to Lender thereunder, and (ii) Lender's right to credit bid without setoff those amounts with respect to any sale of part or all of the Collateral, including the Property;

(g) An order shall be entered by the Bankruptcy Court confirming a plan of liquidation or reorganization in the Chapter 11 Case which does not (i) contain a provision for payment in full in cash of all obligations hereunder unless Lender agrees otherwise in writing, and under the other Facility Documents on or before the effective date of such plan or plans upon entry thereof, and (ii) provide for the continuation of the liens and security interests granted to Lender and priorities until such plan effective date;

(h) An order shall be entered by the Bankruptcy Court dismissing the Chapter 11 Case which does not contain a provision for payment in full in cash of all obligations hereunder, and under the other Facility Documents upon entry thereof;

(i) Entry of an order (other than the Final Financing Order) granting relief from the automatic stay in any action relating to the Collateral;

(j) The entry of any judgment against the Debtor in an amount equal to or greater than $1 million, or that otherwise materially adversely affects the Lender;

(k) An order with respect to the Chapter 11 Case shall be entered by the Bankruptcy Court without the express prior written consent of the Lender, (i) to revoke, reverse, stay, modify, supplement or amend this Order, or (ii) to permit any administrative expense or any claim (now existing or hereafter arising, of any kind or nature whatsoever) to have administrative priority as to the Trustee equal or superior to the priority of the Lender in respect of the Obligations, or (iii) to grant or permit the grant of a lien on the Collateral;

(l) An application for any of the orders described in clauses (f) through (j) above shall be made by a Person other than the Trustee and such

13

        application is not contested by the Trustee in good faith and the relief requested is granted in an order that is not stayed pending appeal;

(m)     The filing of any motion, pleading or proceeding by the Trustee that could be expected to result in a material impairment of the rights or interests of the Lender;

(n)     (i) Trustee shall attempt to invalidate, reduce or otherwise impair the liens or security interests of the Lender, claims or rights against such Person or to subject any Collateral to assessment pursuant to Section 506(c) of the Bankruptcy Code, (ii) any lien or security interest created by this Agreement or the Final Financing Order shall, for any reason, cease to be valid or (iii) any action is commenced by Trustee which contests the validity, perfection or enforceability of any of the liens and security interests of the Lender created by this Agreement, the Final Financing Order or the other Facility Documents;

(o)     Trustee fails to comply with Final Financing Order in any material respect;

(p)     Through no fault of the Lender, any Facility Documents for any reason shall cease to be in full force and effect, the liens on the Collateral purported to be created thereby shall cease to be or are not valid and perfected liens having priority over all other liens except any encumbrances specifically permitted under such Facility Documents;

(q)     Trustee shall make any distribution with respect to interests in the Debtor without the consent of the Lender, unless such distributions are made pursuant to a confirmed plan of reorganization or liquidation that provides for the payment in full, in cash of all the Trustee's obligations under the Facility Documents in accordance with the terms hereof.

(r)     Trustee makes any payment on account of any pre-petition claims that are not pursuant to court order or provided for in the Loan;

(s)     Trustee is enjoined, restrained, or in any way prevented by the order of any court or any administrative or regulatory agency, the effect of which order restricts such Trustee from conducting all any material part of its business;

(t)     Any material uninsured damage to, or loss, theft, or destruction of, any of the Collateral occurs;

(u)     The occurrence of an Event of Default under any of the other Facility Documents;

  (v)  The validity or enforceability of the Facility Documents is contested by the Trustee or if Trustee denies that it has any or any further liability or obligation thereunder;

  (w)  if Trustee breaches any representation contained in Article 6 of the Facility Documents or any covenant contained in Article 7 of the Facility Documents, including, without limitation, to meet the Milestones set forth in Article 7 of the Facility Documents;

  (x)  if any representation or warranty of Trustee made herein in any other Loan Document(s), or in any certificate, report, financial statement or other instrument or document furnished to Lender at the time of the closing of the Loan or during the term of the Loan shall have been false or misleading in any material respect when made..

18. Upon the occurrence of an Event of Default and five (5) business day's written notice thereof by Post-Petition Lender to the Trustee's counsel, the Debtor's counsel, and the Office of the U.S. Trustee (which notice may be given by facsimile or e-mail transmission) (the "**Default Notice**"), or upon the occurrence of the maturity date set forth in the Facility Documents, the Debtor's right to borrow under the Facility Documents shall terminate and the Post-Petition Lender shall have no obligation to make any further loans or advances in connection with the Financing.

19. With respect to an Event of Default as to which a Default Notice has been given, the Trustee, the Debtor, and/or the U.S. Trustee shall have seven (7) days from the receipt of the Default Notice (the "**Remedy Notice Period**") to obtain an order of the Court on notice to Post-Petition Lender enjoining or restraining Post-Petition Lender from exercising rights and remedies based upon the Event of Default specified in the Default Notice (the "**Restraint on Remedies**").

20. With respect to an Event of Default as to which a Default Notice has been given: (i) immediately upon expiration of the Remedy Notice Period, unless a Restraint on Remedies has timely been obtained from the Court, or (ii) immediately upon the occurrence of the maturity date set forth in the Facility Documents, the Estate's right to borrow shall terminate pursuant to

15

this Order, the Budget shall cease, and the obligations due to Post-Petition Lender under the Facility Documents shall be immediately due and payable. Immediately upon the expiration of the Remedy Notice Period, unless a Restraint on Remedies has been timely obtained from the Court, the Post-Petition Lender, upon filing with the Court a notice of the expiration of the Remedy Notice Period, shall have the right, free of the restrictions of § 362 or under any other section of the Bankruptcy Code, to exercise all of its contractual, legal and equitable rights and remedies as to all or such part of the Post-Petition Lender Collateral as the Post-Petition Lender shall elect.

21. The automatic stay provided by § 362 of the Bankruptcy Code shall be and is hereby vacated and terminated to the extent necessary as to the Post-Petition Lender with respect to the creation, perfection, and implementation of Post-Petition Lender's post-petition liens and security interests in the Post-Petition Lender Collateral.

22. The provisions of this Order and any action pursuant thereto shall be and remain in effect unimpaired and shall survive entry of any order which may be entered confirming a Plan of Reorganization or of Liquidation of the Debtor, converting this Chapter 11 Case to Chapter 7, or dismissing the Chapter 11 Case and the terms and provisions of this Order, as well as the priorities, liens and security interests created hereunder, shall continue in this or any other superseding case under the Code, and such liens and security interests shall maintain that priority as provided for in this Order until satisfied and discharged in full.

23. The term "Carve Out" means: (i) Quarterly fees, and interest thereon, of the United States Trustee and other fees due the United States Bankruptcy Court pursuant to 28 U.S.C. § 1930 and 31 U.S.C. § 3717, and any fees due to the Clerk of the Court; (ii) Allowed fees and expenses of the professionals retained by the Estate, pursuant to Bankruptcy Court

order, in an aggregate amount not to exceed the sum of One Million Two Hundred Fifty Thousand ($1,250,000) Dollars; (iii) if Lender acquires the Property through a sale in the Chapter 11 Case, all agreed upon fees and expenses allowed by final order of the Bankruptcy Court of any broker(s) retained by the Trustee for the sale of the Property; and (iv) any costs and fees of a Chapter 7 Trustee, should one be appointed, however, not to exceed the amount of $10,000.  On the closing date of the Facility, the Trustee shall deposit proceeds in the sum of $250,000.00 in a segregated account to be reserved for the payment of allowed fees and/or expenses incurred by any duly retained professionals of the Estate and applied against the amount of the Carve Out.  Any amount of the Carve Out paid or otherwise funded by Post-Petition Lender shall be treated as advances under the Financing.

24.    This Order has been negotiated in good faith and at arm's length between the Trustee and Post-Petition Lender, and any credit extended and loans made to the Estate pursuant to this Order shall be deemed to be extended in good faith as that term is used in § 364(e) of the Bankruptcy Code.

25.    Other than the Post-Petition Lender, no rights are created under this Order for the benefit of any creditor of the Debtor, any other party in interest in the Chapter 11 Case, or any other persons or entities, or any direct, indirect or incidental beneficiaries thereof.

26.    The terms and conditions of this Order shall be: (a) immediately enforceable notwithstanding Rule 6004(h) of the Rules; and (b) not be stayed absent (1) an application by a party in interest for such stay conforming with Rule 8007 of the Rules, and (2) a hearing upon notice to the Trustee and Post-Petition Lender.

27. To the extent that any of the provisions of this Order shall conflict with any of the provisions of the Facility Documents, this Order is deemed to control and shall supersede the conflicting provision(s).

28. The Post-Petition Lender and the Trustee may amend, modify or supplement any of the provisions of the Facility Documents (collectively, a "**Modification**") without further order of the Court, provided that: (a) such Modification is not material; (b) notice of such Modification is filed with the Court and given to the U.S. Trustee, reasonably prior to the proposed effective date thereof, except that filing with the Court shall not be required with respect to any Modification that in addition to being non-material is also technical and/or ministerial; and (c) the U.S. Trustee does not oppose such Modification within three (3) business days of such Notice. The foregoing provisions shall not apply to any forbearance or waiver by the Post-Petition Lender with respect to any Event(s) of Default which may have occurred (and the foregoing provisions shall not limit or impair the Post-Petition Lender's absolute discretion to agree to such forbearance or waiver), provided that such forbearance or waiver is not itself conditioned upon the Trustee's agreeing to any Modification that is material.

29. The Trustee's authorization to obtain Financing pursuant to this Order, shall be in effect for the period commencing on the date hereof through and including the maturity date set forth in the Facility Documents (the "**Expiration Date**"). The Trustee and the Post-Petition Lender may amend or provide for new Budgets and extend the Expiration Date, without the need for further Court approval, provided that any amended Budget and notice of any extension of the Expiration Date is filed with the Court.

30. The Trustee, on behalf of the Estate, hereby waives the right to assert any claims of offset, setoff, or recoupment with respect to the Facility, including, without limitation, against

any amounts that may be alleged to be owed by any affiliate of Post-Petition Lender, including with respect to any promissory note issued by 61 Prime LLC and/or any guaranty issued by Jason Carter, individually

Dated: New York, New York
December __, 2019

                                          Hon. Sean H. Lane
                                          United States Bankruptcy Judge