```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:
                                                              Chapter 11
305 EAST 61ST STREET GROUP, LLC,                              Case No.:  19-11911 (SHL)

                              Debtor.
------------------------------------------------------------x
```

**DECLARATION IN SUPPORT OF TRUSTEE'S MOTION FOR ENTRY OF A FINAL ORDER (1) AUTHORIZING THE TRUSTEE TO OBTAIN POST-PETITION FINANCING FROM LAZARUS 5, LLC ON, INTER ALIA, A SENIOR, FIRST PRIORITY SECURED AND SUPERPRIORITY ADMINISTRATIVE BASIS AND (2) GRANTING RELATED RELIEF**

**KENNETH P. SILVERMAN, ESQ.**, pursuant to 28 U.S.C. §1746, declares under penalty of perjury as follows:

1. I am the chapter 11 trustee (the "**Trustee**") of 305 East 61st Street Group, LLC (the "**Debtor**"), with offices located at 100 Jericho Quadrangle, Suite 300, Jericho, New York 11753. I am duly admitted to practice law before this Court and the courts of the State of New York.

2. I submit this declaration in support of my motion (the "**Motion**")[1] seeking the entry of a final order (i) authorizing me to obtain post-petition financing from Lazarus 5, LLC on, *inter alia*, a senior, first-priority secured and superpriority administrative basis, and (ii) granting related relief.

3. From a review of the Court's docket, the file maintained by my office, and my discussions with various parties and my professionals, I have personal knowledge of the facts set forth herein and, if called to testify, I could and would testify in a manner consistent with this Declaration.

---

[1] All capitalized terms used but not defined herein shall have the meanings given to them in the Motion.

## BACKGROUND

4. On the June 10, 2019 (the "**Filing Date**"), the Debtor commenced the Chapter 11 Case in this Court.

5. The Debtor owns and, prior to my appointment, managed a real estate project involving a 10-story building located at 305 East 61st Street, New York, New York (the "**Building**"), a former warehouse which was purchased by the Debtor for conversion into a condominium (the "**Project**"). The Debtor is a New York limited liability company, whose members consist of 61 Prime, LLC ("**Prime**"), Little Hearts Marks Family II, LP ("**LHM**"), Thaddeus Pollack, and Onestone305, LLC. The sole member of Prime is Jason Carter ("**Carter**").

6. The acquisition of the Building (for a total of $40 million) was financed, in part, with a $20 million acquisition loan, and construction of the Project was financed, in part, by a $10 million construction loan. The Debtor is currently indebted to the Existing Lender, as assignee of Popular Bank (f/k/a Banco Popular North America) ("**PB**"), in connection with three (3) loans made on or about June 8, 2017 by PB to the Borrower (collectively, the "**Existing Loans**"):

   a. Acquisition loan (the "**Acquisition Loan**") (i) evidenced by that certain (i) *Secured Restated Promissory Note*, dated as of June 8, 2017, in the original principal amount of $20,000,000.00 (the "**Acquisition Loan Note**"), made by Borrower in favor of PB; and (ii) secured by that certain *Mortgage Extension, Modification and Security Agreement* (the "**Acquisition Mortgage**"), dated as of June 8, 2017, in the original principal amount of $20,000,000.00 encumbering the real property commonly known as 305-307 East 61ST Street, New York, New York (Block 1436; Lot 5) (including all improvements thereon, the "**Property**"), which Acquisition Mortgage was recorded in the City Register of the City of New York, County of New York (the "**Register**") on July 7, 2017 as CRFN 2017000250851; and that certain

   b. Building loan (the "**Building Loan**") (i) evidenced by: (x) that certain *Building Loan Agreement*, dated as of June 8, 2017, in the original principal amount of up to $7,830,000.00 (the "**Building Loan Agreement**"), between Borrower and PB, and (y) that certain *Building Loan Note*, dated as of June 8, 2017, in the original principal amount of up to $7,830,000.00 (the "**Building Loan Note**"), made by Borrower in favor of PB; and (ii) secured by that certain *Building Loan Mortgage*

*and Security Agreement* (the "**Building Mortgage**"), dated as of June 8, 2017, in the original principal amount of $7,830,000.00 encumbering the Property, which Building Mortgage was recorded in the Register on July 7, 2017 as CRFN 2017000250852; and that certain

c. Project loan (the "**Project Loan**"; and together with the Acquisition Loan and the Building Loan, collectively referred to herein as, the "**Loans**") (i) evidenced by: that certain (x) *Project Loan Agreement*, dated as of June 8, 2017, in the original principal amount of up to $2,170,000.00 (the "**Project Loan Agreement**"; and together with the Building Loan Agreement, collectively referred to herein as the "**Agreements**"), between Borrower and PB; and (y) that certain *Project Loan Note*, dated as of June 8, 2017, in the original principal amount of up to $2,170,000.00 (the "**Project Loan Note**"; and together with the Acquisition Loan Note and the Building Loan Note, collectively referred to herein as the "**Notes**"), made by Borrower in favor of PB, and (ii) secured by that certain *Project Loan Mortgage and Security Agreement* (the "**Project Mortgage**"; and together with the Acquisition Mortgage and the Building Mortgage, collectively referred to herein as the "**Mortgages**"), dated as of June 8, 2017, in the original principal amount of $2,170,000.00 encumbering the Property, which Project Mortgage was recorded in the Register on July 7, 2017 as CRFN 2017000250853.

d. Reference is further made to that certain (i) *Assignment of Mortgage*, dated as of November 15, 2018 (the "**Acquisition Assignment**"), through which PB assigned all of its right, title and interest in and to the Acquisition Loan to Existing Lender, (ii) *Assignment of Mortgage*, dated as of November 15, 2018 (the "**Building Assignment**"), through which PB assigned all of its right, title and interest in and to the Building Loan to Existing Lender, and (iii) *Assignment of Mortgage,* dated as of November 15, 2018 (the "**Project Assignment**"; and together with the Acquisition Assignment and the Building Assignment, collectively referred to herein as the "**Assignments**"), through which PB assigned all of its right, title and interest in and to the Project Loan to Existing Lender. All of the foregoing Assignments were recorded in the Register on or about January 28, 2019 as CRFN 2019000031748 (for the Acquisition Assignment), and CRFN 2019000031749 (for the Building Assignment), CRFN 2019000031750 (for the Project Assignment), respectively.

7. Following the Filing Date and prior to my appointment, the Debtor retained possession of its assets and was authorized under the Bankruptcy Code to continue the operation of its business as a debtor-in-possession.

8. On September 13, 2019, this Court "So Ordered" and approved *a Stipulation and Order Appointing Interim Manager and Resolving Motions of United States Trustee and Marks LP to Appoint a Trustee* (ECF No. 59), appointing Nat Wasserstein as Interim Manager for the Debtor

(the "**Interim Manager**").

9. On October 16, 2019, the Interim Manager filed with the Court a *Status Report of Interim Manager for the Debtor* (ECF NO. 68) (the "**Status Report**"). In the Status Report, the Interim Manager provided a detailed report describing, among other things, the investigation he had conducted with respect to the status of the Building and Project, the claims of the Existing Lender, and his efforts to refinance the Existing Loans. (Status Report at p. 4). The entities with whom the Interim Manager met and/or spoke with that expressed interest in providing potential post-petition financing included, among others, NorthMarq Capital ("**NorthMarq**") and Columbia Pacific Advisors ("**CPA**"). The Interim Trustee was also dealing with a broker, Sandy Marks, who is a founder of Clearnote Capital and the brother of Mitchell Marks, a principal of LHM.

10. I understand that during a hearing before the Court conducted on October 17, 2019 in connection with a motion filed by the Existing Lender seeking the appointment of a chapter 11 trustee, counsel to the Debtor advised the Court that a proposed term sheet had been received by the Interim Manager from the Lender for post-petition financing on substantially similar terms to the Financing Agreement. I have also been advised that the Debtor's counsel circulated a copy of that term sheet to, among others, several potential financing sources that the Interim Manager had reached out to and/or met with, including NorthMarq and Columbia, as well as Sandy Marks. To date, none of these parties has submitted a firm offer with terms better than those proposed in the Financing Agreement.

11. October 24, 2019, the Bankruptcy Court entered an Order Appointing a Chapter 11 Trustee (ECF No. 72). On October 25, 2019, the Office of the United States Trustee filed the Application for the Appointment of Kenneth P. Silverman as Chapter 11 Trustee and Affidavit of

Disinterestedness of the Trustee (ECF No. 73), and by Order of the Bankruptcy Court dated October 28, 2019 (ECF No. 79), my appointment was approved.

12.     Following my appointment, I conducted my own investigation of matters concerning the Building, the Project, and potential financing sources to refinance or otherwise address the claims of the Existing Lender and the accruing default rate of interest asserted by the Existing Lender under the Existing Loans.  My efforts and those of my counsel included engaging in arm's-length negotiations with the Lender and others, including the Existing Lender (and its affiliate, Maverick Real Estate Partners, LLC).  I have successfully worked with NortMarq in connection with other cases, and NorthMarq has indicated that the terms of the financing proposed by the Lender are better than terms which would be offered by a third party in the marketplace.

13.     My negotiations with the Lender culminated in me requesting that the Lender make a loan to the Borrower, to which Lender agreed, subject to and upon the terms and conditions contained in the Financing Agreement, which loan shall be evidenced by the Financing Agreement and a Note (as defined in the Financing Agreement).[2]  The loan is to be secured by the Debtor's Collateral, all as more particularly defined in Section 5 of the Financing Agreement.[3]

**The Post-Petition Financing Represents the Best Available Financing.**

14.     As discussed above, the Interim Manager approached several potential sources regarding a potential post-petition financing arrangement.  Those efforts included engaging in extensive discussions and/or negotiations with NorthMarq, Columbia, the Existing Lender, and

---

[2]  The Lender is wholly-owned by a newly formed entity that is an affiliate of Carter, who is the principal of Prime, the largest equity holder of the Debtor, and may include other members of the Debtor.

[3]  I was provided financial information on a confidential basis concerning the ability of Lender to close on this transaction and is satisfied that the Lender and Carter have the financial wherewithal to consummate this transaction.  Although the transaction is not subject to any financing contingency, Lender has informed me that Carter, through an affiliate, has been working with SKW Funding, LLC to finance a part of the Post-Petition Financing to Lender.

the Lender, as well as working with a broker, Sandy Marks, the brother of Mitchell Marks.[4] Beginning with the Interim Manager and continuing after my appointment, this process occurred over a period of more than two months and included me engaging in substantial discussions and negotiations with the Lender, the Existing Lender, and Mitchell Marks. Those negotiations led to the definitive financing terms and conditions set forth in the Financing Agreement and related documents.

15. Lender is proposing financing at a reasonable interest rate that will result in significant savings to the Debtor's estate, is not charging any transactional fees, closing costs, or pre-payment penalties, provides for the accrual of interest, and offers the other substantial benefits described above. The Post-Petition Financing also provides the me with additional time to administer this case.

16. After exploring the various financing options and engaging in extensive negotiations with concessions from the Lender, I have determined, in the exercise of my reasonable business judgement, that the proposal from Lender represents the best and most favorable financing under the circumstances in light of the particular needs in the Debtor's case. For these reasons, the I submit that the proposed financing is in the best interests of the Debtor's creditors and is necessary to preserve the value of estate assets and is a sound exercise of my business judgment.

17. To date, I have received no better offer than that presented by the Lender for proposed financing. Rather, the proposed financing will reduce the Debtor's debt service obligations by approximately $8,000 per day. The proposed financing will thus preserve estate assets pending the sale of the Property and assist me in maximizing the return to creditors in this

---

[4] Prior to the hearing on this Motion, my counsel and I have commenced and will continue to speak to each potentially interested party regarding the terms of potential financing.

case. I also submit that the contract rate of 8.34% and the other terms and conditions of the Financing Agreement are well within the range of reasonableness for proposed financing of this nature. The Financing Agreement was negotiated in good faith and at arm's length.

18.     In sum, I believe that the terms and conditions of the Post-Petition Financing represent the most favorable option for post-petition financing and, for the foregoing reasons, are in the best interests of the Debtor, its estate, and its creditors. I submit that the terms and conditions of the Financing Agreement are fair and reasonable and are the result of arms' length negotiations between the Lender and I. Accordingly, the Lender should be accorded the benefits of Bankruptcy Code §364(e) in respect of the Post-Petition Financing.

19.     For the foregoing reasons, I respectfully request that the Court enter the Final Order authorizing the Debtor's estate to obtain financing on the terms set forth herein and in the Financing Agreement; and grant such further relief as is just and proper.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed in Jericho, New York on December 4, 2019.

*s/Kenneth P. Silverman*
Kenneth P. Silverman, Esq.