**SILVERMANACAMPORA LLP**
Attorneys for the Chapter 11 Trustee
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Ronald J. Friedman
Brian Powers

Hearing Date: February 5, 2020
Time: 11:00 a.m.

Objections Due: January 29, 2020
Time: 4:00 p.m.

*Attorneys for the Chapter 11 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
In re:

305 EAST 61ST STREET GROUP, LLC,

Chapter 11
Case No. 19-11911 (SHL)

Debtor.
-------------------------------------------------------x

## NOTICE OF HEARING ON TRUSTEE'S MOTION FOR ENTRY OF A FINAL ORDER (i) AUTHORIZING THE TRUSTEE TO OBTAIN POST-PETITION FINANCING AND GRANT LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS PURSUANT TO 11 U.S.C. §§ 105(a), 364(c) AND 364(d); (ii) GRANTING REPLACEMENT LIENS AND RIGHTS TO ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 105 AND 361; (iii) MODIFYING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362; (iv) SETTLING CLAIMS UNDER BANKRUPTCY RULE 9019; (v) AND GRANTING RELATED RELIEF

**PLEASE TAKE NOTICE**, that upon the attached motion (the "**Motion**") of Kenneth P. Silverman, Esq., the chapter 11 operating trustee (the "**Trustee**") of the estate of 305 East 61st Street Group, LLC (the "**Debtor**"), will move before the Honorable Sean H. Lane, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, at the United States Bankruptcy Court, Southern District of New York, Alexander Hamilton U.S. Custom House, Courtroom 701, One Bowling Green, New York, New York 10004 on **February 5, 2020 at 11:00 a.m.** (the "**Hearing**"), or as soon thereafter as counsel can be heard, for entry of an order (i) authorizing the Trustee to obtain post-petition financing and grant liens and superpriority administrative expense status pursuant to 11 U.S.C. §§ 105(a), 364(c) and 364(d);

1

(ii) granting replacement liens and rights to adequate protection pursuant to 11 U.S.C. §§ 105 and 361; (iii) modifying the automatic stay pursuant to 11 U.S.C. § 362; (iv) settling claims under Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"); and (v) granting related relief.

**PLEASE TAKE FURTHER NOTICE**, that objections, if any, to the relief sought in the Motion shall be in writing, filed with the Court electronically in accordance with General Order M-399 by registered users of the Court's electronic case filing system and, by all other parties in interest, mailed to the Clerk of the United States Bankruptcy Court, Alexander Hamilton U.S. Custom House, One Bowling Green, New York, New York 10004-1408, on a CD-Rom or flash drive, preferably in Portable Document format (PDF), WordPerfect or any other Windows-based word processing format, with a courtesy copy delivered directly to the Chambers of Judge Sean H. Lane, United States Bankruptcy Court, Courtroom 701, Alexander Hamilton U.S. Custom House, New York, New York 10004, and served in accordance with General Order M-399 upon: (i) SilvermanAcampora LLP, counsel to the Trustee, 100 Jericho Quadrangle, Suite 300, Jericho, New York 11753, Attn: Ronald J. Friedman, Esq., (ii) Katsky Korins LLP, counsel to 305 E 61st Street Lender LLC, 605 Third Avenue, New York, New York 10158, Attn: Steven H. Newman, Esq., and (iii) The Office of the United States Trustee, 201 Varick Street Suite 1006, New York, New York, 10014, Attn: Paul Schwartzberg, Esq.

HTRUST/2373377.1/010001

**PLEASE TAKE FURTHER NOTICE**, that the Hearing may be adjourned without further notice other than by announcement of such adjournment in open Court or by the filing of a notice of such adjournment on the Court's docket.

Dated: January 14, 2020
      Jericho, New York

                              **SILVERMANACAMPORA LLP**


                               *s/ Ronald J. Friedman*
                              Ronald J. Friedman
                              Brian Powers
                              100 Jericho Quadrangle, Suite 300
                              Jericho, New York 11753
                              (516) 479-6300

                              *Attorneys for the Chapter 11 Trustee*

HTRUST/2373377.1/010001

**SILVERMANACAMPORA LLP**
Attorneys for the Chapter 11 Trustee
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Ronald J. Friedman
Brian Powers

*Attorneys for the Chapter 11 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
In re:

305 EAST 61ST STREET GROUP, LLC,

                                    Debtor.
-------------------------------------------------------x

                              Chapter 11
                              Case No. 19-11911 (SHL)

## TRUSTEE'S MOTION FOR ENTRY OF A FINAL ORDER (i) AUTHORIZING THE TRUSTEE TO OBTAIN POST-PETITION FINANCING AND GRANT LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS PURSUANT TO 11 U.S.C. §§ 105(a), 364(c) AND 364(d); (ii) GRANTING REPLACEMENT LIENS AND RIGHTS TO ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 105 AND 361; (iii) MODIFYING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362; (iv) SETTLING CLAIMS UNDER BANKRUPTCY RULE 9019; (v) AND GRANTING RELATED RELIEF

Kenneth P. Silverman, Esq., the chapter 11 operating trustee (the "**Trustee**") of 305 East 61st Street Group, LLC (the "**Debtor**" or "**Borrower**"), submits this motion (the "**Motion**") seeking the entry of a final order (i) authorizing the Trustee to obtain post-petition financing and grant liens and superpriority administrative expense status pursuant to 11 U.S.C. §§ 105(a), 364(c) and 364(d); (ii) granting replacement liens and rights to adequate protection pursuant to 11 U.S.C. §§ 105 and 361; (iii) modifying the automatic stay pursuant to 11 U.S.C. § 362; (iv) settling claims under Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"); and (v) granting related relief, and in support of the Motion, respectfully sets forth and represents as follows:

## PRELIMINARY STATEMENT

1.     As the Court is aware, and as described below, since his appointment in the case the Trustee has engaged in substantial discussions with all of the parties in interest in this case with respect to potential resolutions of the myriad issues facing the Debtor and its estate. Chief among those issues are (i) the continuing accrual of interest on the Existing Loans (defined below) and the related secured claim (the "**Lender Claim**") asserted by 305 East 61st Lender, LLC (the "**Lender**") at approximately $18,000 per diem; (ii) the fixing of the Lender Claim and disputes relating to the Lender's calculation of the Lender Claim; (iii) the continuing cash needs of the Debtor's estate; and (iv) the maximization of the value of the Debtor's real property (the "**Property**") for all parties in interest.

2.     To those ends, the Trustee negotiated a post-petition financing agreement (the "**Lazarus Financing Agreement**") with Lazarus 5, LLC ("**Lazarus**") and filed a motion to approve the Lazarus Financing Agreement. At the time of the filing of the motion, out of all of the then-available options the Lazarus Financing Agreement provided the estate with the most beneficial means of addressing the major issues of the Debtor's case.[1]

3.     Subsequently, the Lender provided the Trustee with an offer (the "**Lender Offer**") which, if approved by the Court, would, among other things: (i) fix the Lender Claim at $41,093,000 as of December 31, 2019 (a reduction of more than $2 million);[2] (ii) reduce the interest rate at which the Lender Claim continues to accrue post-petition to 14% as of January 1, 2020 (a savings of approximately $7,200 per diem); (iii) provide the estate with $2 million in

---

[1] Subsequent to the filing of the motion to approve the Lazarus Financing Agreement, the Trustee was informed that Lazarus may have been unable to timely close under the Lazarus Financing Agreement.

[2] As set forth in the Settlement Agreement, the Lender asserts that the Lender Claim is currently (i) $43,243,051.09, plus (ii) all fees and expenses, including without limitation, attorneys' fees and expenses, and all charges and protective advances incurred from and after December 1, 2019.

     BPOWERS/2367684.1/010001

available post-petition financing on terms more favorable to the estate than offered by Lazarus (the "**Post-Petition Financing**"); and (iv) provide for the Lender to be the stalking horse bidder for the sale of the Property at an opening bid consisting of (a) a credit bid of all pre- and post-petition amounts due to Lender from the estate, and (b) a cash payment of $3 million.  After careful consideration of all attendant factors, the Trustee, in his reasoned business judgment, has elected to move forward with the Lender Offer in place of the Lazarus Financing Agreement.

4.      Pursuant to the Lender Offer, the proposed Post-Petition Financing will be implemented through, *inter alia*, a (i) Secured Promissory Note, substantially in the form attached hereto as **Exhibit A** (the "**Note**"); (ii) Mortgage, Assignment of Leases and Rents and Security Agreement, substantially in the form attached hereto as **Exhibit B** (the "**Mortgage**" and, together with the Note, the "**Loan Documents**"),[3] and (b) proposed final financing order, substantially in the form attached hereto as **Exhibit C**  (the "**Final Financing Order**").

5.      Additionally, the Trustee proposes to settle the disputes relating to the Lender Claim by and through the Settlement and Forbearance Agreement attached hereto as **Exhibit D** (the "**Settlement Agreement**"). Among other things, the Settlement Agreement provides for the allowance of the Lender Claim at the fixed amount of $41,093,000 as of December 31, 2019[4] and reduces the interest rate at which the Lender Claim continues to accrue post-petition to 14% as of January 1, 2020.  Moreover, simultaneously herewith the Trustee has filed a motion (the

---

[3] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Loan Documents.

[4] Pursuant to the Settlement Agreement, the Lender Claim shall be reduced and allowed in the amount of the sum equal to (a) $41,093,000.00, plus (b) all interest accruing on and after January 1, 2020, until the Loans are paid in full plus (c) an amount equal to all actual attorneys' fees and expenses incurred by Lender and all protective advances made by Lender on and after January 1, 2020, until the date that Loans are paid in full (such aggregate sum being described in clauses (a), (b), and (c) immediately above is herein referred to as the "Lender's Allowed Claim"); provided however, (i) in addition to having the Lender's Allowed Claim, the Lender shall have, and reserves any and all rights to assert, any contingent, unliquidated, and /or unknown claims for any indemnities, charges, costs, expenses, fees, and other obligations to which Lender is entitled under the Loan Documents, other than late fees and pre-December 31, 2019 default rate interest, which is defined in the Sale Agreement as the "Lender's Additional Claim".

BPOWERS/2367684.1/010001

"**Sale Motion**") to, among other things, approve the bidding procedures for the sale of the Property and the stalking horse purchase agreement entered into between the Trustee and the Lender (the "**Purchase Agreement**"). Approval of the Sale Motion and the Lender's stalking horse agreement is integral to the settlement reached with the Lender, and the Lender and the Trustee agreed that approval of the instant motion shall be contingent upon Court approval of the Sale Motion.

6.      For the reasons set forth above, and as more fully explained below, the Trustee requests that the Court grant the relief requested herein.

### JURISDICTION AND VENUE

7.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§157 and 1334, and the "Amended Standing Order of Reference" of the United States District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.).

8.      This is a core proceeding pursuant to 28 U.S.C. §157(b).

9.      Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

10.     The statutory predicates for the relief requested herein are Bankruptcy Code §§105, 361, 362, 363 and 364 of title 11, United States Code (the "**Bankruptcy Code**"), Rules 2002, 4001, 9014, and 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 4001-2 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**").

### SUMMARY OF RELIEF REQUESTED

11.     By this Motion, the Trustee requests entry of the Final Financing Order, (i) authorizing the Trustee to obtain post-petition financing and grant liens and superpriority administrative expense status pursuant to Bankruptcy Code §§ 105(a), 364(c) and 364(d); (ii)

4

granting replacement liens and rights to adequate protection pursuant to Bankruptcy Code §§ 105 and 361; (iii) modifying the automatic stay pursuant to Bankruptcy Code § 362; (iv) settling claims under Bankruptcy Rule 9019; and (v) granting related relief. In accordance with Bankruptcy Rule 4001(c)(1)(B) and Local Rule 4001-2.

12.     The following is a summary of material provisions of the Loan Documents:[5]

a.      <u>Amount of Credit</u>:     Lender has agreed to provide a senior secured superpriority post-petition financing loan to the Debtor's estate in the amount of up to Two Million Dollars ($2,000,000.00).

b.      <u>Interest Rates</u>. Interest on the total unpaid principal balance of the Post-Petition Loan will accrue at a rate per annum equal to six percent (6%). Interest will accrue on the total unpaid principal balance of the Loan after the occurrence of an Event of Default at a rate per annum equal to twenty-four percent (24%). Note at Preamble; § 6.4.

c.      <u>Use of Proceeds</u>:     The Loan proceeds shall be used solely for: (a) capital improvements to the Property; and (b) insurance, utilities and maintenance of the Property, (c) fees and expenses of OTL Enterprises, LLC, and (d) up to $500,000.00 of the fees and expenses of the counsel and accountants retained by the Trustee, which in all cases (a) through (c) are approved by Holder, which approval shall not be unreasonably withheld. Note at §2.2.

d.      <u>Security</u>: To secure the prompt payment and performance of any and all Post-Petition Obligations of the Trustee to Lender of whatever kind or nature or description, absolute or contingent, now existing or hereafter arising, Lender shall have and is hereby granted, effective as of the date hereof, valid and perfected first priority security interests, mortgages and liens, superior to all other liens, claims and/or security interests that any creditor of the Debtor's Estate may have, in and upon all of the Collateral (as such term is defined in the Mortgage), including, without limitation, the Real Property. Mortgage at §5; Final Financing Order at ¶10.

e.      <u>Carve-Out.</u>     The Carve-Out is comprised of the following: (i) Statutory fees and interest payable to the U.S. Trustee pursuant to 28 U.S.C. section 1930(a)(6); (ii) subject to the terms and conditions of the Final Financing Order, in the event of the closing of a sale of the Real Property (in whole) to Lender (or any designee or assignee thereof), which sale is conducted in accordance with a process and terms and conditions which have been approved by Lender, the commissions (but not expenses) of any retained real estate broker(s) but only to the extent: (1)

---

[5] The following is not intended to be a complete recitation of all of the terms of the Loan Documents. All parties are encouraged to review the Loan Documents for the full terms of the agreement between the parties.

BPOWERS/2367684.1/010001

Lender has agreed in writing to the retention of such particular broker(s) and the terms and commissions thereof; and (2) such commission shall not exceed the aggregate sum of one-half percent (0.5%) of the amount bid by the Lender (or any designee or assignee thereof) in the event that Lender (or any designee or assignee thereof) is the successful bidder and takes title to the Real Property; (iii) subject to the terms and conditions of the Final Financing Order, the unpaid and outstanding: (1) reasonable commissions, fees and expenses of the Trustee approved by a final order of the Court pursuant to section 326 of the Bankruptcy Code ("**Allowed Trustee Fees**"); and (2) the reasonable fees and expenses actually incurred on or after October 28, 2019 and approved by a final order of the Court pursuant to sections 327, 328, 330, or 331 of the Bankruptcy Code (collectively, "**Allowed Professional Fees**") by the attorneys and accountants retained under section 327 of the Bankruptcy Code by the Trustee (collectively, the "**Professionals**"), in a cumulative, aggregate sum for both the Trustee and all Professionals not to exceed $1,500,000 ("**Professional Fee Carve Out**") but excluding any real estate broker(s), which shall be subject to Section 15(b), provided that if the Debtor's case is converted to one under Chapter 7 of the Bankruptcy Code, the sum of $2,000 shall be reserved from the Professional Fee Carve Out for any post-conversion expenses of the Chapter 7 trustee. Final Financing Order at ¶15.

f.   Maturity Date: The Maturity Date is the date that is the earliest to occur of (i) July 31, 2020; (ii) the date the Property (in whole or in part) is sold, transferred or conveyed in any manner; (iii) the date a plan of reorganization or liquidation is confirmed pursuant to an order of the Bankruptcy Court and a closing on the sale of the Property (in whole or in part) occurs; or (iv) the date that the Debtor's Chapter 11 case is converted to a case under Chapter 7 of the Bankruptcy Code. Note at §4.

g.   Costs and Expenses. Lender's expenses, including, without limitation, reasonable attorneys' fees and disbursements, incurred or paid by Lender in protecting the interest in the Collateral and in enforcing the rights under the Loan Documents with respect to the Collateral shall constitute a portion of the Debt and shall be secured by the Mortgage. Mortgage §26.

h.   Optional Prepayment of Loan. Provided that there shall be no Event of Default outstanding under the Note, or any of the Loan Documents, the outstanding balance of the principal sum shall be pre-payable at any time on ten (10) days written notice to holder, in whole or in part, without any prepayment premium or penalty. Note §5.

i.   Indemnity. Debtor's Estate shall protect, defend, reimburse and hold harmless Lender from and against all liabilities, obligations, claims, demands, damages, penalties, causes of action, losses, fines, costs and expenses (including, without limitation, reasonable attorneys' fees, whether in-house staff, retained firms, or otherwise, and disbursements), imposed upon or incurred by or asserted against Lender by reason of (a) ownership of this Mortgage, the Mortgaged Property or

any interest therein or receipt of any Rents; (b) any accident, injury to or death of persons or loss of or damage to property occurring in, on or about the Mortgaged Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (c) any use, nonuse or condition in, on or about the Mortgaged Property or any part thereof or on adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (d) any failure on the part of Debtor's Estate to perform or comply with any of the terms of this Mortgage; (e) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any part thereof; (f) the presence, disposal, escape, seepage, leakage, spillage, discharge, emission, release, or threatened release of any hazardous substance or asbestos on, from, or affecting the Mortgaged Property; (g) any personal injury (including wrongful death) or property damage (real or personal) arising out of or related to any hazardous substance or asbestos; (h) any lawsuit brought or threatened, settlement reached, or government order relating to any hazardous substance or asbestos; (i) any violation of environmental laws, which are based upon or in any way related to any hazardous substance or asbestos including, without limitation, the costs and expenses of any remedial work, attorneys' and consultant fees and disbursements, investigation and laboratory fees, court costs, and litigation expenses; (j) any failure of the Mortgaged Property to comply with any access laws; (k) any representation or warranty made in the Note, this Mortgage or any of the other Loan Documents being false or misleading in any material respect as of the date such representation or warranty was made; (1) any claim by brokers, finders or similar persons claiming to be entitled to a commission in connection with any Lease or other transaction involving the Mortgaged Property or any part thereof under any legal requirement or any liability asserted against Lender with respect thereto, including mortgage brokerage fees; (m) any claims arising out of or related to the Mortgaged Property, Mortgage, the Note, the Loan Documents, the Debt, and/or any other loans made to the Debtor, (n) the claims of any lessee of any or any portion of the Mortgaged Property or any person acting through or under any lessee or otherwise arising under or as a consequence of any Lease, (o) any amounts payable to Lender by reason of the application of this paragraph shall be secured by this Mortgage and shall become immediately due and payable and shall bear interest at the Default Rate from the date the loss or damage is sustained by Lender until paid and any amendment to, or restructuring of, the Debt and the Loan Documents, (p) any and all lawful action that may be taken by Lender in connection with the enforcement of the provisions of this Mortgage or the Note or any of the other Loan Documents, whether or not suit is filed in connection with the same, or in connection with the Debtor's Estate and/or any partner, member, joint venturer or shareholder thereof becoming a party to a voluntary or involuntary federal or state bankruptcy, insolvency or similar proceeding, and (q) the past, current and/or future sale or offering for sale of any interests in Debtor's Estate, including, without limitation, liabilities under any applicable securities or blue sky laws. Mortgage §33.

BPOWERS/2367684.1/010001

j.   _Default and Remedies_:  Usual and customary Event of Default provisions for financings of this type are set forth at §21 of the Mortgage.  Usual and customary remedy provisions for financings of this type are set forth at §24 of the Mortgage. Upon the occurrence of any default under the Loan Documents, subject to the provisions of the Loan Documents and any notice provisions therein, the transmission of which shall not be a violation of the automatic stay under section 362 of the Bankruptcy Code, the Lender shall be entitled to take any action and exercise all rights and remedies provided to it by the Final Financing Order, the Loan Documents and/or applicable law as it may deem appropriate in its sole discretion to, among other things, proceed against and realize upon the Collateral and any other assets and properties of the Estate upon which the Lender has been or may hereafter be granted liens and security interests to obtain the full and indefeasible repayment of all Post-Petition Obligations.  Mortgage at §§21, 24; Final Financing Order at ¶19.

## **BACKGROUND**

13.    On the June 10, 2019 (the "**Filing Date**"), the Debtor commenced the Chapter 11 Case in this Court.

14.    The Debtor owns and, prior to the appointment of the Trustee, managed a real estate project involving a 10-story building located at 305 East 61st Street, New York, New York (the "**Building**"), a former warehouse which was purchased by the Debtor for conversion into a condominium (the "**Project**").  The Debtor is a New York limited liability company, whose members consist of 61 Prime, LLC ("**Prime**"), Little Hearts Marks Family II, LP ("**LHM**"), Thaddeus Pollack, and Onestone305, LLC.  The sole member of Prime is Jason Carter ("**Carter**").

15.    The acquisition of the Building (for a total of $40 million) was financed, in part, with a $20 million acquisition loan, and construction of the Project was financed, in part, by a $10 million construction loan.  The Debtor is currently indebted to the Existing Lender, as assignee of Popular Bank (f/k/a Banco Popular North America) ("**PB**"), in connection with three (3) loans made on or about June 8, 2017 by PB to the Borrower (collectively, the "**Existing Loans**"):

BPOWERS/2367684.1/010001

a.    Acquisition loan (the "**Acquisition Loan**") (i) evidenced by that certain (i) *Secured Restated Promissory Note*, dated as of June 8, 2017, in the original principal amount of $20,000,000.00 (the "**Acquisition Loan Note**"), made by Borrower in favor of PB; and (ii) secured by that certain *Mortgage Extension, Modification and Security Agreement* (the "**Acquisition Mortgage**"), dated as of June 8, 2017, in the original principal amount of $20,000,000.00 encumbering the real property commonly known as 305-307 East 61ST Street, New York, New York (Block 1436; Lot 5) (including all improvements thereon, the "**Property**"), which Acquisition Mortgage was recorded in the City Register of the City of New York, County of New York (the "**Register**") on July 7, 2017 as CRFN 2017000250851; and that certain

b.    Building loan (the "**Building Loan**") (i) evidenced by: (x) that certain *Building Loan Agreement*, dated as of June 8, 2017, in the original principal amount of up to $7,830,000.00 (the "**Building Loan Agreement**"), between Borrower and PB, and (y) that certain *Building Loan Note*, dated as of June 8, 2017, in the original principal amount of up to $7,830,000.00 (the "**Building Loan Note**"), made by Borrower in favor of PB; and (ii) secured by that certain *Building Loan Mortgage and Security Agreement* (the "**Building Mortgage**"), dated as of June 8, 2017, in the original principal amount of $7,830,000.00 encumbering the Property, which Building Mortgage was recorded in the Register on July 7, 2017 as CRFN 2017000250852; and that certain

c.    Project loan (the "**Project Loan**"; and together with the Acquisition Loan and the Building Loan, collectively referred to herein as, the "**Loans**") (i) evidenced by: that certain (x) *Project Loan Agreement*, dated as of June 8, 2017, in the original principal amount of up to $2,170,000.00 (the "**Project Loan Agreement**"; and together with the Building Loan Agreement, collectively referred to herein as the "**Agreements**"), between Borrower and PB; and (y) that certain *Project Loan Note*, dated as of June 8, 2017, in the original principal amount of up to $2,170,000.00 (the "**Project Loan Note**"; and together with the Acquisition Loan Note and the Building Loan Note, collectively referred to herein as the "**Notes**"), made by Borrower in favor of PB, and (ii) secured by that certain *Project Loan Mortgage and Security Agreement* (the "**Project Mortgage**"; and together with the Acquisition Mortgage and the Building Mortgage, collectively referred to herein as the "**Mortgages**"), dated as of June 8, 2017, in the original principal amount of $2,170,000.00 encumbering the Property, which Project Mortgage was recorded in the Register on July 7, 2017 as CRFN 2017000250853.

Reference is further made to that certain (i) *Assignment of Mortgage*, dated as of November 15, 2018 (the "**Acquisition Assignment**"), through which PB assigned all of its right, title and interest in and to the Acquisition Loan to Existing Lender, (ii) *Assignment of Mortgage*, dated as of November 15, 2018 (the "**Building Assignment**"), through which PB assigned all of its right, title and interest in and to the Building Loan to Existing Lender, and (iii) *Assignment of Mortgage*, dated as of November 15, 2018 (the "**Project Assignment**"; and together with the Acquisition Assignment and the Building Assignment, collectively referred to

BPOWERS/2367684.1/010001

herein as the "**Assignments**"), through which PB assigned all of its right, title and interest in and to the Project Loan to Existing Lender. All of the foregoing Assignments were recorded in the Register on or about January 28, 2019 as CRFN 2019000031748 (for the Acquisition Assignment), and CRFN 2019000031749 (for the Building Assignment), CRFN 2019000031750 (for the Project Assignment), respectively.

16.    On September 13, 2019, this Court "So Ordered" and approved *a Stipulation and Order Appointing Interim Manager and Resolving Motions of United States Trustee and Marks LP to Appoint a Trustee* (ECF No. 59), appointing Nat Wasserstein as Interim Manager for the Debtor (the "**Interim Manager**").

17.    On October 16, 2019, the Interim Manager filed with the Court a *Status Report of Interim Manager for the Debtor* (ECF NO. 68) (the "**Status Report**"). In the Status Report, the Interim Manager provided a detailed report describing, among other things, the investigation he had conducted with respect to the status of the Building and Project, the claims of the Existing Lender, and his efforts to refinance the Existing Loans. (Status Report at p. 4). The entities with whom the Interim Manager met and/or spoke with that expressed interest in providing potential post-petition financing included, among others, NorthMarq Capital ("**NorthMarq**") and Columbia Pacific Advisors ("**CPA**"). The Interim Manager was also dealing with a broker, Sandy Marks, who is a founder of Clearnote Capital and the brother of Mitchell Marks, a principal of LHM.

18.    The Trustee understands that during a hearing before the Court conducted on October 17, 2019 in connection with a motion filed by the Existing Lender seeking the appointment of a chapter 11 trustee, counsel to the Debtor advised the Court that a proposed term sheet had been received by the Interim Manager from the Lender for post-petition financing on substantially similar terms to the Loan Documents. The Trustee has also been advised that the Debtor's counsel circulated a copy of that term sheet to, among others, several potential

financing sources that the Interim Manager had reached out to and/or met with, including NorthMarq and Columbia, as well as Sandy Marks.  To date, none of those parties has submitted a firm offer with terms better than those proposed in the Loan Documents.

19.    October 24, 2019, the Bankruptcy Court entered an Order Appointing a Chapter 11 Trustee (ECF No. 72).  On October 25, 2019, the Office of the United States Trustee filed the Application for the Appointment of Kenneth P. Silverman as Chapter 11 Trustee and Affidavit of Disinterestedness of the Trustee (ECF No. 73), and by Order of the Bankruptcy Court dated October 28, 2019 (ECF No. 79), the appointment of the Trustee was approved.

20.    Following his appointment, the Trustee conducted his own investigation of matters concerning the Building, the Project, and potential financing sources to refinance or otherwise address the claims of the Lender and the accruing default rate of interest asserted by the Existing Lender under the Existing Loans.  The Trustee's efforts included engaging in arm's-length negotiations with the Lender and others, including Lazarus, an affiliate of Carter and Prime.

21.    The negotiations between the Trustee and Lazarus culminated in the Trustee and Lazarus entering into the Lazarus Financing Agreement, subject to approval of this Court.  On December 4, 2019, the Trustee filed a motion to authorize him to consummate the Lazarus Financing Agreement (the "**Lazarus Financing Motion**").

22.    Prior to the hearing on the Lazarus Financing Motion, the Lender made an offer to the Trustee, embodied in the Settlement Agreement and the Loan Documents, which would provide for (i) the fixing of Lender's existing claim against the Debtor's estate and a reduction in the interest rate at which such claim accrues post-petition; (ii) post-petition financing from the Lender in the amount of $2 million; and (iii) an agreement from the Lender to serve as the

11

BPOWERS/2367684.1/010001

stalking horse bidder for the sale of the Property at a price which is $3 million above the Lender's pre- and post-petition claims against the Debtor's estate.

23.    After consideration of the competing offers of Lazarus and the Lender, as well as the facts and circumstances surrounding the Debtor's chapter 11 case, the Trustee determined, in his reasoned business judgment, that the proposed financing arrangement and settlement with the Lender, as embodied in the Settlement Agreement and the Loan Documents, are the best available financial arrangement and are, accordingly, in the best interest of the estate, its creditors, and all parties in interest.

## ARGUMENT

### The Proposed Post-Petition Financing

24.    As discussed above, in order to satisfy the continuing cash needs of the Debtor's estate, both the Interim Manager and the Trustee approached several potential sources regarding a potential post-petition financing arrangement. As a result of their combined efforts, the Trustee entered into the Lazarus Financing Agreement which, at the time, provided the most benefit to the estate of all available options.

25.    Now, the Lender has proposed, among other financial accommodations which are discussed herein, to provide post-petition financing at a commercially reasonable interest rate of 6%. Additionally, the proposed financing will not have any transactional fees, closing costs, or pre-payment penalties, and provides solely for the accrual of interest.

26.    After exploring the various financing options, including the Lazarus Financing Agreement, and engaging in extensive negotiations with the Lender, the Trustee has determined, in the exercise of his reasoned business judgment, that the Lender Offer represents the best and most favorable available financing for the Debtor's estate.    For these reasons, the Trustee

BPOWERS/2367684.1/010001

submits that the proposed financing is in the best interests of the Debtor's creditors and is

necessary to preserve the value of estate assets and is a sound exercise of the Trustee's business

judgment.

Authorization of Post-petition Financing on a
Senior Secured and Superpriority Basis Should Be Approved.

27.     Bankruptcy Code §364 authorizes this Court to allow the Trustee to obtain post-

petition financing for the benefit of the Debtor from Lender in the manner proposed by Lender in

the Loan Documents.   As security for all borrowings under the Post-Petition Financing, the

Trustee proposes to grant the Lender a superpriority administrative claim and a superpriority lien

on and security interest in all or substantially all of the Debtor's assets, subject only to the Carve

Out.   Such relief is authorized pursuant to Bankruptcy Code §§364(c)(1)(2) and (3), 364(d)(1),

503(b) and 507.

28.     The granting of superpriority administrative credit is allowable under Bankruptcy

Code Section 364(c) which provides:

> If the trustee is unable to obtain unsecured credit allowable under Section
> 503(b)(1) of this title as an administrative expense, the court, after notice and a
> hearing, may authorize the obtaining of credit or the incurring debt –
>
> (1)   with priority over any and all administrative expenses of the kind specified
>       in Sections 503(b) and 507(b) of this title;
> (2)   Secured by a lien on property of the estate that is not otherwise subject to
>       a lien; or
> (3)   secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. §364(c).

29.     To satisfy the requirements of Section 364(c) of the Bankruptcy Code, a debtor

need only demonstrate 'by a good faith effort that credit was not available' to the debtor on an

unsecured or administrative basis. *Bray v. Shenandoah Fed. Savs & Loan Ass'n (In re Showshoe
Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986).

BPOWERS/2367684.1/010001

30.    The granting of superpriority lien status is governed by Bankruptcy Code §364(d)(1) which provides:

(d)(1) The Court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien if –

(A) the trustee is unable to obtain such credit otherwise; and

(B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted

11 U.S.C. §364(d)(1).

31.    Here, as set forth above, after a good faith inquiry the Trustee has concluded that the Debtor is unable to obtain financing other than on a secured superpriority basis.

<u>The Lender Should Be Deemed a Good Faith Lender under Section 364(e)</u>

32.    Bankruptcy Code section 364(e) protects a good faith lender's right to collect on loans extended to a debtor, and its right in any lien securing those loans, even if the authority of the debtor to obtain such loans or grant such liens is later reversed or modified on appeal. Section 364(e) provides that:

The reversal or modification on appeal of an authorization under this section [364 of the Bankruptcy Code] to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

11 U.S.C. § 364(e).

33.    As explained above, the Post-Petition Financing, including the Loan Documents, are the result of the Trustee's reasonable and informed determination that the Lender offered the most favorable terms pursuant to which the Debtor's estate could obtain necessary post-petition financing. All negotiations of the Post-Petition Financing were conducted in good faith and at

14

arms' length.  The terms and conditions of the Post-Petition Financing are fair and reasonable
(and, as set forth above, superior to the Lazarus Financing Agreement), and the proceeds of the
Post-Petition Financing and the will be used only for purposes that are permissible under the
Bankruptcy Code, and in accordance with the Final Financing Order and the Loan Documents.
Further, no consideration is being provided to any party to the Loan Documents other than as
described herein.  Accordingly, the Court should find that the Lender is a "good faith" lender
within the meaning of section 364(e) of the Bankruptcy Code and is entitled to all of the
protections afforded by that section.

Modification of Automatic Stay Is Warranted

34.    The relief requested herein contemplates a modification of the automatic stay to
permit: (i) the Trustee to grant the security interests, liens, and superpriority claims described
above with respect to the Lender and to perform such acts as may be requested to assure the
perfection and priority of such security interests and liens; (ii) the Lender to exercise, upon the
occurrence and during the continuance of an Event of Default (as defined in the applicable Loan
Documents), after the expiration of the applicable grace period, if any, or the occurrence of an
Event of Default, as applicable, certain remedies under the Loan Documents after giving the
required notice to the Trustee (subject to the terms of the Loan Documents); and (iii) implement
the terms of the proposed Final Financing Order including payment of all amounts referred to in
the Loan Documents.

35.    Stay modifications of this kind are ordinary and standard features of post-petition
financing facilities and, in the Trustee's business judgment, are appropriate under the present
circumstances. *See, e.g., In re The Great Atl. & Pac. Tea Co., Inc.*, Case No. 15-23007 (RDD)
(Bankr. S.D.N.Y. July 21, 2015) [Docket No. 88]; *In re Chassix Holdings, Inc.*, Case No. 15-

BPOWERS/2367684.1/010001

10578 (MW) (Bankr. S.D.N.Y. Mar. 13, 2015) [Docket No. 67]; *In re The Reader's Digest* 32 *Assoc.*, Case No. 09-23529 (RDD) (Bankr. S.D.N.Y. Aug. 26, 2009) [Docket No. 26]; *In re Lear Corp.*, Case No. 09-14326 (ALG) (Bankr. S.D.N.Y. July 7, 2009) [Docket No. 59].

Request for Final Hearing

36.    Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Trustee submits that appropriate notice of the hearing on this Motion has been provided and requests that the Court proceed directly to a final hearing on the Motion.

Bankruptcy Rules 4001(a)(3) and 6004(h) Should Be Waived

36.    The Trustee requests a waiver of the stay of the effectiveness of the order approving this Motion under Bankruptcy Rules 4001(a)(3) 6004(h).

37.    Bankruptcy Rule 4001(a)(3) provides, "[an] order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of fourteen days after entry of the order, unless the court orders otherwise." Here, the Trustee requires the funds provided by the Post-Petition Financing to continue operating the Debtor's business, including paying for necessary repairs, security, and other items related to the Property.

38.    Additionally, pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." As explained above, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtor's estate by reducing the rate of interest to be paid.

39.    Accordingly, the Trustee submits that sufficient cause exists to justify the waiver of the fourteen-day stays imposed by Bankruptcy Rules 4001(a)(3) and 6004(h).

**The Settlement Agreement**

    BPOWERS/2367684.1/010001

40.     Bankruptcy Rule 9019(a) governs the approval of compromises and settlements,

and provides as follows:

> On motion by the trustee and after notice and a hearing, the court may
> approve a compromise or settlement.  Notice shall be given to creditors,
> the United States trustee, the debtor, and indenture trustees as provided in
> Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

41.     In approving the compromise and settlement, the Bankruptcy Court is required to

make an "informed and independent judgment" as to whether the compromise and settlement is

fair and equitable based on an:

> [e]ducated estimate of the complexity, expense, and likely duration of
> such litigation, the possible difficulties of collecting on any judgment
> which might be obtained, and all other factors relevant to a full and fair
> assessment of the wisdom of the proposed compromise.  Basic to this
> process in every instance, of course, is the need to compare the terms of
> the compromise with the likely rewards of litigation.[6]

42.     In making its determination on the "propriety of the settlement", the Bankruptcy

Court should consider whether the proposed settlement is in the "best interest of the estate."[7] As

stated in *Arrow Air*, the "approval of [a] proposed compromise and settlement is a matter of this

Court's sound discretion."[8]  In passing upon a proposed settlement, "the bankruptcy court does

not substitute its judgment for that of the trustee."[9]  The bankruptcy court is not required "to

---

[6] *In re Iridium Operating LLC*, 478 F.3d 452, 462 n.15 (2d Cir. 2007) (quoting *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-425, reh'g denied, 391 U.S. 909 (1968)).  See *In re Arrow Air, Inc.*, 85 B.R. 886, 891 (Bankr. S.D. Fla. 1988); *In re Bell & Beckwith*, 77 B.R. 606, 611 (Bankr. N.D.Ohio), aff'd, 87 B.R. 472 (N.D.Ohio 1987); *Cf. Magill v. Springfield Marine Bank (In re Heissinger Resources Ltd.)*, 67 B.R. 378, 383 (C.D. Ill. 1986) ("the law favors compromise").

[7] *Handler v. Roth (In re Handler)*, 386 B.R. 411, 420 (Bankr. E.D.N.Y. 2007)(quoting *In re Adelphia Communications Corp.*, 327 B.R. 143, 158 (Bankr. S.D.N.Y. 2005)); *Depo v. Chase Lincoln First Bank, N.A.* (In re Depo), 77 B.R. 381, 383 (N.D.N.Y. 1987), *aff'd*, 863 F.2d 45 (2d Cir. 1988).

[8] *Arrow Air*, supra, 85.B.R. at 891.

[9] *In re Depo*, 77 B.R. at 384 (citations omitted).

BPOWERS/2367684.1/010001

decide the numerous questions of law and fact raised by [objectors] . . . . [R]ather [the Court should] canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness."[10]  In passing upon the reasonableness of a proposed compromise, the Court "may give weight to the opinions of the Trustee, the parties and their counsel."[11]

43.    The Second Circuit in *re Iridium Operating LLC* [12] outlined the following seven factors (the "**Iridium Criteria**") to be considered by a court in deciding whether to approve a compromise or settlement:

i.    the balance between the litigation's possibility of success and the settlement's present and future benefits;

ii.    the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment if the settlement is not approved;

iii.    the paramount interest of the creditors, including the proportion of class members who do not object to or who affirmatively support the settlement;

iv.    whether other parties in interest support the settlement;

v.    the competency and experience of the counsel who support the proposed settlement;

vi.    the relative benefits to be received by individuals or groups within the class; and

vii.    the extent to which the settlement is the product of arm's length bargaining.[13]

44.    As described herein, the Lender Offer as a whole, taking into account the terms of

---

[10]  *Bell & Beckwith*, 77 B.R. at 612; see also *In re Handler*, 386 B.R. at 421.

[11]  *Cosoff v. Rodman (In re W.T. Grant Co.)* 699 F 2d 594, 608 (2d cir 1983) cert denied, 464 U.S. 822 (1983) (quoting Newman v. Stein, 689, 693 (2d cir 1972) cert denial, 409 U.S. 1972); *See also, In Re Handler*, 366 B.R. at 420-21.

[12]  478 F.3d 452, 462 (2d. Cir. 2007).

[13]  See *In re Iridium Operating LLC*, 478 F.3d at 462; See also *In re Handler*, 386 B.R. at 421.

BPOWERS/2367684.1/010001

the Settlement Agreement, the Note, the Mortgage, and the proposed stalking horse purchase and sale agreement, far exceeds the lowest point in the range of reasonableness when considering the *Iridium* Criteria.

45.    First, the Lender Offer and the Settlement Agreement provide the estate with much needed certainty with respect to (i) the amount due to the Lender on account of the Lender Claim; and (ii) the rate of interest accruing on the Lender Claim going forward.  As described above, several parties-in-interest in this case have disputed the amount of the Lender Claim.  In fact, the Lazarus Financing Agreement specifically provides for an escrow from the proceeds of that loan of approximately $10 million to cover the disputed portion of the Lender Claim, and the Trustee anticipated that substantial litigation would be necessary to fix the Lender Claim if the Lazarus Financing Agreement were approved.  Through the Lender Offer, no further litigation would be necessary and the Trustee has obtained a reduction of the Lender Claim of more than $2 million.

46.    The Trustee and his professionals have reviewed the information provided by the Lender in support of the Lender Claim, including documents filed in a previous state-court litigation, and have had numerous discussions with other parties (including Carter and Marks) regarding their disputes relating to the Lender Claim.  Based on their collective analysis of the information gathered, the Trustee believes, in his business judgment, that the Lender Offer provides the estate with a fair, reasonable settlement of all outstanding issues relating to the Lender Claim.

47.    Importantly, in addition to providing finality with respect to the disputes over the Lender Claim, the Lender Offer also provides the Post-Petition Financing at a very commercially reasonable rate of 6% per annum.  Moreover, as described above, the Lender has also agreed to

substantially reduce the interest rate at which the Lender Claim is accruing. In total, the Trustee believes that the Lender Offer, if approved, would save the estate nearly $8,000 *per day* in interest.

48.     Finally, the Lender Offer provides the Debtor's estate with a guarantee that the Property will be sold for an amount greater than the amount outstanding to Lender. By agreeing to serve as the stalking horse bidder in the sale of the Property, with an opening bid consisting of a credit bid of all outstanding amounts under the Lender Claim and the Post-Petition Financing plus a $3 million cash payment, the Lender Offer provides a substantial sum which can be used to pay the Debtor's unsecured debt under a plan. This ensures that, regardless of the ultimate results of the auction for the Property, the estate will have sufficient funds to make a distribution to creditors in this case.

49.     Moreover, the Lender Offer, the Settlement Agreement, the Loan Documents, and the Purchase Agreement were negotiated at arm's-length between sophisticated parties and their experienced, competent counsel.

50.     Based upon all of the facts and circumstances in this case, as well as the numerous benefits that the Lender's Offer provides to the estate, the Trustee believes, in his business judgment, that the Lender Offer is fair and reasonable and should be approved by the Court in all respects.

51.     No previous application for the relief sought herein has been made to this or any other Court.

**WHEREFORE,** the Trustee respectfully requests that the Court enter the Final Financing Order and grant such further relief as is just and proper.

Dated: January 14, 2020
      Jericho, New York

                     **SILVERMANACAMPORA LLP**

                     *s/ Ronald J. Friedman*
                     Ronald J. Friedman
                     Brian Powers
                     100 Jericho Quadrangle, Suite 300
                     Jericho, New York 11753
                     (516) 479-6300

                     *Attorneys for the Chapter 11 Trustee*

BPOWERS/2367684.1/010001