# EXHIBIT A

# SECURED PROMISSORY NOTE

Up to $2,000,000.00

January ___, 2020
New York, New York

FOR VALUE RECEIVED, **Kenneth P. Silverman, Solely in his Capacity as Chapter 11 Trustee** (the "**Trustee**" or "**Maker**") of the Estate of **305 East 61st Street Group LLC** (the "**Debtor**" or "**Estate**") in connection with that certain Chapter 11 Case No. 19-11911(SHL), presently pending before the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), promises to pay to the order of **305 E 61st Street Lender LLC**, a New York limited liability company having its principal place of business at c/o Maverick Real Estate Partners LLC, 100 Park Avenue, Suite 2805, New York, New York 10017 (hereinafter referred to as "**Holder**" or "**Lender**"), at the above address, or at such other place as Holder may designate in writing, the Outstanding Principal Sum of up to TWO MILLION DOLLARS and NO CENTS ($2,000,000.00) (the "**Maximum Outstanding Principal Sum**") or the outstanding principal amount of this Note as advanced pursuant to this Note (the "**Loan**"), which Loan will be in the form of multiple advances (each an "**Advance**"; and all Advances collectively referred to herein as the "**Advances**"), as may be made, from time to time as provided in this Secured Promissory Note with interest thereon computed from the date hereof until the Maturity Date (as defined below), at the rate equal to SIX PERCENT (6%) per annum (the "**Interest Rate**"), and thereafter at the Default Rate (as hereinafter defined), together with any costs, expenses and attorneys' fees incurred by Holder pursuant to the provisions hereof.

       1.     **Promissory Note**. This Secured Promissory Note (this "**Note**") is secured by certain documents executed by Maker as additional security for the repayment of the sums due under the Note, including, but not limited to, that certain Mortgage, Assignment of Leases and Rents and Security Agreement between Maker, as Mortgagor, and Holder, as Mortgagee, dated as of the date hereof (the "**Mortgage**") and encumbering property commonly known as 305-307 East 61st Street, New York, NY 10065 (the "**Property**") (this Note, the Mortgage and all other documents executed by Maker in connection with the Loan, collectively referred to herein, as the "**Loan Documents**").

       2.     **Advances**.

       2.1    <u>Notice of Advances; Procedure for Requesting Advances</u>.

       (a)     Each Advance shall be in the minimum sum of $100,000.00. To request an Advance, Maker shall notify Holder by delivering to Lender a Request for Borrowing in the form attached as <u>Exhibit A</u> in writing at the address above or by electronic mail in portable document format (PDF) by not later than five (5) Business Days before the Business Day that the Advance is to be funded by Holder, identifying the amount of the requested Advance and intended uses of the funds advanced.

       (b)     From time to time, Maker may require less than the minimum

Advance. If the amount of a requested Advance is greater than the intended uses of the funds to be advanced, and Holder approves of such intended uses and makes such Advance, Maker shall hold any excess of such Advance, shall notify Holder of any intent to use any portion thereof in accordance with §2.1(a), and shall not use such funds without Holder's prior written approval, which shall not be unreasonably withheld.

(c)      Pursuant to Section 2.2 hereof, Holder may elect to make or refuse to make an Advance (in whole or in part) if Holder does not approve of any intended uses for such Advance (in whole or in part), which approval shall not be unreasonably withheld.

(d)      Contemporaneously with each Advance, Holder shall provide a statement of account (which shall include any applicable fees) to Maker by electronic mail to Maker at ksilverman@silvermanacampora.com with a copy to Ronald Friedman, Esq. at rfriedman@silvermanacampora.com.

2.2      Use of Advances; Lender Approval. Maker shall use the Advances only to pay for: (a) capital improvements to the Property; and (b) insurance, utilities and maintenance of the Property, (c) fees and expenses of OTL Enterprises, LLC, and (d) up to $500,000.00 of the fees and expenses of the counsel and accountants retained by the Trustee, which in all cases (a) through (c) are approved by Holder, which approval shall not be unreasonably withheld.

2.3      Maximum Amount. At no time will the Maker request any Advances if the requested Advances would cause the outstanding principal sum of all Advances to exceed the Maximum Outstanding Principal Sum.

3.      **Payments**.

The Outstanding Principal Sum and interest thereon is and shall be payable as follows: Maker shall pay to Holder on the Maturity Date, whether by acceleration, prepayment, or otherwise, the outstanding principal sum advanced under this Note, together with all accrued and unpaid interest and any other amounts due and payable to the Holder hereunder, under the this Note or the Loan Documents. Interest shall for all purposes hereunder be calculated on the basis of a 360-day year, counting the actual number of days all or any portion of the Outstanding Principal Sum is outstanding.

3.1      Funds May Not Be Re-Borrowed.  No part of the Loan that is repaid may be re-borrowed.

4.      **Maturity Date**. The "**Maturity Date**" shall mean the date that is the earlier of: (i) July 31, 2020; (ii) the date the Property (in whole or in part) is sold, transferred or conveyed in any manner; (iii) the date a plan of reorganization or liquidation is confirmed pursuant to an order of the Bankruptcy Court and a closing on the sale of the Property (in whole or in part) occurs; or (iv) the date that the Debtor's Chapter 11 case is converted to a case under Chapter 7 of the Bankruptcy Code.

5.    **Prepayment**. **PROVIDED THAT THERE SHALL BE NO EVENT OF DEFAULT (AS HEREINAFTER DEFINED) OUTSTANDING UNDER THIS NOTE, OR ANY OF THE LOAN DOCUMENTS, THE OUTSTANDING BALANCE OF THE PRINCIPAL SUM SHALL BE PRE-PAYABLE AT ANY TIME ON TEN (10) DAYS WRITTEN NOTICE TO HOLDER, IN WHOLE OR IN PART, WITHOUT ANY PREPAYMENT PREMIUM OR PENALTY.**

6.    **Default**.

6.1    Events of Default. Each of the following shall constitute an Event of Default under this Note:

    (a)    The failure to make any payment required under this Note when due; or

    (b)    Any default occurs under any of the Loan Documents.

6.2    Remedies. Upon the occurrence of an Event of Default: (a) interest shall automatically accrue without notice hereunder at the Default Rate (as hereinafter defined) until all indebtedness and obligations under this Note and the other Loan Documents are paid in full; and
(b) (i) Holder may, at its option declare and demand this Note immediately due and payable, and (ii) Holder may pursue all other rights and remedies available hereunder or under the any of the Loan Documents. Holder's rights, remedies and powers, as provided in this Note, the Loan Documents are cumulative and concurrent, and may be pursued singly, successively or together against the Property or against any collateral granted or pledged to Maker under any of the Loan Documents or any other collateral security given at any time to secure the payment hereof, all at the sole discretion of Holder. Additionally, Holder may resort to every other right or remedy available at law or in equity without first exhausting the rights and remedies contained herein, all in Holder's sole discretion. Failure of Holder, for any period of time or on more than one occasion, to declare and demand this Note immediately due and payable shall not constitute a waiver of the right to exercise the same at any time from and after any uncured Event of Default.

6.3    Expenses.

    (a)    The following expenses shall be included in the indebtedness evidenced by this Note and shall be due and payable to the Lender in accordance with Paragraph 3.1: (i) all reasonable out-of-pocket expenses incurred by Lender, including, without limitation, the reasonable fees, charges and disbursements of counsel for Lender, in connection with the preparation, negotiation and administration of this Note and the other Loan Documents and seeking and obtaining Bankruptcy Court approval hereof and thereof and in connection with any amendments, modifications or waivers of the provisions hereof or thereof and seeking and obtaining Bankruptcy Court approval thereof (whether or not the transactions contemplated hereby or thereby shall be consummated), (ii) all reasonable out-of-pocket expenses incurred by Lender, including, without limitation, the fees, charges and disbursements of any counsel for Lender in connection with the enforcement, defense, or protection of its rights in connection with

this Note and the other Loan Documents or any collateral of Lender, including Lender's rights under this Section 6.3, or in connection with the Loan or any Advance made hereunder, including, without limitation, in connection with any workout, restructuring or negotiations in respect thereof, (iii) all reasonable costs, expenses, taxes, assessments and other charges incurred in connection with any filing, registration, recording or perfection of any security interest, mortgage or lien contemplated by any of the Loan Documents; and (iv) any and all losses, claims, damages, liabilities and related expenses of Lender or Lender's officers, directors, members, agents, employees and professionals (each such Person being called an "**Lender Party**"), and fees, expenses (including, without limitation, attorneys' fees and expenses) and/or settlement costs, incurred by or asserted against any Lender Party arising out of, in connection with, or as a result of: (x) the execution or delivery of this Note, the other Loan Documents or any agreement or instrument contemplated hereby, the performance by the parties hereto and thereto of their respective obligations hereunder or thereunder or the consummation of the transactions contemplated hereby or thereby; (y) the Loan; or (z) any actual or prospective claim, litigation, investigation or proceeding relating to any of the foregoing, whether based on contract, tort or any other theory and regardless of whether any Lender Party is a party thereto; provided that such expenses shall not, as to any Lender Party, be available to the extent that such losses, claims, damages, liabilities or related expenses (are determined by a court of competent jurisdiction by final and nonappealable judgment to have) resulted from the gross negligence or willful misconduct of such Lender Party.

(b)     To the extent permitted by applicable law, Maker shall not assert, and hereby waives, any claim against any Lender Party, on any theory of liability, for special, indirect, consequential or punitive damages (as opposed to direct or actual damages) arising out of, in connection with, or as a result of, this Note, the other Loan Documents or any agreement or instrument contemplated hereby or thereby, the transactions contemplated by the Loan Documents, or otherwise relating to any Loan, or the use of the proceeds thereof.

6.4     Default Rate. From and after the occurrence of an Event of Default, interest shall automatically accrue on the outstanding Principal Sum at a rate equal to the lesser of: (a) twenty-four percent (24%) per annum; or (b) the maximum rate allowed by law (the "**Default Rate**"). The Default Rate shall remain in effect until any and all Events of Default shall have been cured. In addition, the Default Rate shall remain in effect during any period of default even upon the acceleration of the indebtedness evidence by this Note. The Default Rate shall be in effect at all times after the maturity of the indebtedness evidenced by this Note (whether by acceleration or otherwise). Upon acceleration or maturity, the Default Rate shall remain in effect until all sums due under this Note, the Mortgage and the Loan Documents shall have been paid in full. In addition, Holder may collect a late payment fee not to exceed an amount equal to three percent (3%) of any periodic payment not received within ten (10) days of the date such payment is due and payable, said charge constituting liquidated damages, to be assessed from the date upon which such payment was due and payable, and being payable upon demand. Interest shall continue to accrue at the Default Rate (including following the entry of a judgment in favor or Holder) until payment in full of all sums due under this Note, the Mortgage or any of the Loan Documents.

7.     **Fees**. Intentionally omitted.

8. **Governing Law: Severability**. This Note shall be construed and enforced in accordance with the internal laws of the State of New York (without giving effect to any principles of conflicts of law), unless preempted by United States Statute or Federal Law (without giving effect to any principles of conflicts of law). The invalidity, illegality or unenforceability of any provision of this Note shall not affect or impair the validity, legality or enforceability of the remainder of this Note, and to this end, the provisions of this Note are declared to be severable.

9. **Waivers**. Without limiting any other provisions of the Loan Documents, Maker, for itself and all endorsers, guarantors and sureties of this Note, and their heirs, legal representatives, successors and assigns, hereby waives presentment for payment, demand, notice of nonpayment, notice of dishonor, protest of any dishonor, notice of protest and protest of this Note, and all other notices in connection with the delivery, acceptance, performance, default or enforcement of the payment of this Note, except as expressly provided herein or any of the Loan Documents, and in connection with any suit, action or proceeding brought by Holder on this Note, any and every right it may have to: (a) a trial by jury, (b) interpose any counterclaim therein (other than a counterclaim which can only be asserted in a suit, action or proceeding brought by Holder on this Note and cannot be maintained in a separate action), and (c) have the same consolidated with any other or separate suit, action or proceeding, and agrees that the Debtor the Estate's liability shall be unconditional and without regard to the liability of any other party and shall not be in any manner affected by any indulgence, extension of time, renewal, waiver or modification granted or consented to by Holder. Maker, for itself and all endorsers, guarantors and sureties of this Note, and their heirs, legal representatives, successors and assigns, hereby consents to every extension of time, renewal, waiver or modification that may be granted by Holder with respect to the payment or other provisions of this Note, and to the release of any makers, endorsers, guarantors or sureties, and their heirs, legal representatives, successors and assigns, and of any collateral given to secure the payment hereof, or any part hereof, with or without substitution, and agrees that additional makers, endorsers, guarantors or sureties and their heirs, legal representatives, successors and assigns, may become parties hereto without notice to Maker or to any endorser, guarantor or surety and without affecting the liability of any of them.

10. **Application of Payments**. Each and every payment made by Maker to Holder in accordance with the terms of the Loan Documents and all other proceeds received by Holder with respect to the indebtedness evidenced hereby, shall be applied by Holder in such order and priority as determined by Holder in its sole and absolute discretion. To the extent that Maker makes a payment or Holder receives any payment or proceeds for Maker's benefit, which are subsequently invalidated, declared to be fraudulent or preferential, set aside or required to be repaid to a trustee, debtor in possession, receiver, custodian or any other party under any bankruptcy law, common law or equitable cause, then, to such extent, the obligations of Maker hereunder intended to be satisfied shall be revived and continue as if such payment or proceeds had not been received by Holder.

11.    **Miscellaneous**.

11.1    Amendments. This Note may not be terminated or amended orally, but only by a termination or amendment in writing signed by Holder.

11.2    Usury. It is the intention of Maker and Holder to conform strictly to the usury and other laws relating to interest from time to time in force, and all agreements between Maker and Holder, whether now existing or hereafter arising and whether oral or written, are hereby expressly limited so that in no contingency or event whatsoever, whether by demand hereunder or otherwise, shall the amount paid or agreed to be paid to Holder, or collected by Holder for the use, forbearance or detention of the money to be loaned hereunder, or for the payment or performance of any covenant or obligation contained herein or in any other agreement given to secure the loan obligations or in any other document evidencing, securing or pertaining to the loan obligations, exceed the maximum amount of interest allowable under applicable law (the **"Maximum Amount"**). If under any circumstances whatsoever fulfillment of any provision hereof, at the time performance of such provision shall be due, shall involve transcending the Maximum Amount, then ipso facto, the obligation to be fulfilled shall be reduced to the Maximum Amount. For the purposes of calculating the actual amount of interest paid and or payable, in respect of laws pertaining to usury or such other laws, all sums paid or agreed to be paid to Holder for the use, forbearance or detention of the indebtedness evidenced hereby shall, to the extent permitted by applicable law, be amortized, allocated and spread from the date of disbursement of the proceeds thereof until payment in full of the loan obligations, so that the actual rate of interest on account thereof is uniform throughout the term hereof. If under any circumstances Holder shall ever receive an amount deemed interest by applicable law, which would exceed the Maximum Amount, such amount that would be excessive interest under applicable usury laws shall be deemed a payment in reduction of the principal amount owing under this Note and shall be so applied to principal and not to the payment of interest, or if such excessive interest shall be deemed to have been a payment made by mistake and shall be refunded to Maker or to any other person making such payment on Maker's behalf.

11.3    Headings. The headings and captions of the Sections of this Note are for convenience of reference only and shall not in any way be deemed to modify, explain, enlarge or restrict any of the provisions hereof.

11.4    Notices. Notices shall be given under this Note in conformity with the terms and conditions of the Mortgage.

11.5    Intentionally Omitted.

11.6    Time of the Essence. Time is of the essence of this Note and the performance of each of the covenants and agreements on Maker's part to be performed hereunder.

11.7    No Waiver by Holder. (a) Neither the exercise of any provision hereof nor the delay in asserting any right granted to Holder (including the acceptance of past due payments) shall be construed as a waiver by Holder of the right to accelerate the indebtedness

evidenced hereby as above provided or to pursue any other remedies available under this Note, or under any other security document nor shall the exercise of any single or partial exercise of any right, power, privilege or remedy preclude any further exercise thereof. Any waiver hereunder shall be valid and enforceable only if in writing and signed by the party against whom enforcement is sought, and then only to the extent therein set forth. The rights and remedies herein provided are cumulative and not exclusive of any rights or remedies provided by law and may be exercised singly or concurrently. No executory agreement unless in writing and signed by Holder, and no course of dealing between Maker, the endorser(s) or guarantor(s) hereof, or any of them, shall be effective to change or modify or discharge, in whole or in part, this Note.

(b)    In the event Holder shall advance or cause to be advanced any amounts to or for the benefit of Maker, on account of insurance premiums, real estate or other taxes, assessments or governmental charges or on account of any other matter which, in the sole discretion of Holder is necessary or desirable to sustain the lien of the Loan Documents or protect any collateral security held by Holder or the Maker's assets, including, but not limited to, payments to avoid the filing of any lien on any of Maker's assets and/or payments to discharge any such lien, the same shall be deemed a part of the Principal Sum and shall bear interest at the Interest Rate until paid in full.

11.8    Obligations. Maker acknowledges that this Note and the obligations hereunder are and shall at all times continue to be absolute and unconditional as to the Debtor and the Estate in all respects, and shall at all times be valid and enforceable irrespective of any other agreements or circumstances of any nature whatsoever which might otherwise constitute a defense to this Note and the obligations hereunder. This Note sets forth the entire agreement and understanding of Holder and Maker, and Maker absolutely, unconditionally and irrevocably waives any and all right to assert any defense, setoff, counterclaim or crossclaim of any nature whatsoever with respect hereto or the obligations of Maker hereunder or the obligations of any other person or party relating hereto in any action or proceeding brought by Holder to collect the outstanding balance of the Outstanding Principal Sum, accrued and unpaid interest, late charges, and other amounts owing, or any portion thereof, or to enforce, foreclose and realize upon the liens and security interests created by any other security document included within the Loan Documents.

11.9    Use of Funds. Maker hereby warrants, represents and covenants that no funds disbursed hereunder shall be used for any purpose other than those permitted by Section 2.2.

12.    **Intentionally Omitted**.

13.    **Venue; Service of Process**. All actions or proceedings arising in connection with this Note shall be tried and litigated in the Bankruptcy Court unless relief from the stay is granted or the Debtor's Chapter 11 case is dismissed and, in that event, in state or federal courts located in the State of New York, unless such actions or proceedings are required to be brought in another court to obtain subject matter jurisdiction over the matter in controversy. MAKER WAIVES ANY RIGHT IT MAY HAVE TO ASSERT THE DOCTRINE OF FORUM NON CONVENIENS, TO ASSERT THAT IT IS NOT SUBJECT TO THE JURISDICTION OF

SUCH COURTS OR TO OBJECT TO VENUE TO THE EXTENT ANY PROCEEDING IS BROUGHT IN ACCORDANCE HEREWITH. IN ANY ACTION AGAINST MAKER, SERVICE OF PROCESS MAY BE MADE UPON MAKER BY REGISTERED OR CERTIFIED MAIL, RETURN RECEIPT REQUESTED, TO SILVERMAN ACAMPORA LLP, 100 JERICHO QUADRANGLE, SUITE 300, ATTENTION: RONALD J. FRIEDMAN, ESQ., WHICH SERVICE SHALL BE DEEMED SUFFICIENT FOR PERSONAL JURISDICTION AND SHALL BE DEEMED EFFECTIVE THREE (3) DAYS AFTER MAILING.

14.    **Jury Trial Waiver. MAKER, AND HOLDER BY ITS ACCEPTANCE OF THIS NOTE, HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, THE SUBJECT MATTER OF THIS NOTE AND THE BUSINESS RELATIONSHIP THAT IS BEING ESTABLISHED. THIS WAIVER IS KNOWINGLY, INTENTIONALLY AND VOLUNTARILY MADE BY MAKER AND BY HOLDER, AND MAKER ACKNOWLEDGES THAT NEITHER HOLDER NOR ANY PERSON ACTING ON BEHALF OF HOLDER HAS MADE ANY REPRESENTATIONS OF FACT TO INCLUDE THIS WAIVER OF TRIAL BY JURY OR HAS TAKEN ANY ACTIONS WHICH IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. MAKER AND HOLDER ACKNOWLEDGE THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO A BUSINESS RELATIONSHIP, THAT MAKER AND HOLDER HAVE ALREADY RELIED ON THIS WAIVER IN ENTERING INTO THIS NOTE AND THAT EACH OF THEM WILL CONTINUE TO RELY ON THIS WAIVER IN THEIR RELATED FUTURE DEALINGS. MAKER AND HOLDER FURTHER ACKNOWLEDGE THAT THEY HAVE BEEN REPRESENTED (OR HAVE HAD THE OPPORTUNITY TO BE REPRESENTED) IN THE SIGNING OF THIS NOTE AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL.**

15.    **Approval of the Bankruptcy Court**. Maker is executing this Note solely in his capacity as the Chapter 11 Trustee of the estate of the Debtor in that certain Chapter 11 Case No. 19-11911-(SHL), which is presently pending before Bankruptcy Court. Approval from the Bankruptcy Court for this transaction is evidenced by that certain FINAL ORDER: (i) AUTHORIZING THE TRUSTEE TO OBTAIN POST-PETITION FINANCING AND GRANT LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS PURSUANT TO 11 U.S.C. §§ 105(a), 364(c) AND 364(d); (ii) GRANTING REPLACEMENT LIENS AND RIGHTS TO ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 105 AND 361; (iii) MODIFYING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362; (iv) SETTLING CLAIMS UNDER BANKRUPTCY RULE 9019; AND (v) GRANTING RELATED RELIEF entered by the Bankruptcy Court on January ____, 2020 [ECF Doc. No. _____], for the specific purposes described in Section 2.2 herein above, which Order is annexed as Exhibit "B" to the Mortgage.

IN WITNESS WHEREOF, Maker has caused this Note to be executed by its duly authorized representative as of the day and year first above written.

_____

**Kenneth P. Silverman, Solely in his Capacity as Chapter 11 Trustee of the Estate of 305 East 61st Street Group LLC**

EXHIBIT A
ADVANCE REQUEST FORM

Email to Lender:_____          Date:_____

---

LOAN ADVANCE:

Amount of the Advance requested hereby is $_____

Use of the Advance: _____

*As of the date of this Advance Request:*

The total amount of all Advances to date is: $_____ prior to the Advance requested hereby; and

The total Amount of all Advances to date will be $_____ if the Advance requested hereby is made.

WIRE INSTRUCTIONS:

The Advance requested hereby is requested to be wired to the Trustee pursuant to the following wire transfer instructions:

_____

---

_____

**Kenneth P. Silverman, Solely in his Capacity as Chapter 11 Trustee of the Estate of 305 East 61st Street Group, LLC**