# EXHIBIT B

## MORTGAGE, ASSIGNMENT OF LEASES AND RENTS AND SECURITY AGREEMENT

**Kenneth P. Silverman, Solely in His Capacity as Chapter 11 Trustee of the Estate of 305 East 61st Street Group LLC**

**(Mortgagor)**

to

**305 E 61st Street LENDER LLC**

**(Mortgagee)**

**Dated: As of January ___, 2020**

Property Address:

305-307 East 61st Street, New York, New York 10065

| | |
|---|---|
| Block: | 1436 |
| Lot: | 5 |
| County: | New York |
| State: | New York |

**DOCUMENT PREPARED BY AND WHEN RECORDED, RETURN TO:**

**Katsky Korins LLP
605 Third Avenue
New York, New York 10158
Attn: Steven H. Newman, Esq.**

## MORTGAGE, ASSIGNMENT OF LEASES AND RENTS AND SECURITY AGREEMENT

**Kenneth P. Silverman, Solely in His Capacity as Chapter 11 Trustee of the Estate of 305 East 61st Street Group LLC**

**(Mortgagor)**

to

**305 E 61st Street LENDER LLC**

**(Mortgagee)**

**Dated: As of January \_\_\_, 2020**

Property Address:

305-307 East 61st Street, New York, New York 10065

| | |
|---|---|
| Block: | 1436 |
| Lot: | 5 |
| County: | New York |
| State: | New York |

**DOCUMENT PREPARED BY AND WHEN RECORDED, RETURN TO:**

**Katsky Korins LLP**
**605 Third Avenue**
**New York, New York 10158**
**Attn: Steven H. Newman, Esq.**

THIS MORTGAGE **DOES / DOES NOT (CIRCLE ONE)** ENCUMBER REAL PROPERTY PRINCIPALLY IMPROVED OR TO BE IMPROVED BY ONE OR MORE STRUCTURES CONTAINING IN THE AGGREGATE NOT MORE THAN SIX (6) RESIDENTIAL DWELLING UNITS HAVING THEIR OWN SEPARATE COOKING FACILITIES.

**THIS MORTGAGE, ASSIGNMENT OF LEASES AND RENTS AND SECURITY AGREEMENT** (the "**Mortgage**"), made as of the ___ day of January, 2020, from **Kenneth P. Silverman, Solely in his Capacity as Chapter 11 Trustee of the Estate of 305 East 61st Street Group LLC,** having an address at 100 Jericho Quadrangle, Suite 300, Jericho, New York 11753 ("**Mortgagor**" or "**Trustee**"), to **305 E 61st Street Lender LLC**, having its principal place of business at c/o Maverick Real Estate Partners LLC, 100 Park Avenue, Suite 2805, New York, New York 10017 ("**Mortgagee**").

WITNESSETH:

To secure the payment of an indebtedness in the original principal sum of up to TWO MILLION AND 00/100 DOLLARS ($2,000,000.00), lawful money of the United States of America, to be paid with interest according to a certain Secured Promissory Note of even date herewith made by Mortgagor to Mortgagee (the Secured Promissory Note, together with all extensions, renewals or modifications thereof being hereinafter, collectively, called the "**Note**") and all other sums due hereunder, under the other Loan Documents (hereinafter defined) and under the Note (said indebtedness and interest due under the Note and all other sums due hereunder, under the Note and under the other Loan Documents being hereinafter collectively referred to as the "**Debt**"), Mortgagor has mortgaged, given, granted, bargained, sold, alienated, enfeoffed, conveyed, confirmed, warranted, pledged, assigned, and hypothecated and by these presents does hereby mortgage, give, grant, bargain, sell, alienate, enfeoff, convey, confirm, warrant, pledge, assign and hypothecate unto Mortgagee: (i) the real property described in **Exhibit A** attached hereto (the "**Premises**") and the buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter located thereon (the "**Improvements**"); and (ii) **TOGETHER WITH**: all right, title, interest and estate of Mortgagor now owned, or hereafter existing or acquired, in and to all of the following property, rights, interests (the Premises, the Improvements, and the property, rights, interests and estates hereinafter described are collectively referred to herein as the "**Mortgaged Property**" or "**Collateral**");

        (a)    all easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, all rights to oil, gas, minerals, coal and other substances of any kind or character, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances of any nature whatsoever, in any way belonging, relating or pertaining to the Premises and the Improvements and the reversion and reversions, remainder and remainders, and all land lying in the bed of any street, road, highway, alley or avenue, opened, vacated or proposed, in front of or adjoining the Premises, to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtsey and rights of curtsey, property, possession, claim and demand whatsoever, both at law and in equity, of Mortgagor of, in and to

Page 2

the Premises and the Improvements and every part and parcel thereof, with the appurtenances thereto;

(b)    all machinery, furniture, furnishings, equipment, fixtures (including, without limitation, all heating, air conditioning, plumbing, lighting, communications and elevator fixtures) and other property of every kind and nature, whether tangible or intangible, whatsoever owned by Mortgagor, or in which Mortgagor has or shall have an interest, now or hereafter located upon the Premises and the Improvements, or appurtenant thereto, and usable in connection with the present or future operation and occupancy of the Premises and the Improvements and all building equipment, materials and supplies of any nature whatsoever owned by Mortgagor, or in which Mortgagor has or shall have an interest, now or hereafter located upon the Premises and the Improvements, or appurtenant thereto, or usable in connection with the present or future operation, enjoyment and occupancy of the Premises and the Improvements (hereinafter collectively referred to as the **"Equipment"),** including any leases of any of the foregoing, any deposits existing at any time in connection with any of the foregoing, and the proceeds of any sale or transfer of the foregoing, and the right, title and interest of Mortgagor in and to any of the Equipment that may be subject to any "security interests" as defined in the Uniform Commercial Code, as adopted and enacted by the State or States where any of the Mortgaged Property is located (the "**Uniform Commercial Code**"), superior in lien to the lien of this Mortgage;

(c)    all awards or payments, including interest thereon, that may heretofore and hereafter be made with respect to the Premises and the Improvements, whether from the exercise of the right of eminent domain or condemnation (including, without limitation, any transfer made in lieu of or in anticipation of the exercise of said rights), or for a change of grade, or for any other injury to or decrease in the value of the Premises and Improvements;

(d)    all leases and other agreements or arrangements heretofore or hereafter entered into affecting the use, enjoyment or occupancy of, or the conduct of any activity upon or in, the Premises and the Improvements, including any extensions, renewals, modifications or amendments thereof (hereinafter collectively referred to as the "**Leases**") and all rents, rent equivalents, moneys payable as damages or in lieu of rent or rent equivalents, royalties (including, without limitation, all oil and gas or other mineral royalties and bonuses), income, fees, receivables, receipts, revenues, deposits (including, without limitation, security, utility and other deposits), accounts, cash, issues, profits, charges for services rendered, and other payment and consideration of whatever form or nature received by or paid to or for the account of or benefit of Mortgagor or its agents or employees from any and all sources arising from or attributable to the Premises and the Improvements (hereinafter collectively referred to as the "**Rents**"), together with all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Debt;

(e)    all proceeds of and any unearned premiums on any insurance policies covering the Mortgaged Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Mortgaged Property;

(f)    all personal property, including, without limitation, accounts, escrows, documents, instruments, chattel paper, claims, deposits and general intangibles, as the foregoing terms are defined in the Uniform Commercial Code, and all franchises, trade names, trademarks, symbols, service marks, books, records, plans, specifications, designs, drawings, permits, consents, licenses, management agreements, contract rights (including, without limitation, any contract with any architect or engineer or with any other provider of goods or services for or in connection with any construction, repair, or other work upon the Mortgaged Property), approvals, actions, refunds of real estate taxes and assessments (and any other governmental impositions related to the Mortgaged Property), and causes of action that now or hereafter relate to, are derived from or are used in connection with the Mortgaged Property, or the use, operation, maintenance, occupancy or enjoyment thereof or the conduct of any business or activities thereon;

(g)    all agreements and/or contracts now or hereafter entered into by the Mortgagor relating to the sale, leasing, brokerage, development, construction (including architectural and engineering contracts), equipping, management, maintenance, marketing, and/or operation of the Premises or the Improvements, including all moneys due and to become due thereunder;

(h)    the plans and specifications and working drawings relating to the construction of any Improvements at the Premises;

(i)    all options and agreements with respect to any additional real property for the use or development in connection with operation of the Premises and/or construction of any Improvements;

(j)    all consents, certificates, authorizations, variances, waivers, licenses, permits and approvals from any governmental authority relating to the Premises and/or the construction of any Improvements;

(k)    all rights, interest and benefits of Mortgagor to 421-a certificates and any tax benefits of any kind under Section 421-a of the New York Real Property Tax Law;

(l)    all other property of any kind whatsoever (including, without limitation, all real property, all personal property and all intellectual property); and

(m)    all proceeds, products, offspring, rents and profits from any of the foregoing, including, without limitation, those from sale, exchange, transfer, collection, loss, damage, disposition, substitution or replacement of any of the foregoing.

**TO HAVE AND TO HOLD** the above granted and described Mortgaged Property unto and to the use and benefit of Mortgagee and its successors and assigns, forever;

**PROVIDED, HOWEVER,** these presents are upon the express condition that, if Mortgagor shall well and truly pay to Mortgagee the Debt at the time and in the manner provided

in the Note and this Mortgage, these presents and the estate hereby granted shall cease, terminate and be void;

AND Mortgagor agrees with Mortgagee as follows:

## GENERAL PROVISIONS

1.    **Payment of Debt and Incorporation of Covenants, Conditions and Agreements.** The Debt shall be paid to the Mortgagee on or before the Maturity Date, as such term is defined in the Note (the "**Maturity Date**") at the time and in the manner provided in the Note and in this Mortgage. All the covenants, conditions and agreements contained in (a) the Note and (b) all and any of the documents including, without limitation, the Note and this Mortgage now or hereafter executed by Mortgagor and/or others and by or in favor of Mortgagee, which evidences, secures or guarantees all or any portion of the payments due under the Note or otherwise is executed and/or delivered in connection with the Note and this Mortgage, guarantees and agreements (collectively, the "**Loan Documents**") are hereby made a part of this Mortgage to the same extent and with the same force as if fully set forth herein. The Note is evidence of that certain loan made to the Mortgagor by the Mortgagee on the date hereof in the original principal sum of the Note (the "**Loan**").

2.    **Warranty of Title.**

(a) **Authority.** In accordance with the *FINAL ORDER: (i) AUTHORIZING THE TRUSTEE TO OBTAIN POST-PETITION FINANCING AND GRANT LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS PURSUANT TO 11 U.S.C. §§ 105(a), 364(c) AND 364(d); (ii) GRANTING REPLACEMENT LIENS AND RIGHTS TO ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 105 AND 361; (iii) MODIFYING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362; (iv) SETTLING CLAIMS UNDER BANKCRUPTCY RULE 9019; AND (v) GRANTING RELATED RELIEF* (the "**Financing Order**"), Mortgagor has the full power, authority and right to execute, deliver this Mortgage as the Court-appointed Chapter 11 Trustee of the Estate of 305 East 61st Street Group LLC (the "**Debtor**"). A copy of the Financing Order is annexed hereto as **Exhibit B**. The Debtor's case is pending in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under Case No.: 19-11911 (SHL).

(b) Mortgagor represents that, in accordance with the Financing Order and Chapter 11 of Title 11 of the United States Code, Mortgagor has the full power, authority and right to execute, deliver and perform its obligations under this Mortgage and to encumber, mortgage, give, grant, bargain, sell, alienate, enfeoff, convey, confirm, pledge, assign and hypothecate the same.

3.    **Insurance.**

(a)   Mortgagor obtained and will maintain: (i) a policy of insurance against loss or damage to the Mortgaged Premises on which the Mortgagee is named as a loss payee and additional insured; (ii) general commercial liability insurance for, inter alia, property damage and personal injury with a per occurrence limit of $1,000,000; and (iii) excess coverage with a per occurrence limit of $5,000,000 (collectively, **"Policies"**).

(b)   If the Mortgaged Property shall be damaged or destroyed, in whole or in part, by fire or other casualty (an **"Insured Casualty"**), Mortgagor shall give prompt notice thereof to Mortgagee. The expenses incurred by Mortgagee in the adjustment and collection of insurance proceeds shall become part of the Debt and be secured hereby.

(c)   In case of loss or damages covered by any of the Policies, the following provisions shall apply:

(i)   In the event of an Insured Casualty that does not exceed ten percent (10%) of the original principal amount of the Note, Mortgagor may settle and adjust any claim without the consent of Mortgagee and agree with the insurance company or companies on the amount to be paid upon the loss; provided that such adjustment is carried out in a competent and timely manner. In such case, Mortgagor is hereby authorized to collect and receive any such insurance proceeds.

(ii)   In the event an Insured Casualty shall exceed ten percent (10%) of the original principal amount of the Note, then and in that event, Mortgagor may settle or adjust any claim with the prior written consent of Mortgagee In such case, Mortgagor is hereby authorized to collect such insurance proceeds, which shall be held in escrow.

(iii)   Except as provided above, upon the Event of Default, the proceeds of insurance collected upon any Insured Casualty shall, at the option of Mortgagee in its sole discretion, be applied to the payment of the Debt or applied to reimburse Mortgagor for the cost of restoring, repairing, replacing or rebuilding the Mortgaged Property or part thereof subject to the Insured Casualty, in the manner set forth below. Any such application to the Debt shall be applied to the Debt in Mortgagee's sole discretion.

(iv)   In the event Mortgagor is entitled to reimbursement out of insurance proceeds held by the Mortgagor or the Mortgagee, such proceeds shall be disbursed from time to time upon Mortgagee being furnished with (1) evidence satisfactory to it of the estimated cost of completion of the restoration, repair, replacement and rebuilding; (2) funds or, at Mortgagee's option, assurances satisfactory to Mortgagee that such funds are available, sufficient in addition to the proceeds of insurance to complete the proposed restoration, repair, replacement and rebuilding, and (3) such architect's certificates, waivers of lien, contractor's sworn statements, title insurance endorsements, bonds, plats of survey and such other evidences of cost, payment and performance as Mortgagee may reasonably require and approve. Mortgagee may, in any event, require that all plans and specifications for such restoration, repair, replacement and rebuilding be submitted to and approved by Mortgagee in its reasonable discretion prior to commencement of work. No payment made prior to the final completion of

the restoration, repair, replacement and rebuilding shall exceed ninety percent (90%) of the value of the work performed from time to time; funds other than proceeds of insurance shall be disbursed prior to disbursement of such proceeds; and at all times, the undisbursed balance of such proceeds remaining in the hands of Mortgagee, together with funds deposited for that purpose or irrevocably committed to the satisfaction of Mortgagee by or on behalf of Mortgagor for that purpose, shall be at least sufficient in the reasonable judgment of Mortgagee to pay for the cost of completion of the restoration, repair, replacement or rebuilding, free and clear of all liens or claims for lien. Any surplus which may remain out of insurance proceeds held by Mortgagee or Mortgagor after payment of such costs of restoration, repair, replacement or rebuilding shall be paid to any party entitled thereto.

(d)     In the event of any conflict, inconsistency or ambiguity between the provisions of this Paragraph 3 and the provisions of subsection 4 of Section 254 of the Real Property Law of New York covering the insurance of buildings against loss by fire, the provisions of Paragraph 3 hereof shall control.

4.     **Payment of Taxes, Etc.**     In the event the Debtor's Chapter 11 case is dismissed or converted, all taxes, assessments, water rates and sewer rents, now or hereafter levied or assessed or imposed against the Mortgaged Property or any part thereof (the "**Taxes**") and all ground rents, maintenance charges, other impositions, and other charges, including, without limitation, vault charges and license fees for the use of vaults, chutes and similar areas adjoining the Premises, now or hereafter levied or assessed or imposed against the Mortgaged Property or any part thereof (the "**Other Charges**") shall be paid as same is due and payable.

5.     **Security Interest.**     Without limiting any other provision herein, Mortgager hereby gives, grants and conveys to the Mortgagee a first priority security interest in and to all of the Collateral. Mortgager hereby authorizes the Mortgagee to file any UCC-1 financing statements as to the Collateral as the Mortgagee determines appropriate.

6.     **Condemnation.**     Mortgagor shall promptly give Mortgagee written notice of the actual or threatened commencement of any condemnation or eminent domain proceeding (a "**Condemnation**") and shall deliver to Mortgagee copies of any and all papers served in connection with such Condemnation.

7.     **Leases and Rents.**

(a)     Mortgagor does hereby absolutely and unconditionally assign to Mortgagee, all of Mortgagor's right, title and interest in all current and future Leases and Rents, it being intended by Mortgagor that this assignment constitutes a present, absolute assignment and not an assignment for additional security only. Such assignment to Mortgagee shall not be construed to bind Mortgagee to the performance of any of the covenants, conditions or provisions contained in any such Lease or otherwise impose any obligation upon Mortgagee. Mortgagor agrees to execute and deliver to Mortgagee such additional instruments, in form and substance satisfactory to Mortgagee, as may hereafter be requested by Mortgagee to further evidence and confirm such assignment. Nevertheless, subject to the terms of this paragraph, Mortgagee grants to Mortgagor a revocable license to operate and manage the Mortgaged

Property and to collect the Rents. Mortgagor shall hold the Rents, or a portion thereof, sufficient to discharge all current sums due on the Debt, in trust for the benefit of Mortgagee for use in the payment of such sums. Upon an Event of Default, without the need for notice or demand, the license granted to Mortgagor herein shall automatically be revoked, and Mortgagee shall immediately be entitled to possession of all Rents, whether or not Mortgagee enters upon or takes control of the Mortgaged Property. Mortgagee is hereby granted and assigned by Mortgagor the right, at its option, upon revocation of the license granted herein, to enter upon the Mortgaged Property in person, by agent or by court-appointed receiver to collect the Rents. Any Rents collected after the revocation of the license may be applied toward payment of the Debt in such priority and proportions as Mortgagee in its sole discretion shall deem proper.

(b)      Mortgagor shall not enter into any Lease for all or any part of the Mortgaged Property without Mortgagee's prior written consent. No changes shall be made to any lease without Mortgagee's prior written consent. All Leases shall provide that they are subordinate to this Mortgage and that the tenant agrees to attorn to Mortgagee. All renewals of residential leases and all proposed residential leases shall provide for rental rates comparable to existing local market rates and shall be arm's length transactions. None of the commercial leases shall contain any non-disturbance or similar recognition agreement, any requirement that the Mortgagor rebuild the Mortgaged Property in connection with a casualty or condemnation of any portion of the Mortgaged Property, or any other similar provisions which adversely affect the Mortgaged Property or which might adversely affect the rights of any holder of the Loan without the prior written consent of Mortgagee. Upon request, Mortgagor shall furnish Mortgagee with executed copies of all residential and commercial leases.

(c)      Mortgagor (i) shall observe and perform all the obligations imposed upon the lessor under the Leases and shall not do or permit to be done anything to impair the value of the Leases as security for the Debt; (ii) shall promptly send copies to Mortgagee of all notices of default which can lead to an offset of Rents or termination of the applicable Lease that Mortgagor shall send or receive thereunder; (iii) shall enforce all the terms, covenants and conditions contained in the Leases upon the part of the lessee thereunder to be observed or performed, short of termination thereof; (iv) shall not collect any of the Rents more than one (1) month in advance; (v) shall not execute any other assignment of the lessor's interest in the Leases or the Rents; (vi) shall use its best efforts to deliver to Mortgagee, upon request, tenant estoppel certificates from each commercial tenant, if any, at the Mortgaged Property in form and substance reasonably satisfactory to Mortgagee; and (vii) shall execute and deliver at the request of Mortgagee all such further assurances, confirmations and assignments in connection with the Mortgaged Property as Mortgagee shall from time to time require. Notwithstanding anything contained herein to the contrary, Mortgagor (A) shall not enter into any new Leases without the prior written consent of Mortgagee; (B) shall not, alter, modify or change the terms of the Leases in any material respect without the prior written consent of Mortgagee; (C) shall not convey or transfer or suffer or permit a conveyance or transfer of the Mortgaged Property or of any interest therein so as to effect a merger of the estates and rights of, or a termination or diminution of the obligations of, tenants under the Leases; (D) shall not consent to any assignment of or subletting under the Leases not in accordance with their terms, without the prior written consent of Mortgagee; and (E) shall not cancel or terminate the Leases or accept a surrender thereof, except if a tenant is in default thereunder.

8.    **Representations Concerning the Loan.**

(a)    The Note, this Mortgage and the other Loan Documents are not subject to any right of rescission, set-off, counterclaim or defense, including the defense of usury, nor would the operation of any of the terms of the Note, this Mortgage and the other Loan Documents, or the exercise of any right thereunder, render this Mortgage unenforceable, in whole or in part, or subject to any right of rescission, set-off, counterclaim or defense, including the defense of usury.

(b)    Mortgagor operates the Mortgaged Property and has not entered into any agreement with any third party relating to the operation and management of the Mortgaged Property, and no third party is entitled to any management fee or any portion of the Rents.

9.    **Trust Fund.**    In the event the Debtor's Chapter 11 case is dismissed, Mortgagor shall receive the advances secured hereby pursuant to Section 13 of the lien law of New York, and shall hold the right to receive such advances as a trust fund to be applied first for the purpose of paying the cost of any improvement and shall apply such advances first to the payment of the cost of any such improvement on the Mortgaged Property before using any part of the total of the same for any other purpose.

10.    **Maintenance of Mortgaged Property.**    The Improvements and the Equipment shall not be removed, demolished or materially altered (except for normal replacement of the Equipment) without the consent of Mortgagee, which shall not be unreasonably withheld. Mortgagor shall comply with all laws, orders and ordinances affecting the Mortgaged Property, or the use thereof subject to the applicable provisions of this Mortgage. Mortgagor shall not initiate, join in, acquiesce in, or consent to any change in any private restrictive covenant, zoning law or other public or private restriction, limiting or defining the uses which may be made of the Mortgaged Property or any part thereof. If under applicable zoning provisions the use of all or any portion of the Mortgaged Property is or shall become a nonconforming use, Mortgagor shall not cause or permit such nonconforming use to be discontinued or abandoned without the express written consent of Mortgagee. Mortgagor shall not (i) change the use of the Mortgaged Property; (ii) permit or suffer to occur any waste on or to the Mortgaged Property or to any portion thereof or (iii) take any steps whatsoever to convert the Mortgaged Property, or any portion thereof, to a condominium or cooperative form of ownership and management. Mortgagor shall not install or permit to be installed on the Premises any underground storage tank.

11.    **Transfer or Encumbrance of the Mortgaged Property.**

(a)    Mortgagor shall not, without prior written consent of the Mortgagee and an Order of the Bankruptcy Court, sell, convey, alienate, mortgage, encumber, pledge or otherwise transfer the Mortgaged Property or any part thereof, or permit the Mortgaged Property or any part thereof to be sold, conveyed, alienated, mortgaged, encumbered, pledged or otherwise transferred.

(b)     A sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer within the meaning of this <u>Paragraph 11</u> shall be deemed to include, without limitation, (i) any agreement pursuant to which Mortgagor agrees to sell the Mortgaged Property or any part thereof; (ii) an agreement by Mortgagor leasing all or a substantial part of the Mortgaged Property for other than actual occupancy by a space tenant thereunder or a sale, assignment or other transfer of, or the grant of a security interest in, Mortgagor's right, title and interest in and to any Leases or any Rents; (iii) if Mortgagor, or any general partner of Mortgagor is a corporation, the voluntary or involuntary sale, conveyance or transfer of such corporation's stock (or the stock of any corporation directly or indirectly controlling such corporation by operation of law or otherwise) or the creation or issuance of new stock in one or a series of transactions by which an aggregate of more than ten percent (10%) of such corporation's stock shall be vested in a party or parties who are not now stockholders or any change in the control of such corporation; (iv) if Mortgagor or any general partner of Mortgagor is a limited or general partnership, joint venture or limited liability company, the change, removal, resignation or addition of a general partner, managing partner, limited partner, joint venturer or member or the transfer of the partnership interest of any general partner, managing partner or limited partner or the transfer of the interest of any joint venturer or member; (v) any pledge, hypothecation, assignment, transfer or other encumbrance of any ownership interest in Mortgagor; and (vi) any plan of reorganization or liquidation of the Trustee or the Debtor or the Mortgaged Property.

(c)     Mortgagee's consent to one sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Mortgaged Property or any portion thereof shall not be deemed to be a waiver of Mortgagee's right to require such consent to any future occurrence of same. Any sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Mortgaged Property or any portion thereof made in contravention of this paragraph shall be null and void and of no force and effect.

12.    **Intentionally Omitted.**

13.    **Intentionally Omitted.**

14.    **Documentary Stamps.**    If at any time the United States of America, any State thereof or any subdivision of any such State shall require revenue or other stamps to be affixed to the Note or this Mortgage, or impose any other tax or charge on the same, Mortgagor shall pay for the same, with interest and penalties thereon, if any, from loan proceeds pursuant to the Financing Order.

15.    **Controlling Agreement.**    It is expressly stipulated and agreed to be the intent of Mortgagor, and Mortgagee at all times to comply with applicable state law or applicable United States federal law (to the extent that it permits Mortgagee to contract for, charge, take, reserve, or receive a greater amount of interest than under state law) and that this <u>Paragraph 15</u> shall control every other covenant and agreement in this Mortgage and the other Loan Documents. If the applicable law (state or federal) is ever judicially interpreted so as to render usurious any amount called for under the Note or under any of the other Loan Documents, or contracted for, charged, taken, reserved, or received with respect to the Debt, or if Mortgagee's exercise of the option to accelerate the maturity of the Note, or if any prepayment by Mortgagor

results in Mortgagor having paid any interest in excess of that permitted by applicable law, then it is Mortgagor's and Mortgagee's express intent that all excess amounts theretofore collected by Mortgagee shall be credited on the principal balance of the Note and all other Debt, and the provisions of the Note and the other Loan Documents immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity of the execution of any new documents, so as to comply with the applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder or thereunder. All sums paid or agreed to be paid to Mortgagee for the use, forbearance, or detention of the Debt shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full stated term of the Debt until payment in full so that the rate or amount of interest on account of the Debt does not exceed the maximum lawful rate from time to time in effect and applicable to the Debt for so long as the Debt is outstanding. Notwithstanding anything to the contrary contained herein or in any of the other Loan Documents, it is not the intention of Mortgagee to accelerate the maturity of any interest that has not accrued at the time of such acceleration or to collect unearned interest at the time of such acceleration.

16.    **Intentionally Omitted.**

17.    **Intentionally Omitted.**

18.    **Further Acts, Etc.**    Mortgagor shall execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignment, Uniform Commercial Code financing statements or continuation statements, transfers and assurances as Mortgagee shall, from time to time, reasonably require, for the better assuring, conveying, assigning, transferring, and confirming unto Mortgagee the property and rights hereby mortgaged, given, granted, bargained, sold, alienated, enfeoffed, conveyed, confirmed, pledged, assigned and hypothecated or intended now or hereafter so to be, or which Mortgagor may be or may hereafter become bound to convey or assign to Mortgagee, or for carrying out the intention or facilitating the performance of the terms of this Mortgage or for filing, registering or recording this Mortgage or for facilitating the sale of the Loan and the Loan Documents (if Mortgagee elects to do so.). Mortgagor, on reasonable demand, shall execute and deliver one or more financing statements, chattel mortgages or other instruments, to evidence more effectively the security interest of Mortgagee in the Mortgaged Property. Upon foreclosure, the appointment of a receiver or any other relevant action, the Mortgager shall, at the cost of the Mortgager and without expense to Mortgagee, cooperate fully and completely to affect the assignment or transfer of any license, permit, agreement or any other right necessary or useful to the operation of the Mortgaged Property.

19.    **Recording of Mortgage, Etc.** Mortgagee upon the receipt of this Mortgage and thereafter, from time to time, shall cause this Mortgage, and any security instrument creating a lien or security interest or evidencing the lien hereof upon the Mortgaged Property and each instrument of further assurance to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and fully to protect the lien or security interest hereof upon, and the interest of Mortgagee in, the Mortgaged Property. Mortgagor, from loan proceeds, shall pay all filing, registration or recording fees, and all expenses incident to the preparation, execution and

acknowledgment of this Mortgage, any mortgage supplemental hereto, any security instrument with respect to the Mortgaged Property and any instrument of further assurance, and all federal, state, county and municipal, taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of this Mortgage, any mortgage supplemental hereto, any security instrument with respect to the Mortgaged Property or any instrument of further assurance, except where prohibited by law so to do. If Mortgagee incurs any liability, damages or expenses by reason of the imposition of any tax on the making and recording of this Mortgage, all such liabilities, damages and/or expenses shall be part of, and be added to, the Debt hereunder and Mortgagee shall be entitled to recover such expenses.

20.   **Intentionally Omitted.**

21.   **Events of Default.**   The Debt shall become immediately due and payable at the option of Mortgagee upon the happening of any one or more of the following events of default (each an "**Event of Default**"):

(a)   if any portion of the Debt is not paid when due, including, without limitation, payment of the Debt in full upon the Maturity Date;

(b)   if Mortgagor transfers or encumbers any portion of the Mortgaged Property without Mortgagee's prior written consent, it being expressly agreed and acknowledged by Mortgagor that any other financing is prohibited by this Mortgage;

(c)   if Kenneth P. Silverman ceases to be the Chapter 11 trustee of the Debtor for any reason;

(d)   the Debtor's Chapter 11 case is converted to one under Chapter 7 of the Bankruptcy Code or dismissed;

(e)   in the event the Debtor's Chapter 11 case is dismissed or converted, if any of the Taxes or Other Charges are not paid when the same are due and payable;

(f)   (i) The Trustee files a Chapter 11 plan of reorganization or liquidation of the Debtor or the Mortgaged Property that (y) has not been consented to in writing by the Mortgagee, or (z) does not provide for payment in full to Lender, on the effective date of any such plan, of the full amount of the Debt and the full amount of the pre-petition claim of Mortgagee fixed pursuant to the Financing Order; or (ii) the Trustee supports any Chapter 11 plan of reorganization or liquidation filed by any person or entity, which plan Lender has not approved prior to the filing of such plan;

(g)   in the event the Debtor's Chapter 11 case is dismissed or converted, if the Policies are not kept in full force and effect or are not delivered to Mortgagee upon request and in accordance with the requirements contained in this Mortgage;

(h)   subject to Mortgagor's rights set forth in Paragraph 28 of this Mortgage, if the Mortgaged Property becomes subject to any mortgage, liens, or other

encumbrance of any kind whatsoever except (i) a lien for local real estate taxes and assessments not then due and payable; or (ii) a mortgage or other lien in favor of Mortgagee;

(i)    in the event the Debtor's Case is dismissed or converted, if the Debtor fails to cure properly any (i) building department violations, or (ii) rent impairing violations affecting or which may be interpreted to affect the Mortgaged Property and which have or may have a negative adverse impact on Rents in the sole judgment of Mortgagee within thirty (30) days after the Debtor first receives notice of any such violations, unless same cannot reasonably be cured within said thirty (30) day period, and provided the Debtor commences such cure process and diligently pursues same within the initial thirty (30) day period, the Debtor shall be granted such additional time as may be reasonably necessary to cure same, provided the Debtor is diligently pursuing to cure same;

(j)    except as permitted in this Mortgage, the actual alteration, improvement, demolition or removal of any of the Improvements without the prior consent of Mortgagee;

(k)    if Mortgagor shall continue to be in default under any term, covenant, or provision of the Note or any of the other Loan Documents, beyond applicable cure periods contained in those documents;

(l)    if Mortgagor fails to cure a default under any other term, covenant or provision of this Mortgage within thirty (30) days after Mortgagor first receives notice of any such default; provided, however, if such default is reasonably susceptible of cure, but not within such thirty (30) day period, then Mortgagor may be permitted up to an additional sixty (60) days to cure such default provided that Mortgagor diligently and continuously pursues such cure;

(m)    if, without Mortgagee's prior written consent such consent not to be unreasonably withheld or delayed: (i) Mortgagor ceases to act as the chapter 11 trustee of the Debtor; (ii) Mortgagor shall enter into a management agreement with any party, or there is any material change in any management agreement approved by Mortgagee; (iii) the management of the Mortgaged Property is transferred to a person or entity other than Mortgagor; or (iv) there is any material change in the management, operation or control of the Mortgaged Property; or

(n)    if the Mortgaged Property or any material portion thereof is put into one of the following Housing Quality Enforcement Programs by the New York City Department of Housing Preservation & Development: (i) 7A Management Program; (ii) Emergency Repair Program; (iii) Alternative Enforcement Program; (iv) Proactive Preservation Initiative, or (v) Underlying Conditions Program.

22.    **Late Payment Charge and Default Rate.**    From and after the occurrence of an Event of Default, interest shall accrue on the outstanding Principal Sum at a rate equal to the lesser of: (i) Twenty-Four Percent (24%) per annum; or (ii) the maximum rate allowed by law (the "**Default Rate**"). The Default Rate shall remain in effect until any and all Events of Default shall have been cured. In addition, the Default Rate shall remain in effect during any period of default even upon the acceleration of the Debt. The Default Rate shall be in effect at all times

after the maturity of the Debt (whether by acceleration or otherwise). Upon acceleration or maturity, the Default Rate shall remain in effect until all sums due under the Note, the Mortgage and the Loan Documents shall have been paid in full.

23.    **Intentionally Omitted.**

24.    **Remedies.**

(a)    Upon the occurrence of any uncured Event of Default, Mortgagee may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against the Debtor and in and to the Mortgaged Property by Mortgagee itself or otherwise, including, without limitation, the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as Mortgagee may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Mortgagee:

(i)    declare the entire Debt to be immediately due and payable;

(ii)    institute a proceeding or proceedings, judicial or nonjudicial, by advertisement or otherwise, for the complete foreclosure of this Mortgage in which case the Mortgaged Property or any interest therein may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or manner; notwithstanding the foregoing upon default of the Mortgage or the Note, or other obligation secured thereby, Mortgagee shall have the right to sell the Premises by power of sale pursuant to Article 14 of the New York Real Property Actions and Proceedings Law or any similar statute, as applicable;

(iii)    with or without entry, to the extent permitted and pursuant to the procedures provided by applicable law, institute proceedings for the partial foreclosure of this Mortgage for the portion of the Debt then due and payable, subject to the continuing lien of this Mortgage for the balance of the Debt not then due;

(iv)    sell for cash or upon credit the Mortgaged Property or any part thereof and all estate, claim, demand, right, title and interest of the Debtor therein and rights of redemption thereof, pursuant to the power of sale or otherwise, at one or more sales, as an entirety or in parcels, at such time and place, upon such terms and after such notice thereof as may be required or permitted by law;

(v)    institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained herein, or in any of the other Loan Documents;

(vi)     recover judgment on the Note either before, during or after any proceedings for the enforcement of this Mortgage;

(vii)    apply for the appointment of a trustee, receiver, liquidator or conservator of the Mortgaged Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of the Debtor or of any person, firm or other entity liable for the payment of the Debt; and/or

(viii)   enforce Mortgagee's interest in the Leases and Rents and enter into or upon the Mortgaged Property, either personally or by its agents, nominees or attorneys and dispossess the Debtor and its agents and servants therefrom, and thereupon Mortgagee may (A) use, operate, manage, control, insure, maintain, repair, restore and otherwise deal with all and every part of the Mortgaged Property and conduct the business thereat; (B) complete any construction on the Mortgaged Property in such manner and form as Mortgagee deems advisable; (C) make alterations, additions, renewals, replacements and improvements to or on the Mortgaged Property; (D) exercise all rights and powers of the Debtor with respect to the Mortgaged Property, whether in the name of the Debtor or otherwise, including, without limitation, the right to make, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive all Rents; and (E) apply the receipts from the Mortgaged Property to the payment of Debt, after deducting therefrom all expenses (including, without limitation, reasonable attorneys' fees and disbursements) incurred in connection with the aforesaid operations and all amounts necessary to pay the taxes, assessments insurance and other charges in connection with the Mortgaged Property, as well as just and reasonable compensation for the services of Mortgagee, its counsel, agents and employees;

(b)      pursue such other rights and remedies as may be available at law or in equity or under the Uniform Commercial Code. In the event of a sale, by foreclosure or otherwise, of less than all of the Mortgaged Property, this Mortgage shall continue as a lien on the remaining portion of the Mortgaged Property.

(c)      The proceeds of any sale made under or by virtue of this paragraph, together with any other sums which then may be held by Mortgagee under this Mortgage, whether under the provisions of this paragraph or otherwise, shall be applied by Mortgagee to the payment of the Debt in such priority and proportion as Mortgagee in its sole discretion shall deem proper.

(d)      Mortgagee may adjourn from time to time any sale by it to be made under or by virtue of this Mortgage by announcement at the time and place appointed for

such sale or for such adjourned sale or sales; and, except as otherwise provided by any applicable provision of law, Mortgagee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

(e)    Upon the completion of any sale or sales pursuant hereto in accordance with all applicable laws, Mortgagee, or an officer of any court empowered to do so, shall execute and deliver to the accepted purchaser or purchasers a good and sufficient instrument, or good and sufficient instruments, conveying, assigning and transferring all estate, right, title and interest in and to the property and rights sold. Any sale or sales made under or by virtue of this paragraph, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Debtor in and to the properties and rights so sold, and shall be a perpetual bar both at law and in equity against the Debtor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under the Debtor.

(f)    Upon any sale made under or by virtue of this paragraph, whether made under a power of sale or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Mortgagee may bid for and acquire the Mortgaged Property or any part thereof and in lieu of paying cash therefor may make settlement for the purchase price by crediting upon the Debt the net sales price after deducting therefrom the expenses of the sale and costs of the action and any other sums which Mortgagee is authorized to deduct under this Mortgage and the other Loan Documents.

(g)    No recovery of any judgment by Mortgagee and no levy of an execution under any judgment upon the Mortgaged Property or upon any other property of the Debtor shall affect in any manner or to any extent the lien of this Mortgage upon the Mortgaged Property or any part thereof, or any liens, rights, powers or remedies of Mortgagee hereunder, but such liens, rights, powers and remedies of Mortgagee shall continue unimpaired as before.

(h)    Mortgagee may terminate or rescind any proceeding or other action brought in connection with its exercise of the remedies provided in this paragraph at any time before the conclusion thereof, as determined in Mortgagee's sole discretion and without prejudice to Mortgagee.

(i)    Mortgagee may resort to any remedies and the security given by the Note, this Mortgage or in any of the other Loan Documents in whole or in part, and in such portions and in such order as determined by Mortgagee's sole discretion. No such action shall in any way be considered a waiver of any rights, benefits or remedies evidenced or provided by the Note, this Mortgage or in any of the other Loan Documents. The failure of Mortgagee to exercise any right, remedy or option provided in the Note, this Mortgage or any of the other Loan Documents shall not be deemed a waiver of such right, remedy or option or of any covenant or obligation secured by the Note, this Mortgage or any of the other Loan Documents. No acceptance by Mortgagee of any payment after the occurrence of any Event of Default and no payment by Mortgagee of any obligation for which the Debtor is liable hereunder shall be deemed to waive or cure any Event of Default with respect to the Debtor, or the liability to pay

such obligation. No sale of all or any portion of the Mortgaged Property, no forbearance on the part of Mortgagee, and no extension of time for the payment of the whole or any portion of the Debt or any other indulgence given by Mortgagee shall operate to release or in any manner affect the interest of Mortgagee in the remaining Mortgaged Property or the liability to pay the Debt. No waiver by Mortgagee shall be effective unless it is in writing and then only to the extent specifically stated. All costs and expenses of Mortgagee in exercising its rights and remedies under this Paragraph 24 (including, without limitation, reasonable attorneys' fees and disbursements to the extent permitted by law), with interest at the Default Rate for the period after notice from Mortgagee and such costs and expenses shall constitute a portion of the Debt and shall be secured by this Mortgage.

(j)    The interests and rights of Mortgagee under the Note, this Mortgage or any of the other Loan Documents shall not be impaired by any indulgence, including, without limitation; (i) any renewal, extension or modification which Mortgagee may grant with respect to any of the Debt; (ii) any surrender, compromise, release, renewal, extension, exchange or substitution which Mortgagee may grant with respect to the Mortgaged Property or any portion thereof; or (iii) any release or indulgence granted to any maker, endorser, or surety of any of the Debt.

25.    **Right of Entry.** In addition to any other rights or remedies granted under this Mortgage, Mortgagee and its agents shall have the right to enter and inspect the Mortgaged Property with 48 hours' notice at any reasonable time during the Term.

26.    **Security Agreement.**    This Mortgage is both a real property mortgage and a "security agreement" within the meaning of the Uniform Commercial Code. The Mortgaged Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Mortgagor in the Mortgaged Property. Mortgagor by executing and delivering this Mortgage has granted and hereby grants to Mortgagee, as security for the Debt, a security interest in the Mortgaged Property to the full extent that the Mortgaged Property may be subject to the Uniform Commercial Code. Mortgagor hereby agrees with Mortgagee to execute and deliver to Mortgagee, in form and substance satisfactory to Mortgagee, such financing statements and such further assurances as Mortgagee may from time to time, reasonably consider necessary to create, perfect, and preserve Mortgagee's security interest herein granted. This Mortgage shall also constitute a "fixture filing" for the purposes of the Uniform Commercial Code. As such, this Mortgage covers all items of the Collateral that are or are to become fixtures. Information concerning the security interest herein granted may be obtained from the parties at the addresses of the parties set forth in the first paragraph of this Mortgage. If an Event of Default shall occur, Mortgagee, in addition to any other rights and remedies which it may have, shall have and may exercise immediately and without demand, any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the foregoing, the right to take possession of the Collateral or any part thereof, and to take such other measures as Mortgagee may deem necessary for the care, protection and preservation of the Collateral. Mortgagee's expenses, including, without limitation, reasonable attorneys' fees and disbursements, incurred or paid by Mortgagee in protecting the interest in the Collateral and in enforcing the rights hereunder with respect to the Collateral shall constitute a portion of the Debt and shall be secured

by this Mortgage. Any notice of sale, disposition or other intended action by Mortgagee with respect to the Collateral sent to Mortgagor in accordance with the provisions hereof at least fourteen (14) days prior to such action, shall constitute commercially reasonable notice to Mortgagor. The proceeds of any disposition of the Collateral, or any part thereof, may be applied by Mortgagee to the payment of the Debt in such priority and proportions as Mortgagee in its sole discretion shall deem proper. In the event of any change in name, identity or structure of the Debtor, such Debtor shall notify Mortgagee thereof and promptly after request shall execute, file and record such Uniform Commercial Code forms as are necessary to maintain the priority of Mortgagee's lien upon and security interest in the Collateral, and shall pay all expenses and fees in connection with the filing and recording thereof. If Mortgagee shall require the filing or recording of additional Uniform Commercial Code forms or continuation statements, the Mortgagor shall, promptly after request, execute such Uniform Commercial Code forms or continuation statements as Mortgagee shall deem necessary and, in the event the Debtor's case is dismissed or converted, shall pay all expenses and fees in connection with the filing and recording thereof, it being understood and agreed, however, that no such additional documents shall increase Mortgagor's obligations under the Note, this Mortgage and the other Loan Documents.

      27.   **Actions and Proceedings.**   Mortgagee has the right to appear in and defend any action or proceeding brought with respect to the Mortgaged Property.

      28.   **Right to Subrogate.** Mortgagee shall, at its option, be subrogated to the lien of any mortgage or other security instrument discharged in whole or in part by the Debt, and any such subrogation rights shall constitute additional security for the payment of the Debt.

      29.   **Contest of Certain Claims.**  Notwithstanding the provisions of Paragraph 4 hereof, Mortgagor shall not be in default for failure to pay or discharge Taxes, Other Charges or mechanic's or materialman's lien asserted against the Mortgaged Property if, and so long as; (a) Mortgagor shall have notified Mortgagee of same within ten (10) days of obtaining knowledge thereof; and (b) Mortgagor shall diligently and in good faith contest the same by appropriate legal proceedings which shall operate to prevent the enforcement or collection of the same and the sale of the Mortgaged Property or any part thereof, to satisfy the same. Notwithstanding the foregoing, Mortgagor shall immediately upon request of Mortgagee pay (and if Mortgagor shall fail so to do, Mortgagee may, but shall not be required to, pay or cause to be discharged or bonded against) any such Taxes, Other Charges or claim notwithstanding such contest, if in the opinion of Mortgagee, the Mortgaged Property or any part thereof or interest therein may be in danger of being sold, forfeited, foreclosed, terminated, cancelled or lost. Mortgagee may pay over any such cash deposit or part thereof to the claimant entitled thereto at any time when, in the judgment of Mortgagee, the entitlement of such claimant is established.

      30.   **Recovery of Sums Required to be Paid.**   Mortgagee shall have the right from time to time to take action to recover any sum or sums which constitute a part of the Debt as the same become due, without regard to whether or not the balance of the Debt shall be due, and without prejudice to the right of Mortgagee thereafter to bring an action of foreclosure, or any other action, for a default or defaults by Mortgagor existing at the time such earlier action was commenced.

31.    **Marshalling and Other Matters.**    Mortgagor hereby waives, to the extent permitted by law, the benefit of all appraisement, valuation, stay, extension, reinstatement and redemption laws now or hereafter in force and all rights of marshalling in the event of any sale hereunder of the Mortgaged Property or any part thereof or any interest therein.

32.    **Intentionally Omitted.**

33.    **Indemnification.**    In addition to any other obligations and provisions provided herein or in the other Loan Documents, Mortgagor shall protect, defend, reimburse and hold harmless Mortgagee from and against all liabilities, obligations, claims, demands, damages, penalties, causes of action, losses, fines, costs and expenses (including, without limitation, reasonable attorneys' fees, whether in-house staff, retained firms, or otherwise, and disbursements), imposed upon or incurred by or asserted against Mortgagee by reason of (a) ownership of this Mortgage, the Mortgaged Property or any interest therein or receipt of any Rents; (b) any accident, injury to or death of persons or loss of or damage to property occurring in, on or about the Mortgaged Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (c) any use, nonuse or condition in, on or about the Mortgaged Property or any part thereof or on adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (d) any failure on the part of Mortgagor to perform or comply with any of the terms of this Mortgage; (e) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any part thereof; (f) the presence, disposal, escape, seepage, leakage, spillage, discharge, emission, release, or threatened release of any hazardous substance or asbestos on, from, or affecting the Mortgaged Property; (g) any personal injury (including wrongful death) or property damage (real or personal) arising out of or related to any hazardous substance or asbestos; (h) any lawsuit brought or threatened, settlement reached, or government order relating to any hazardous substance or asbestos; (i) any violation of environmental laws, which are based upon or in any way related to any hazardous substance or asbestos including, without limitation, the costs and expenses of any remedial work, attorneys' and consultant fees and disbursements, investigation and laboratory fees, court costs, and litigation expenses; (j) any failure of the Mortgaged Property to comply with any access laws; (k) any representation or warranty made in the Note, this Mortgage or any of the other Loan Documents being false or misleading in any material respect as of the date such representation or warranty was made; (l) any claim by brokers, finders or similar persons claiming to be entitled to a commission in connection with any Lease or other transaction involving the Mortgaged Property or any part thereof under any legal requirement or any liability asserted against Mortgagee with respect thereto, including mortgage brokerage fees; (m)  any claims arising out of or related to the Mortgaged Property, Mortgage, the Note, the Loan Documents, the Debt, and/or any other loans made to the Debtor, (n) the claims of any lessee of any or any portion of the Mortgaged Property or any person acting through or under any lessee or otherwise arising under or as a consequence of any Lease, (o)  any amounts payable to Mortgagee by reason of the application of this paragraph shall be secured by this Mortgage and shall become immediately due and payable and shall bear interest at the Default Rate from the date the loss or damage is sustained by Mortgagee until paid and any amendment to, or restructuring of, the Debt and the Loan Documents, (p) any and all lawful action that may be taken by Mortgagee in connection with the enforcement of the provisions of

this Mortgage or the Note or any of the other Loan Documents, whether or not suit is filed in connection with the same, or in connection with the Mortgagor and/or any partner, member, joint venturer or shareholder thereof becoming a party to a voluntary or involuntary federal or state bankruptcy, insolvency or similar proceeding, and (q) the past, current and/or future sale or offering for sale of any interests in Mortgagor, including, without limitation, liabilities under any applicable securities or blue sky laws. All sums expended by Mortgagee shall be payable on demand and, until reimbursed by Mortgagor pursuant hereto, shall be deemed additional principal of the Debt and shall bear interest at the Default Rate. The obligations and liabilities of Mortgagor under this Paragraph 33 shall (i) be part of, and added to, the Debt hereunder, notwithstanding anything to the contrary; and (ii) survive the termination, satisfaction, or assignment of this Mortgage and the exercise by Mortgagee of any of its rights or remedies hereunder, including, but not limited to, the acquisition of the Mortgaged Property by foreclosure or a conveyance in lieu of foreclosure. For the avoidance of doubt, nothing herein shall be construed as the Trustee, the Debtor's estate, or the Debtor providing additional indemnification to the Mortgagee with respect to Mortgagee's pre-petition claim against the Debtor or the pre-petition loan documents relating thereto.

34.   **Environmental Monitoring.**   Mortgagor shall give prompt written notices to Mortgagee of: (a) any proceeding or inquiry by any party with respect to the presence of any environmental hazards or asbestos on, under, from or about the Mortgaged Property, and (b) all claims made or threatened by any third party against Mortgagor or the Mortgaged Property relating to any loss or injury resulting from any environmental hazards or asbestos, and (c) Mortgagor's discovery of any occurrence or condition on any real property adjoining or in the vicinity of the Mortgaged Property that could cause the Mortgaged Property to be subject to any investigation or cleanup. Mortgagor shall permit Mortgagee to join and participate in, as a party if it so elects, any legal proceedings or actions initiated with respect to the Mortgaged Property in connection with any such proceedings.

35.   **Intentionally Omitted.**

36.   **Notices.**   Any notice, demand, statement, request or consent made hereunder shall be in writing, addressed to the address, as set forth above, of the party to whom such notice is to be given, or to such other address as requested in writing by Mortgagor (and in the case of Mortgagor, with a copy to Silverman Acampora LLP, 100 Jericho Quadrangle, Suite 300, Jericho, New York 11753, Attention: Ronald J. Friedman, Esq.), or Mortgagee, as the case may be (and in the case of Mortgagee, with a copy to Katsky Korins LLP, 605 Third Avenue, Suite 1200, New York, New York 10158, Attention: Steven H. Newman, Esq.), and notice shall be deemed to be received by the addressee on (i) the day such notice is personally delivered to the office of such addressee, or (ii) the day following the day on which such notice is delivered to a nationally recognized overnight courier delivery service.

37.   **Non-Waiver.**   The failure of Mortgagee to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Mortgage. Any consent or approval by Mortgagee in any single instance shall not be deemed or construed to be Mortgagee's consent or approval in any like matter arising at a subsequent date. Mortgagor shall not be relieved of Mortgagor's obligations hereunder by reason of (a) the failure of Mortgagee to

comply with any request of Mortgagor to take any action to foreclose this Mortgage or otherwise enforce any of the provisions hereof or of the Note, or any of the other Loan Documents; (b) the release, regardless of consideration, of the whole or any part of the Mortgaged Property, or of any person liable for the Debt or any portion thereof, or (c) any agreement or stipulation by Mortgagee extending the time of payment or otherwise modifying or supplementing the terms of the Note, this Mortgage or any of the other Loan Documents. Mortgagee may resort for the payment of the Debt to any other security held by Mortgagee in such order and manner as Mortgagee, in its sole discretion, may elect. Mortgagee may take action to recover the Debt, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Mortgagee thereafter to foreclose this Mortgage. The rights and remedies of Mortgagee under this Mortgage shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Mortgagee shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision. Mortgagee shall not be limited exclusively to the rights and remedies herein stated but shall be entitled to every right and remedy now or hereafter afforded at law or in equity.

38.    **No Oral Change.**  This Mortgage, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Mortgagor or Mortgagee, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

39.    **Liability.**  This Mortgage is non-recourse as to the Trustee individually and shall only be payable from proceeds of the Mortgaged Property and the Collateral. Subject to the provisions hereof requiring Mortgagee's consent to any transfer of the Mortgaged Property, this Mortgage shall be binding upon and inure to the benefit of Mortgagor and Mortgagee and their respective successors and assigns forever. For the avoidance of doubt, Mortgagee has executed this Mortgage solely in his capacity as the chapter 11 trustee of the Debtor.

40.    **Inapplicable Provision.**  If any term, covenant or condition of the Note or this Mortgage is held to be invalid, illegal or unenforceable in any respect, the Note and this Mortgage shall be construed without such provision.

41.    **Headings, Etc.**  The headings and captions of various paragraphs of this Mortgage are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

42.    **Duplicate Originals.**  This Mortgage may be executed in any number of duplicate originals and each such duplicate original shall be deemed to be an original.

43.    **Definitions.**  Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Mortgage may be used interchangeably in singular or plural form and the word **"Mortgagor"** shall mean "each Mortgagor and any subsequent owner or owners of the Mortgaged Property or any part thereof or any interest therein," the word "Mortgagee" shall mean "Mortgagee and any subsequent holder of the Note," the word "Note" shall mean "the Note and any other evidence of indebtedness

secured by this Mortgage," the word "person" shall include an individual, corporation, partnership, trust, unincorporated association, government, governmental authority, and any other entity, the words **"Mortgaged Property"** shall include any portion of the Mortgaged Property and any interest therein and the words **"attorneys' fees"** shall include any and all attorneys' fees, paralegal and law clerk fees, including, without limitation, fees at the pre-trial, trial and appellate levels incurred or paid by Mortgagee in protecting its interest in the Mortgaged Property and Collateral and enforcing its rights hereunder. In addition; (i) the term **"Debtor"** shall mean 305 East 61st Street Group LLC, even in the event the Debtor's Chapter 11 case is dismissed; and (ii) the term **"Bankruptcy Code"** shall mean Title 11 of the United States Code, commonly known as the United States Bankruptcy Code. Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of all terms shall include the plural and vice versa. Any capitalized term not defined herein shall have the meaning prescribed in the Loan Documents.

44.    **Assignments.** Mortgagee shall have the right to assign or transfer its rights under this Mortgage without limitation.

45.    **Survival.** Any assignee or transferee shall be entitled to all the benefits afforded Mortgagee under this Mortgage. The liabilities due to the Mortgagee hereunder shall survive the termination or assignment of this Mortgage, and the exercise by the Mortgagee of any of its rights or remedies hereunder, including, but not limited to, the acquisition of the Mortgaged Property by foreclosure or conveyance in lieu of foreclosure which shall be part of, and added to, the Debt hereunder.

46.    **Waiver of Jury Trial. MORTGAGOR HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THE NOTE, THIS MORTGAGE, OR THE OTHER LOAN DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY MORTGAGOR, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. MORTGAGEE IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY MORTGAGOR.**

47.    **Miscellaneous.**

(a)    The Loan Documents contain the entire agreement between Mortgagor and Mortgagee relating to or connected with the Loan. Any other agreements relating to or connected with the Loan not expressly set forth in the Loan Documents are null and void and superseded in their entirety by the provisions of the Loan Documents.

(b)    Mortgagor represents to Mortgagee that, to the best of Mortgagor's knowledge, there has not been committed by Mortgagor any act or omission affording the federal

government or any state or local government the right of forfeiture as against the Mortgaged Property or any part thereof or any monies paid in performance of Mortgagor's obligations under the Note or under any of the other Loan Documents. Mortgagor agrees not to commit, permit or suffer to exist any act, omission or circumstance affording such right of forfeiture.

(c)    Mortgagor acknowledges that, with respect to the Loan, Mortgagor is relying solely on its own judgment and advisors in entering into the Loan without relying in any manner on any statements, representations or recommendations of Mortgagee or any parent, subsidiary or affiliate of Mortgagee. Mortgagor acknowledges that Mortgagee engages in the business of real estate financings and other real estate transactions and investments which may be viewed as adverse to or competitive with the business of the Mortgagor or its affiliates. Mortgagor acknowledges that it is represented by competent counsel and has consulted counsel before executing the Loan Documents.

(d)    Mortgagee is entitled to recover all reasonable costs and expenses (including, without limitation, reasonable attorneys' fees and disbursements and the costs and expenses of any title insurance company, appraisers, engineers or surveyors) incurred by Mortgagee in connection with (i) the preparation, negotiation, execution and delivery of this Mortgage and the other Loan Documents; (ii) Mortgagor's performance of and compliance with Mortgagor's respective agreements and covenants contained in this Mortgage and the other Loan Documents on its part to be performed or complied with after the date hereof; (iii) Mortgagee's performance and compliance with all agreements and conditions contained in this Mortgage and the other Loan Documents on its part to be performed or complied with after the date hereof; (iv) the negotiation, preparation, execution, delivery and administration of any consents, amendments, waivers or other modifications to this Mortgage and the other Loan Documents; and (v) the filing and recording fees and expenses, title insurance fees and expenses, and other similar expenses incurred in creating and perfecting the lien in favor of Mortgagee pursuant to this Mortgage and the other Loan Documents.

(e)    This Mortgage shall be governed by and construed in accordance with the laws of the State of New York (without regard to principals of conflicts of law) and the applicable laws of the United States of America. The Mortgagee and the Mortgagor hereby irrevocably submit to the jurisdiction of the Bankruptcy Court unless relief from the automatic stay is granted or the Debtor's case is dismissed by final and non-appealable Order of the Bankruptcy Court and, only in that event, does the Mortgagor hereby irrevocably submits to the jurisdiction of any New York State or Federal court sitting in the County in which the Mortgaged Property is located in any action or proceeding arising out of or relating to this Mortgage or any other document delivered in connection herewith or therewith, and the Mortgagor hereby irrevocably agrees that all claims in respect of such action or proceeding may be heard and determined in such New York State court, or to the extent permitted by law, in such Federal court. The Mortgagor hereby irrevocably waives, to the fullest extent he may effectively do so, the defense of an inconvenient forum to the maintenance of such action or proceeding.

(f)    Mortgagee shall not be obligated to perform or discharge any obligation of the Mortgagor as a result of the collateral assignment or lien hereby effected. Should the Mortgagee incur any such liability, loss or damage by reason of this Mortgage, or in

defense against any such claims or demands, or perform any acts or covenants on the part of Mortgagor to be performed under any lease, or pay for the account of the Mortgagor any and all sums, costs and expenses for the discharge of taxes, assessments, water rents or other liens against the Mortgaged Property or any part thereof, or on account of insurance premiums or repairs, and also any amounts and expenses necessary to perform any covenants and conditions to be performed on the part of the Mortgagor under any lease, the amount thereof, including costs, expenses and attorneys' fees, together with interest thereon at the Default Rate from the date such expenses were paid by the Mortgagee to the date of payment to the Mortgagee by the Mortgagor, shall be included in the obligations secured by this Mortgage, and the Mortgagee shall be entitled to recover those expenses.

(g)    The Mortgaged Property constitutes "single asset real estate" as defined in, and pursuant to, Section 101(51B) of the United States Bankruptcy Code.

(h)    If this Mortgage or any of the other Loan Documents require Mortgagor to make any payment on a day that is not a business day, then Mortgagor shall instead pay such amount on the next business day (except where the Loan Documents provide otherwise for any particular payment), but any interest and fees shall be calculated based upon the time of actual payment or performance. The term "**business day**" shall mean any day other than Saturdays, Sundays or holidays on which banks doing business in the State of New York are authorized to close.

48.    **Section 291-f Agreement.**    This Mortgage is intended to be, and shall operate as, the agreement described in Section 291-f of the Real Property Law of the State of New York and shall be entitled to the benefits afforded thereby.

49.    **Intentionally Omitted.**

50.    **Transfer Tax Provisions.** (a) Mortgagor covenants and agrees that, in the event of a sale of the Mortgaged Property or other transfer, it shall duly complete, execute and deliver to Mortgagee contemporaneously with the submission to the applicable taxing authority or recording officer, all forms and supporting documentation required by such taxing authority or recording officer to estimate and fix any and all applicable state and local real estate transfer taxes, including, without limitation, any real estate transfer taxes payable under Article 31 of the New York State Tax Law or under Title 11, Chapter 21 of the Administrative Code of the City of New York, if applicable, or any successor provisions thereto (collectively, "**Transfer Taxes**") by reason of such sale or other transfer or recording of the deed evidencing such sale or other transfer. This subsection (a) shall apply only if this Mortgage remains outstanding after any such sale or transfer.

(b)    All transfer Taxes that may hereafter become due and payable with respect to any transfer shall be paid in accordance with the Financing Order if not exempt under Section 1146(a) of the Bankruptcy Code. In the event of an uncured Event of Default, and unless incurred in connection with a foreclosure of the Mortgage, Mortgagee may pay such transfer Taxes and all such payments shall be added to the Debt. The provisions of this Section shall survive any transfer and the delivery of the deed in connection with any transfer.

51.    **Maximum Principal Amount**. NOTWITHSTANDING ANY
PROVISION SET FORTH HEREIN TO THE CONTRARY, THE MAXIMUM AMOUNT OF
PRINCIPAL INDEBTEDNESS SECURED BY THIS MORTGAGE AT EXECUTION, OR
WHICH UNDER ANY CONTINGENCY MAY BECOME SECURED HEREBY AT ANY
TIME HEREAFTER, IS U.S. $2,000,000.00, PLUS ALL INTEREST PAYABLE UNDER THE
NOTE AND ALL AMOUNTS EXPENDED BY MORTGAGEE AFTER DEFAULT BY
MORTGAGOR (A) FOR THE PAYMENT OF TAXES, CHARGES OR ASSESSMENTS
WHICH MAY BE IMPOSED BY LEGAL REQUIREMENTS UPON THE MORTGAGED
PROPERTY; (B) TO MAINTAIN THE INSURANCE REQUIRED UNDER THIS
MORTGAGE; (C) FOR ANY EXPENSES INCURRED IN MAINTAINING THE
MORTGAGED PROPERTY AND UPHOLDING THE LIEN OF THIS MORTGAGE,
INCLUDING, BUT NOT LIMITED TO, THE EXPENSE OF ANY LITIGATION TO
PROSECUTE OR DEFEND THE RIGHTS AND LIEN CREATED BY THIS MORTGAGE,
AND (D) FOR ANY AMOUNT, COST OR CHARGE TO WHICH MORTGAGEE BECOMES
SUBROGATED, UPON PAYMENT, WHETHER UNDER RECOGNIZED PRINCIPLES OF
LAW OR EQUITY, OR UNDER EXPRESS STATUTORY AUTHORITY.

52.    **Covenants in Addition to RPL.** All covenants hereof shall be construed
as affording to Mortgagee rights in addition to and not exclusive of the rights conferred under the
provisions of Sections 254, 271, 272, 273 and 291-f of the Real Property Law of the State of
New York or any other applicable legal requirement.

53.    **Patriot Act Compliance.** Mortgagor shall use its good faith and
commercially reasonable efforts to comply with the Patriot Act (as defined below) and all
applicable requirements of governmental authorities having jurisdiction of the Mortgagor and the
Mortgaged Property, including those relating to money laundering and terrorism.

For purposes hereof, the term "Patriot Act" means the Uniting and Strengthening
America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA
PATRIOT ACT) Act of 2001, as the same may be amended from time to time, and
corresponding provisions of future laws.

Neither the Mortgagor nor any partner in the Mortgagor or member of such
partner nor any owner of a direct or indirect interest in the Mortgagor (a) is listed on any
Government Lists (as defined below); (b) is a person who has been determined by competent
authority to be subject to the prohibitions contained in Presidential Executive Order No. 13224
(Sept. 23, 2001) or any other similar prohibitions contained in the rules and regulations of OFAC
(as defined below) or in any enabling legislation or other Presidential Executive Orders in
respect thereof; (c) has been previously indicted for or convicted of any felony involving a crime
or crimes of moral turpitude or for any Patriot Act Offense (as defined below), or (d) is not
currently under investigation by any governmental authority for alleged criminal activity. For
purposes hereof, the term "Patriot Act Offense" means any violation of the criminal laws of the
United States of America or of any of the several states, or that would be a criminal violation if
committed within the jurisdiction of the United States of America or any of the several states,
relating to terrorism or the laundering of monetary instruments, including any offense under (a)
the criminal laws against terrorism; (b) the criminal laws against money laundering; (c) the Bank

Secrecy Act, as amended; (d) the Money Laundering Control Act of 1986, as amended, or the (e) Patriot Act. "Patriot Act Offense" also includes the crimes of conspiracy to commit, or aiding and abetting another to commit, a Patriot Act Offense. For purposes hereof, the term "Government Lists" means (i) the Specially Designated Nationals and Blocked Persons Lists maintained by Office of Foreign Assets Control ("OFAC"); (ii) any other list of terrorists, terrorist organizations or narcotics traffickers maintained pursuant to any of the Rules and Regulations of OFAC that Mortgagee notified Mortgagor in writing is now included in "Governmental Lists", or (iii) any similar lists maintained by the United States Department of State, the United States Department of Commerce or any other government authority or pursuant to any Executive Order of the President of the United States of America that Mortgagee notified Mortgagor in writing is now included in "Governmental Lists".

54.   **Intentionally Omitted.**

55.   **New York Tax Law Section 256.**

If, by reason of the additional sums that may become secured by the lien of this Mortgage pursuant to the terms hereof, a court or other governmental authority having jurisdiction at any time shall determine that this Mortgage is subject to Section 256 of the Tax Law of the State of New York, then Mortgagee reserves the right, in its discretion, to elect not to have such additional sums secured by this Mortgage and thereby reduce the amount of the debt secured hereby to a definite amount equal to the principal amount of the Note, interest thereon at the rate provided in the Note, plus any disbursements made to protect the security of this Mortgage, with interest on such disbursements at the Default Rate, plus any other sums as by statute or judicial interpretation now or hereafter may be permitted to be secured by the lien of a mortgage without incurring any additional mortgage recording tax. Any election by Mortgagee to so reduce the indebtedness secured by this Mortgage shall in no event be deemed a release, waiver or discharge by Mortgagee of Mortgagor's obligation to pay or reimburse Mortgagee for such sums and such obligation shall continue unimpaired and shall be a recourse obligation of Mortgagor, regardless of any other provisions set forth in this Mortgage, the Note or any guaranty of the obligations secured hereby that may limit recourse against Mortgagor or any other Person.

56.   **Counterparts**. This Mortgage may be executed in any number of counterparts, provided each of the parties hereto executed at least one counterpart; each such counterpart hereof shall be deemed to be an original instrument, but all such counterparts together shall constitute but one agreement. PDF, electronic and facsimile signatures shall have the same force and effect as original signatures.

57.   **Intentionally Omitted.**

58.   **Purpose of Loan.**

The Mortgagor represents to Mortgagee that the Loan evidenced by the Note and secured by this Mortgage is for business or commercial purposes only and not for personal, family, consumer or household purposes. The proceeds of the Loan shall be used only for payment of such items that have been approved by the Mortgagee.

59.     This Mortgage, the Note, and the Loan Documents are made in accordance with and pursuant to the Financing Order, a copy of which is annexed as **Exhibit B**.

IN WITNESS WHEREOF, Mortgagor has executed this instrument the day and year first above written.

_____

**Kenneth P. Silverman, Solely in his Capacity as Chapter 11 Trustee of the Estate of 305 East 61st Street Group LLC**

STATE OF NEW YORK               )
                                                       ) ss:
COUNTY OF NEW YORK         )

On the __ day of January 2020 before me, the undersigned, a Notary Public in and for said State, personally appeared, Kenneth P. Silverman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed this instrument.

_____

Notary Public

<u>Exhibit A</u>
Description of Real Property

**305-307 East 61st Street, New York, New York 10065**

| | |
|---|---|
| **Block:** | **1436** |
| **Lot:** | **5** |
| **County:** | **New York** |
| **State:** | **New York** |

The legal description of the Real Property is as follows:

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, City, County and State of New York, bounded and described as follows:

BEGINNING at a point on Northerly side of East 615t Street, distant 100 feet Easterly from the Northeasterly corner of East 61st Street and Second Avenue;

RUNNING THENCE Northerly and parallel with Second Avenue, 125 feet 5 inches;

THENCE Easterly and parallel with East 61st Street, 49 feet 6 inches;

THENCE Southerly and parallel with Second Avenue, 125 feet 5 inches to the Northerly side of East 61st Street;

THENCE Westerly along East 61st Street, 49 feet 6 inches to the point or place of BEGINNING.

Commonly known as: 305-307 East 61st Street, New York, New York 10065

Block: 1436

Lot: 5

Exhibit B
(Financing Order to be annexed)