# EXHIBIT C

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

In re:                                                          Chapter 11

305 EAST 61st STREET GROUP LLC,                                 Case No.: 19-11911 (SHL)

                    Debtor.
------------------------------------------------------------------x

### FINAL ORDER: (i) AUTHORIZING THE TRUSTEE TO OBTAIN POST-PETITION FINANCING AND GRANT LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS PURSUANT TO 11 U.S.C. §§ 105(a), 364(c) AND 364(d); (ii) GRANTING REPLACEMENT LIENS AND RIGHTS TO ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 105 AND 361; (iii) MODIFYING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362; (iv) SETTLING CLAIMS UNDER BANKRUPTCY RULE 9019, AND (v) GRANTING RELATED RELIEF

Upon the motion [ECF No. ___] ("**Motion**") of Kenneth P. Silverman ("**Trustee**"), in his capacity as Chapter 11 Trustee of the estate ("**Estate**") of 305 East 61st Street Group LLC ("**Debtor**"), seeking the entry of a final Order: (i) pursuant to §§ 105(a), 364(c) and 364(d) of title 11 of the United States Code ("**Bankruptcy Code**"), authorizing the Estate to obtain financing in the principal amount of up to $2,000,000.00 (the "**Financing**") from 305 E 61st Street Lender LLC ("**Lender**"), and grant liens and superpriority administrative expense status, upon the terms set forth herein and in certain loan documents, including: (a) a *Secured Promissory Note*; (b) a *Mortgage, Assignment of Leases and Rents and Security Agreement*, and (c) a *Settlement and Forbearance Agreement* in substantially the form of **Exhibits A, B**, and **D** to the Motion, and needed by the Trustee in order to perform his obligations on behalf of the Estate; (ii) granting replacement liens and rights to adequate protection pursuant to sections 105 and 361 of the Bankruptcy Code; (iii) modifying the automatic stay pursuant to section 362 of the Bankruptcy Code; (iv) settling claims under Bankruptcy Rule 9019; and (v) granting related relief; and upon the Declaration of the Trustee dated January ___, 2020 filed in support of the

Motion [ECF No. __] (the "**Trustee Declaration**"); and upon the notice of motion dated January __, 2020 with respect to the Motion (ECF No. __] (the "**Notice of Motion**"); and upon the Affidavit of Service evidencing proof of service of the Notice of Motion, the Motion and the Trustee Declaration filed with the Court [ECF No. __]; and upon the final hearing on the Motion conducted by the Court on February 5, 2020, the record of which is incorporated by reference herein; and due deliberation having been had thereon; and sufficient cause appearing therefor, this Court hereby makes the following findings of facts and conclusions of law:

A.       On June 10, 2019 ("**Petition Date**"), a voluntary petition was filed by the Debtor under Chapter 11 of the Bankruptcy Code.

B.       Pursuant to an Order of this Court dated October 24, 2019 [ECF No. 72], this Court directed the appointment of a Chapter 11 trustee of the Debtor pursuant to sections 1104(a)(1) and 1104(a)(2) of the Bankruptcy Code.

C.       Pursuant to an Order of this Court dated October 28, 2019 [ECF No. 79], this Court approved the appointment of Kenneth P. Silverman as Chapter 11 trustee of the Estate of the Debtor.

D.       The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334.

E.       The statutory predicates for the relief sought in the Motion and the basis for the approvals and authorizations contained in this Order include, without limitation, sections 105(a), 363(b) and (f), 364(c) and (d), and 502 of the Bankruptcy Code and Bankruptcy Rule 9019.

F.       This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (D), (K), (M), and (O).

2

G.      Venue of this case and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

H.      Sufficient notice of the relief sought in the Motion has been given and such notice complies with Bankruptcy Rule 4001(c), and no further notice is required. The Trustee has adequately disclosed all material facts necessary to permit the Court, the Debtor's creditors, and all other parties in interest to evaluate the merits of the Motion and the relief sought thereby. A reasonable opportunity to object or be heard regarding the relief requested in the Motion has been afforded to all interested persons and entities.

I.      The Debtor's Estate is the fee owner of that certain real property commonly known as 305-307 East 61st Street, New York, New York 10065 (Block: 1436, Lots: 5 (the "**Real Property**").

J.      The Lender is the due owner and holder of the following three secured loans made to the Debtor prior to the Petition Date:

> i.      The acquisition loan (the "**Acquisition Loan**") (i) evidenced by that certain *Secured Restated Promissory Note,* dated as of June 8, 2017, in the original principal amount of $20,000,000.00 (the "**Acquisition Loan Note**"), which was duly executed by the Debtor and delivered to Popular Bank (f/k/a Banco Popular North America) ("**PB**") and (ii) secured by, among other things, that certain *Mortgage Extension, Modification and Security Agreement* (the "**Acquisition Loan Mortgage**"), dated as of June 8, 2017 in the original principal amount of $20,000,000.00 encumbering the Real Property which was duly recorded in the City Register of the City of New York, County of New

York (the "**Register**") on July 7, 2017 as CRFN 2017000250851.
Copies of the Acquisition Loan Note and Acquisition Mortgage are
attached as Exhibits 2 and 3 to the Lender's Proof of Claim.[1]  The
Acquisition Loan Mortgage constitutes a first priority lien on the Real
Property and the other collateral described therein and secures the
Debtor's obligations under the Acquisition Loan and Acquisition Loan
Note.    The Acquisition Loan Note and the Acquisition Loan
Mortgage, together with all other documents evidencing, securing or
guarantying the Acquisition Loan, including, without limitation, the
Acquisition Allonge (defined below), the Guarantees (defined below),
and the Acquisition Assignment (defined below), are collectively
referred to herein as "**Acquisition Loan Documents**";

ii.    The building loan (the "**Building Loan**") (i) evidenced by that certain
(a) Building Loan Agreement, dated as of June 8, 2017, in the original
principal amount of up to $7,830,000.00 (the "**Building Loan
Agreement**"), which was duly executed and delivered by the Debtor
to PB, and (b) *Building Loan Note,* dated as of June 8, 2017, in the
original principal amount of up to $7,830,000.00 (the "**Building Loan
Note**"), which was duly executed and delivered by the Debtor to PB,
and (ii) secured by, among other things, that certain *Building Loan
Mortgage and Security Agreement* (the "**Building Loan Mortgage**"),

---

[1] Lender filed a proof of claim with respect to the Pre-Petition Loan Documents (as defined below), which proof of claim was assigned Claim No. 5 on the claims register maintained by the Court in this bankruptcy case (such proof of claim is referred to herein as the "**Proof of Claim**").

dated as of June 8, 2017, in the original principal amount of $7,830,000.00 encumbering the Real Property which was recorded in the Register on July 7, 2017 as CRFN 2017000250852. Copies of the Building Loan Note, the Building Loan Agreement, and the Building Loan Mortgage are attached as Exhibits 6, 7 and 8 to the Lender's Proof of Claim. The Building Loan Mortgage constitutes a first priority lien on the Real Property and the other collateral described therein and secures the Debtor's obligations under the Building Loan, the Building Loan Note, and the Building Loan Agreement. The Building Loan Agreement, the Building Loan Note and the Building Loan Mortgage, together with all other documents evidencing, securing or guarantying the Building Loan, including, without limitation, the Building Allonge (defined below), the Guarantees (defined below), and the Building Assignment (defined below) are collectively referred to herein as the "**Building Loan Documents**";

iii.    The project loan (the "**Project Loan**"; and together with the Acquisition Loan and the Building Loan, collectively, the "**Loans**") (i) evidenced by that certain (a) Project Loan Agreement dated as of June 8, 2017, in the original principal amount of up to $2,170,000.00 (the "**Project Loan Agreement**"; and together with the Building Loan Agreement, collectively the "**Loan Agreements**"), which was duly executed and delivered by the Debtor to PB, and (b) *Project Loan Note,* dated as of June 8 2017, in the original principal amount of up

5

to $2,170,000.00 (the "**Project Loan Note**"; and together with the Acquisition Loan Note and the Building Loan Note are collectively referred to herein as the "**Notes**"), which was duly executed and delivered by the Debtor to PB, and (ii) secured by, among other things, that certain *Project Loan Mortgage and Security Agreement* (the "**Project Loan Mortgage**"; and together with the Acquisition Loan Mortgage and the Building Loan Mortgage are collectively referred to herein as the "**Mortgages**"), dated as of June 8, 2017, in the original principal amount of $2,170,000.00 encumbering the Real Property which was recorded in the Register on July 7, 2017 as CRFN 2017000250853. Copies of the Project Loan Note, the Project Loan Agreement, and the Project Loan Mortgage are attached as Exhibits 10, 11 and 12 to the Lender's Proof of Claim. The Project Loan Mortgage constitutes a first priority lien on the Real Property and the other collateral described therein and secures the Debtor's obligations under the Project Loan, the Project Loan Note, and the Project Loan Agreement. The Project Loan Agreement, the Project Loan Note and the Project Loan Mortgage, together with all other documents evidencing, securing or guarantying the Project Loan, including, without limitation, the Project Allonge (defined below), the Guarantees (defined below), and the Project Assignment (defined below), are collectively referred to herein as the "**Project Loan Documents**".

K.    Each of the Loans are guaranteed by Jason D. Carter ("**Carter**") and Mitchell Adam Marks ("**Marks**"), pursuant to (x) that certain *Guarantee,* dated as of June 8, 2017 (the "**Payment Guarantee**"), which was duly executed and delivered by Carter and Marks (Carter and Marks are sometimes referred to collectively herein as the "**Guarantors**") and in favor of PB and (y) that certain *Guaranty of Completion,* dated as of June 8, 2017 (the "**Completion Guarantee**"; and together with the Payment Guarantee are collectively referred to herein as the "**Guarantees**") in favor of PB and which Completion Guaranty was duly executed by the Guarantors.

L.    Pursuant to, among other things, an allonge to the Acquisition Loan Note (the "**Acquisition Allonge**") and that certain *Assignment of Mortgage* (the "**Acquisition Assignment**"), dated as of November 15, 2018, PB duly assigned all of its rights, title and interests in and to the Acquisition Loan and Acquisition Loan Document to the Lender.[2]

M.    Pursuant to, among other things, an allonge to the Building Loan Note (the "**Building Allonge**") and a certain *Assignment of Mortgage* (the "**Building Assignment**"), dated as of November 15, 2018, PB duly assigned all of its rights, title and interests in and to the Building Loan and the Building Loan Documents to the Lender.

N.    Pursuant to, among other things, an allonge to the Project Loan Note (the "**Project Allonge**") and a certain *Assignment of Mortgage* (the "**Project Assignment**"; and together with the Acquisition Assignment and the Building Assignment, are collectively referred to herein as the "**PB Assignments**"), dated as of November 15, 2018, PB duly assigned all of its right, title and interest in and to the Project Loan and Project Loan Documents to the Lender.  Each of the PB Assignments have been duly recorded in the

---

[2] The term Lender as used herein may be used to describe both PB and 305 E 61st Street Lender LLC as successor-in-interest to PB.

Register. A copy of the Acquisition Assignment is attached as Exhibit 4 to the Lender's Proof of Claim. A copy of the Building Assignment is attached as Exhibit 9 to the Lender's Proof of Claim. A copy of the Project Assignment is attached as Exhibit 13 to the Lender's Proof of Claim. The Acquisition Loan Documents, the Building Loan Documents, and the Project Loan Documents are collectively referred to herein as "**Pre-Petition Loan Documents**."

O.     As a result of the above-described PB Assignments, the Lender is now the owner and holder of the Acquisition Loan, the Building Loan, the Project Loan and all of the Loan Documents and the Lender is entitled to enforce its rights under all of the Loan Documents.

P.     Lender has asserted that the aggregate amount that is owed by the Debtor to the Lender under and in connection with the Pre-Petition Loan Documents is $43,243,051.09[3] through December 31, 2019, plus all default rate interest accruing thereon, and all fees, costs, expenses, and other charges accrued, accruing, or chargeable with respect thereto all of which will continue to accrue until the Loans are paid in full (collectively, the "**Asserted Pre-Petition Obligations**").

Q.     The Trustee has carefully reviewed the Pre-Petition Loan Documents and the Asserted Pre-Petition Obligations and has determined in his business judgment that it is in the best interest of the Debtor and the Debtor's estate to enter into that certain Settlement and Forbearance Agreement dated as of January __, 2020, attached as Exhibit D to the Motion (the "**Settlement Agreement**"). Pursuant to the Settlement Agreement, among other things, (i) the Lender has

---

[3] This sum includes attorneys' fees and expenses and protective advances only through November, 2019. Additional attorneys' fees and expenses and protective advances have accrued and continue to accrue after November 30, 2019 and such additional amounts shall be added to the above-described sum.

agreed to provide the Financing to the Trustee pursuant to the Loan Documents (as defined below) and (ii) the Trustee has agreed to permanently settle, fix, and allow the amount of Lender's claim, under the Pre-Petition Loan Documents, in the sum of $41,093,000,[4] as of December 31, 2019, plus all interest and default rate interest accruing thereon, and all fees, costs, expenses (including, without limitation, attorneys' fees and expenses), and other charges accruing on or after January 1, 2020, or chargeable on or after January 1, 2020 with respect thereto (such aggregate amount is hereinafter referred to as the "**Allowed Pre-Petition Claim**").  In addition to having the Allowed Pre-Petition Claim, the Lender shall have, and reserves any and all rights to assert, the "Lender's Additional Claim" (as defined below) against the Debtor, the Estate, and each of the Guarantors. Lender's Additional Claim shall survive the Settlement Agreement and the Debtor, the Debtor's estate, and Guarantors are and remain bound by the Pre-Petition Loan Documents with respect thereto.  The "**Lender's Additional Claim**" shall mean any claims under the Completion Guaranty and, in addition, any contingent, unliquidated, and/or unknown claims for any indemnities, charges, costs, expenses, fees, and other obligations to which Lender is entitled to under the Pre-Petition Loan Documents, other than late fees and pre-December 31, 2019 default rate interest.  The Allowed Pre-Petition Claim and the Lender's Additional Claim are sometimes hereinafter collectively referred to as the "**Pre-Petition Obligations**".

R.      The Settlement Agreement was negotiated at arm's length and entered into in good faith by the Trustee and the Lender.  The Trustee's business decision to enter into the Settlement Agreement exceeds the lowest point in the range of reasonableness.

S.      The Allowed Pre-Petition Claim hereby constitutes an allowed, legal, valid,

---

[4] This sum includes interest, default rate interest, attorneys' fees and expenses and protective advances only through December 31, 2019. Additional interest, default rate interest, costs, and expenses (including, without limitation attorneys' fees and expenses) and protective advances have accrued and/or may continue to accrue on and after January 1, 2020 all such additional amounts shall be added to and be part of the Allowed Pre-Petition.

binding, enforceable and non-avoidable claim and obligation of the Trustee, the Debtor, and the

Debtor's estate, and is not subject to any offset, defense, counterclaim, avoidance,

recharacterization or subordination pursuant to the Bankruptcy Code or any other applicable law,

and neither the Estate, the Debtor, nor the Trustee possesses or will assert any claim,

counterclaim, setoff or defense of any kind, nature, or description which would in any way affect

the validity, amount, enforceability, and non-avoidability of any part of the Allowed Pre-Petition

Claim. Nothing herein shall in any way limit any obligations of the Guarantors concerning or

with respect to Allowed Pre-Petition Claim.

      T.     As of the Petition Date, the Allowed Pre-Petition Claim and Lender's Additional

Claim are fully secured pursuant to the Pre-Petition Loan Documents by valid, perfected,

enforceable and non-avoidable first priority security interests and liens granted by the Debtor to the

Lender upon all of the collateral and mortgaged property described in the Pre-Petition Loan

Documents existing as of the Petition Date and all rents, issues, profits, proceeds, and products

thereof whether prior to or after the Petition Date (collectively, together with any other property of

the Debtor's Estate (as used herein "**Estate**" shall include all items included under section 541 of

the Bankruptcy Code) in which a mortgage, security interest or lien was granted to the Lender

(or PB) prior to the Petition Date, being referred to herein as "**Pre-Petition Collateral**"), which

liens of the Lender are senior to all other liens on the Pre-Petition Collateral. The Trustee, the

Debtor, and the Estate do not possess and will not assert any claim, counterclaim, setoff, or

defense of any kind, nature or description which would in any way affect the validity, amount,

enforceability and non-avoidability of any part of the Allowed Pre-Petition Claim or any of the

Lender's claims, liens, mortgages, or security interests in any of the Pre-Petition Collateral. The

acknowledgment and agreement by the Trustee, the Debtor, and the Estate of the Allowed Pre-

Petition Claim and the liens, rights, priorities and protections granted to or in favor of the Lender as set forth herein and in the Pre-Petition Loan Documents and the Settlement Agreement shall constitute a proof of claim on behalf of the Lender in this case and the Court hereby orders that the Lender shall not be required to file any further proof of claim in this case.

U.     The Loan Documents (as defined below) and any other documents memorializing the provisions thereof were negotiated and entered into (or will be entered into) in good faith and pursuant to arm's-length bargaining positions by and between the Trustee and the Lender. Any credit extended to Trustee under the terms of this Order shall be deemed to have been extended in good faith by the Lender as that term is used in section 364(e) of the Bankruptcy Code.

V.     The Trustee is unable to obtain any financing without granting a senior first priority lien on all property and assets of the Debtor and its Estate pursuant to section 364(d)(1) of the Bankruptcy Code, which lien shall have priority over any other lien or encumbrance of any kind or nature (whether now existing or hereafter created) on any property or assets of the Debtor and its Estate, whether now or hereafter existing and wherever located.

W.     The Trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.

X.     The terms and conditions of the Financing, the Loan Documents and the settlement of Lender's claims as set forth herein and thereon, including, without limitation, the liens and provisions set forth therein and herein, are: (i) fair, just, and reasonable; (ii) are ordinary and appropriate for secured financing to a Chapter 11 trustee; (iii) reflect the Trustee's exercise of his prudent business judgment consistent with his fiduciary duties; (iv) are supported by reasonably equivalent value and consideration; and (v) are necessary in order to preserve the assets of the Debtor's Estate.

Y.      Sufficient cause exists for immediate entry of this Order pursuant to Bankruptcy
Rule 4001(c)(2). No party appearing in this case has filed or made an objection to the relief
sought in the Motion and the entry of this Order, or if any objections were made (to the extent
such objections have not been withdrawn) all objections to the Motion are hereby overruled.

Based upon the forgoing, and after due consideration and good cause appearing therefor,
it is hereby ORDERED, DETERMINED, ADJUDGED AND DECREED AS FOLLOWS:

1.      The Settlement Agreement is hereby approved in all respects and the Trustee is
hereby authorized to enter into and perform under the Settlement Agreement in all respects.

2.      The Trustee is hereby authorized and empowered to immediately borrow and
obtain the Financing from the Lender and to incur indebtedness and obligations owing to Lender
pursuant to the terms and conditions of this Order and the Loan Documents (as defined below).
The Trustee shall use the proceeds of the Financing in accordance with the Loan Documents.

3.      The Trustee is authorized to enter into and deliver: (a) a *Secured Promissory Note*
("**Note**"); (b) a *Mortgage, Assignment of Leases and Rents and Security Agreement* (the
"**Mortgage**"); and (c) the Settlement Agreement, each in substantially the forms of **Exhibits A**,
**B**, and **D** to the Motion or containing such non-material changes or modifications thereto as the
Trustee shall, in his sole discretion, determine to be reasonable, necessary or appropriate.

4.      The Trustee is authorized to enter into, execute and deliver to the Lender, any and
all other documents, agreements and instruments contemplated by, related to or to be delivered
pursuant to or in connection with the Financing from the Lender, which are reasonably requested
by the Lender to evidence or effectuate any of the transactions or other matters contemplated by
or set forth in the Loan Documents or this Order, each as may be amended hereafter from time to
time without further order of this Court (and all such other documents, agreements or

12

instruments, together with the Note, the Mortgage, and the Settlement Agreement are collectively referred to herein as "**Loan Documents**"). The Trustee's execution and delivery of the Note, Mortgage, Settlement Agreement and/or any other Loan Document shall be conclusive evidence of Trustee's determination that the Note, Mortgage, Settlement Agreement and each such other Loan Document is reasonable, necessary and appropriate.

5.    The Trustee is further authorized to perform his obligations under the Loan Documents on behalf of the Estate of the Debtor, and to take any and all actions, and execute any and all documents, that the Trustee determines to be reasonable, necessary or appropriate to effectuate and/or to consummate the transactions contemplated in the Loan Documents as the Trustee, in his sole discretion, determines may be reasonable or necessary to provide capital improvements to the Real Property and maintain the Real Property in accordance with the Loan Documents. The Trustee's performance of any such action or execution of any such document shall be conclusive evidence of the Trustee's determination that such action and/or document is reasonable and necessary.

6.    The Loan Documents (including, without limitation, the Note, the Mortgage, and the Settlement Agreement) and each term set forth therein are approved and are hereby incorporated into the terms and conditions of this Order. All of such terms, conditions, and covenants shall be sufficient and conclusive evidence of the borrowing arrangements by and between the Trustee and the Lender and of the Trustee's adoption of all of the terms, conditions, and covenants of the Loan Documents for all purposes, including, without limitation, to the extent applicable, the payment of all "Debt" (as defined in the Mortgage) arising under or in connection with the Loan Documents, including, without limitation, all principal, interest, fees and expenses of any kind, including, without limitation, all of Lender's reasonable attorneys' fees and legal

expenses, as more fully set forth in the Loan Documents (in all cases, whether absolute or contingent, fixed, or liquidated or unliquidated, matured or unmatured and whether now or hereafter existing or arising, collectively referred to herein as "**Post-Petition Obligations**"). (The Post-Petition Obligations and the Pre-Petition Obligations are collectively referred to herein as "**Obligations**").

7.    The Allowed Pre-Petition Claim shall be, and hereby is, allowed in full, shall not be subject to any setoff, recoupment, counterclaim, deduction, or claim of any kind, and shall not be subject to any further objection or challenge by any party at any time, and Lender's pre-petition liens on and security interest in the Pre-Petition Collateral shall be, and hereby is, determined legal, valid, perfected, enforceable, and unavoidable for all purposes and of first and senior priority. All of the Obligations hereby shall constitute legal, valid, and binding obligations of the Trustee, the Debtor, and Debtor's estate, and are hereby enforceable against the Trustee, the Debtor, and Debtor's estate, and their successors or assigns (including, without limitation, any successor trustee or other estate representative in this Chapter 11 case, or subsequent Chapter 7 or Chapter 11 case) in accordance with their respective terms.

8.    Subject to the terms and conditions of the Loan Documents, after execution and delivery of the Note and Mortgage, the Trustee and the Lender may amend, modify, supplement, or waive any provision of the Loan Documents (an "**Amendment**") without further approval or order of this Court so long as such Amendment is not material (for purposes hereof, a "**material**" Amendment shall mean any Amendment that operates to increase the rate of interest other than as currently provided in the Loan Documents, increase the Maximum Outstanding Principal Sum (as defined in the Note), add specific new events of default or enlarge the nature and extent of default remedies available to Lender following an event of default, or otherwise modify any financial

terms and conditions in any Loan Documents in a manner materially less favorable to the Trustee, in the good faith judgment of the Lender and the Trustee). Any material Amendment to the Loan Documents must be approved by the Court to be effective.

9.      The Trustee is authorized to pay all sums which the Trustee determines are reasonable, necessary or appropriate to effectuate, consummate and perform under the transactions contemplated under the Loan Documents and the Pre-Petition Loan Documents, including, without limitation, all principal, interest and default rate interest, fees, expenses and any other amounts required or allowed to be paid in accordance with the Loan Documents and the Pre-Petition Loan Documents, or which may arise therefrom, all without further order of this Court. The Trustee's payment of any amounts to Lender shall be conclusory evidence of the Trustee's determination that such payments are reasonable, necessary and appropriate to effectuate, consummate and perform under the Loan Documents and the Pre-Petition Loan Documents. No payments made by the Trustee to the Lender shall be avoidable or recoverable from Lender under sections 544, 547, 548, 550, 553 or any other provision of the Bankruptcy Code or on account of any other claim, charge, assessment, or other liability, whether by application of the Bankruptcy Code, other law, or otherwise. Lender shall apply any payments to the Obligations first to the Obligations under the Note and Mortgage, and then to the Obligations under the Pre-Petition Loan Documents.

10.     To secure the prompt payment and performance of any and all Post-Petition Obligations of the Trustee to Lender of whatever kind or nature or description, absolute or contingent, now existing or hereafter arising, Lender shall have and is hereby granted, effective as of the date hereof, valid and perfected first priority security interests, mortgages and liens, superior to all other liens, claims and/or security interests that any creditor of the Debtor's Estate may have,

in and upon all of the Collateral (as such term is defined in the Mortgage), including, without

limitation, the Real Property (the liens granted to the Lender pursuant to this section 10 of this

Order and the Loan Documents are collectively referred to herein as "**Post-Petition Liens**").

      11.    Pursuant to section 364(d)(1) of the Bankruptcy Code, the mortgages, security

interests and liens granted to the Lender under the Loan Documents and this Order in the Collateral

to secure all Post-Petition Obligations: (a) shall be and shall continue to be first and senior in

priority to all other interests, security interests, mortgages, liens and encumbrances of every kind,

nature and description, whether created consensually, by an order of this Court or any other Court,

or otherwise, including, without limitation, liens or interests granted in favor of third parties in

conjunction with sections 363, 364, and/or any other sections of the Bankruptcy Code or other

applicable law; and (b) shall not at any time whatsoever be made subject or subordinate to, or

made *pari passu* with, any other lien, security interest or claim against any property of the

Trustee or the Debtor's Estate, whether any such liens now exist or are hereafter created,

pursuant to sections 363 or 364 of the Bankruptcy Code or otherwise.

      12.    This Order shall be sufficient and conclusive evidence of the priority, perfection,

and validity of the Post-Petition Liens and the Replacement Liens (as defined below), effective as

of the date and time of entry of this Order, without any further act and without regard to any other

federal, state, or local requirements or law requiring notice, filing, registration, recording, or

possession of the Collateral or other act to validate or perfect such security interest, mortgage, or

liens including, without limitation any control agreements with any financial institutions, banks or

securities intermediary holding any depository, brokerage, or securities account consisting of

Collateral (a "**Perfection Act**"). Notwithstanding the foregoing, if the Lender shall, in its sole

discretion, elect for any reason to file, record, or otherwise effectuate any Perfection Act, the

Lender is hereby authorized to perform such act and the Trustee is hereby authorized to perform such act to the extent reasonably necessary or required by the Lender, which act or acts shall be deemed to have been accomplished as of the date and time of entry of this Order notwithstanding the date and time actually accomplished, and in such event, the subject filing or recording office is authorized to accept, file, and/or record any document in regard to such act in accordance with applicable law without payment of any kind. Lender may choose to file, record, or present a certified copy of this Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file, or record such certified copy of this Order in accordance with applicable law. Should the Lender so choose and attempt to file, record, or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive, or alter the validity, enforceability, attachment, or perfection of the Post-Petition Liens by virtue of entry of this Order.

13.    Post-Petition Obligations shall have superpriority in payment afforded by section 364(c)(1) of the Bankruptcy Code ("**Superpriority Claim**"), which shall have priority in right of payment over any and all other unsecured obligations, liabilities, indebtedness, and claims of any kind and nature, now in existence or hereafter incurred by the Trustee (or any successor trustee whether in this case or any subsequent Chapter 7 case) including, without limitation, any and all administrative expenses of the kinds specified or ordered pursuant to sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1114, and other sections of the Bankruptcy Code, including those resulting from the conversion of this to a case under Chapter 7 of the Bankruptcy Code, and shall at all times be senior to the rights of the Trustee, any successor trustee, or any creditor or other party in interest in this case or any subsequent proceedings or cases under the Bankruptcy Code.

14.    As adequate protection to Lender for the liens, rights, priorities, claims and
protections granted to it pursuant to any Pre-Petition Loan Documents, the Lender is hereby
granted: (a) replacement liens on all of the Collateral ("**Replacement Liens**") to the extent of any
diminution in the value of its pre-petition liens and security interests in all Pre-Petition Collateral
securing the Pre-Petition Obligations, including any diminution in such Pre-Petition Collateral that
may result or arise from the Trustee's use, sale, lease, depreciation, decline in market price or
otherwise as to the Pre-Petition Collateral, in each case resulting or arising from and after the
Petition Date (collectively, "**Collateral Diminution**"), which Replacement Liens shall be junior
and subordinate in all respects to the Post-Petition Liens, and (b) a priority administrative expense
claim pursuant to section 507(b) of the Bankruptcy Code in respect of any and all Collateral
Diminution ("**Adequate Protection Administrative Claim**") having priority over all any and all
other unsecured obligations, liabilities, indebtedness, and claims of any kind and nature, now in
existence or hereafter incurred by the Debtor or the Trustee (or any successor trustee in this case
or any subsequent chapter 7 case), including, without limitation, any and all administrative
expenses of the kinds specified or ordered pursuant to sections 105, 326, 328, 330, 331, 503(b),
506(c), 507(a), 507(b), 546(c), 726, 1114, and other sections of the Bankruptcy Code, including
those resulting from the conversion of this case to a case under Chapter 7 of the Bankruptcy Code,
and shall at all times be senior to the rights of the Trustee, any successor trustee, or any creditor or
other party in interest in this case or any subsequent proceedings or cases under the Bankruptcy
Code; provided, however, the Adequate Protection Administrative Claim shall be subject and
subordinate in all respects to Lender's Superpriority Claim and the Carve-Out Expenses (as
defined below).

15.    The Lender's liens, claims and security interests in the Collateral shall be subject

only to the right of payment of the following expenses (**"Carve Out Expenses"**):

    a.  Statutory fees and interest payable to the U.S. Trustee pursuant to 28 U.S.C. section 1930(a)(6);

    b.  Subject to the terms and conditions of this Order, in the event of the closing of a sale of the Real Property (in whole) to Lender (or any designee or assignee thereof), which sale is conducted in accordance with a process and terms and conditions which have been approved by Lender, the commissions (but not expenses) of any retained real estate broker(s) but only to the extent: (i) Lender has agreed in writing to the retention of such particular broker(s) and the terms and commissions thereof; and (ii) such commission shall not exceed the aggregate sum of one-half percent (0.5%) of the amount bid by the Lender (or any designee or assignee thereof) in the event that Lender (or any designee or assignee thereof) is the successful bidder and takes title to the Real Property;

    c.  Subject to the terms and conditions of this Order, the unpaid and outstanding: (i) reasonable commissions, fees and expenses of the Trustee approved by a final order of the Court pursuant to section 326 of the Bankruptcy Code (**"Allowed Trustee Fees"**); and (ii) the reasonable fees and expenses actually incurred on or after October 28, 2019 and approved by a final order of the Court pursuant to sections 327, 328, 330, or 331 of the Bankruptcy Code (collectively, **"Allowed Professional Fees"**) by the attorneys and accountants retained under section 327 of the Bankruptcy Code by the Trustee (collectively, the **"Professionals"**), in a cumulative, aggregate sum for both the Trustee and all Professionals not to exceed $1,500,000 (**"Professional Fee Carve Out"**) but excluding any real estate

broker(s), which shall be subject to Section 15(b), provided that if the Debtor's case is converted to one under Chapter 7 of the Bankruptcy Code, the sum of $2,000 shall be reserved from the Professional Fee Carve Out for any post-conversion expenses of the Chapter 7 trustee.

16.    Notwithstanding anything to the contrary in this Order, the Professional Fee Carve Out shall not be used to pay any Allowed Professional Fees incurred in connection with any of the following: (a) an assertion or joinder in (or investigation into) any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief: (i) challenging the legality, validity, priority, perfection, or enforceability of any of the Obligations or the Lender's claims and liens on and security interests in any Pre-Petition Collateral or the Collateral, (ii) invalidating, setting aside, avoiding, or subordinating, in whole or in part, the Lender's claim for the Obligations or the Lender's liens on and security interests in any Pre-Petition Collateral or the Collateral, or (iii) preventing, hindering, or delaying the Lender's assertion or enforcement of any lien, claim, right or security interest or realization upon any Pre-Petition Collateral or the Collateral, (b) a request to use any cash collateral (as such term is defined in section 363 of the Bankruptcy Code) without the prior written consent of the Lender, (c) a request for authorization to obtain post-petition loans or other financial accommodations pursuant to sections 364(c) or (d) of the Bankruptcy Code or otherwise other than from the Lender unless such other financial accommodations repay to Lender all Obligations indefeasibly in full in accordance with this Order and the Pre-Petition Loan Documents and the Loan Documents, simultaneously within the closing of any such other financial accommodations, (d) the commencement or prosecution of any action or proceeding of any claims, causes of action, or defenses against the Lender or any of their respective officers, directors, members, employees,

agents, attorneys, affiliates, assigns, or successors, including, without limitation, any attempt to

recover or avoid any claim or interest from the Lender under Chapter 5 of the Bankruptcy Code, or

(e) any act which has or could have the effect of materially and adversely modifying or

compromising any of the rights and remedies of the Lender, or which is contrary, in a manner that

is material and adverse to the Lender to any term or condition set forth in or acknowledged by this

Order, any of the Pre-Petition Loan Documents or any of the Loan Documents.

17.    At the Lender's sole and absolute discretion, Lender may fund at any time and in

any increment in Lender's sole and absolute discretion an amount equal to the Carve-Out Expenses

by, among other things, making one or more Advances (as defined in the Note), to be added to the

Obligations owing by the Debtor and the Estate to the Lender in order to pay any Professional in

respect of the Professional Fee Carve-Out or any other party entitled to receive payment in respect

of a Carve Out Expense.

18.    Any payment or reimbursement made either directly by or on behalf of the Lender

at any time or by or on behalf of the Trustee in respect of any Allowed Professional Fees, Allowed

Trustee Fees, or any fees and expenses of the Trustee or any of the Trustee's Professionals prior to

the approval thereof by this Court shall, in either case, permanently reduce the amount of the

Professional Fee Carve Out on a dollar-for-dollar basis. Lender's obligation to fund or otherwise

pay the Professional Fee Carve Out and the other Carve Out Expenses shall be added to and made

a part of the Post-Petition Obligations, secured by the Collateral, and entitle the Lender to all of the

rights, claims, liens, priorities and protections under this Order, the Loan Documents, the

Bankruptcy Code, and/or applicable law. Payment of any Carve Out Expenses, whether by or on

behalf of the Lender (or by or on behalf of the Trustee), shall not and shall not be deemed to reduce

the Obligations and shall not and shall not be deemed to subordinate any of the Lender's liens and

security interests (on account of any of the Obligations) in the Pre-Petition Collateral or in the

Collateral or its Superpriority Claim or Adequate Protection Administrative Claim to any junior

pre-petition or post-petition lien, interest, or claim in favor of any other party. Except as otherwise

provided herein with respect to the Professional Fee Carve Out and the other Carve Out Expenses,

the Lender shall not be responsible for the direct or indirect payment or reimbursement of any fees

or disbursements of the Trustee or any Professionals incurred in connection with this case (or any

subsequent case under any chapter of the Bankruptcy Code), and nothing in this Order shall be

construed to obligate the Lender in any way, to pay compensation to or to reimburse expenses of

the Trustee or any Professional, or to ensure that the Trustee or the Estate has sufficient funds to

pay such compensation or reimbursement.

19.    The automatic stay imposed under section 362(a) of the Bankruptcy Code shall

be, and hereby is, modified as to the Lender to allow implementation of the provisions of this

Order and enforcement of Lender's rights and remedies under the Loan Documents, without

further notice or any further order of the Bankruptcy Court, including, without limitation: (a) to

implement the post-petition financing arrangements authorized by this Order and pursuant to the

terms of the Loan Documents, (b) to take any act to create, validate, evidence, attach, or perfect

any lien, security interest, right or claim in the Collateral, and (c) to assess, charge, collect,

advance, deduct, and receive payments with respect to the Obligations, including, without

limitation, all interests, fees, costs, expenses permitted under the Loan Documents, and apply such

payments to the Post-Petition Obligations pursuant to the Loan Documents. In addition, and

without limiting the foregoing, upon the occurrence of any default under the Loan Documents,

subject to the provisions of the Loan Documents and any notice provisions therein, the

transmission of which shall not be a violation of the automatic stay under section 362 of the

Bankruptcy Code, the Lender shall be entitled to take any action and exercise all rights and remedies provided to it by this Order, the Loan Documents and/or applicable law as it may deem appropriate in its sole discretion to, among other things, proceed against and realize upon the Collateral and any other assets and properties of the Estate upon which the Lender has been or may hereafter be granted liens and security interests to obtain the full and indefeasible repayment of all Post-Petition Obligations.

20.    At all times during this case, and whether or not a default has occurred under the Loan Documents, the Trustee irrevocably waives any rights that it may have to seek authority: (a) to use cash collateral of Lender under section 363 of the Bankruptcy Code; (b) to obtain post-petition loans or other financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code from any person or entity, other than from the Lender, unless the full amount of all Obligations is paid to Lender by wire transfer to Lender on the date the closing of any such other post-petition loan; (c) to challenge the application of any payments authorized by this Order pursuant to section 506(b) of the Bankruptcy Code or otherwise; (c) to assert that the value of any Pre-Petition Collateral is less than the Pre-Petition Obligations; or (d) to propose or support a plan of reorganization that does not provide for the indefeasible payment in full and satisfaction of all Obligations owed to the Lender by the Debtor and the Estate on the effective date of such plan.

21.    Except for Carve-Out Expenses, no costs or expenses of administration which have been or may be incurred in this case at any time shall be charged against the Lender or the Collateral pursuant to section 506(c) of the Bankruptcy Code without the prior written consent of the Lender, and no such consent shall be implied from any other action, inaction, or acquiescence by the Lender.

22.    In the event the Trustee, the Debtor or the Estate seek to sell or in any way transfer, whether in whole or in part, the Real Property, whether pursuant to a sale under Section 363 of the Bankruptcy Code, a transaction under a plan, or otherwise, Lender shall have at all times the right to credit bid the full amount of both the Allowed Pre-Petition Claim and the amount owed to Lender under the Loan Documents.

23.    Until all of the Obligations owed to the Lender shall have been indefeasibly paid and satisfied in full and without further order of the Court, no other party with notice of this Order shall foreclose or otherwise seek to enforce any junior lien or claim in any Collateral.

24.    Notwithstanding: (a) any stay, modification, amendment, supplement, vacating, revocation, or reversal of this Order, the Loan Documents, or any term hereunder or thereunder; (b) the failure to obtain a final order pursuant to Bankruptcy Rule 4001(c)(2); or (c) the dismissal or conversion of this case (a "**Subject Event**"), (x) the acts taken by Lender in accordance with this Order, and (y) the Post-Petition Obligations incurred or arising prior to the Lender's actual receipt of written notice from the Trustee expressly describing the occurrence of such Subject Event shall be governed in all respects by the original provisions of this Order, and the acts taken by Lender in accordance with this Order, and the Post-Petition Liens granted to the Lender, and all other rights, remedies, privileges, and benefits in favor of the Lender pursuant to this Order and the Loan Documents shall remain valid and in full force and effect pursuant to section 364(e) of the Bankruptcy Code. For purposes of this Order, the term "appeal", as used in section 364(e) of the Bankruptcy Code, shall be construed to mean any proceeding for reconsideration, amending, rehearing, or re-evaluating this Order by this Court or any other tribunal.

25.    Unless the Obligations will be paid in full in cash to Lender prior to the Maturity Date (as defined in the Note), the Trustee shall not sell, transfer, lease, encumber or otherwise

dispose of any portion of the Collateral without the prior written consent of the Lender (and no such

consent shall be implied, from any other action, inaction or acquiescence by the Lender).

26.     This Order shall be binding upon the Trustee, all parties in interest in this case, and

their respective successors and assigns, including any trustee or other fiduciary appointed in this case

or any subsequently converted bankruptcy case(s) of the Debtor. This Order shall also inure to the

benefit of Lender, the Trustee, the Estate, and their respective successors and assigns. The provisions

of this Order and the Loan Documents, and any and all rights, remedies, privileges, and benefits in

favor of the Lender provided or acknowledged in this Order, and any actions taken pursuant thereto,

shall be effective immediately upon entry of this Order pursuant to Bankruptcy Rules 6004(g) and

7062, shall continue in full force and effect, and shall survive entry of any such other order,

including, without limitation, any Order which may be entered confirming any plan of

reorganization, converting this case to any other chapter under the Bankruptcy Code, or

dismissing this case. Any Order dismissing this case under section 1112 of the Bankruptcy Case

or otherwise shall be deemed to provide (in accordance with sections 105 and 349 of the

Bankruptcy Code) that: (a) the Superpriority Claim and Lender's liens in the Collateral shall

continue in full force and effect notwithstanding such dismissal until all Debt (as defined in the

Mortgage) is indefeasibly paid and satisfied in full; and (b) this Court shall retain jurisdiction,

notwithstanding such dismissal, for the purposes of enforcing the Superpriority Claim and liens

in the Collateral.

27.     The rights, remedies, powers, privileges, liens, and priorities of the Lender as

contemplated herein shall not be modified, altered or impaired by any subsequent order of this

Court or any other court (including, but not limited to, any financing order or any confirmation

order), by any plan or reorganization or liquidation in this case, or any successor case, without

the express prior written consent of the Lender, unless the Financing has been indefeasibly paid in full in cash and completely satisfied, and the commitments of the Debtor as set forth in the Loan Documents have been terminated.

28.     This Court shall retain jurisdiction to enforce the provisions of this Order and the Loan Documents and to resolve any disputes concerning this Order, the Loan Documents, the distribution of the loan proceeds or the rights and duties of the parties thereunder.

29.     This Order may be recorded in the land records in which title to any property of the Trustee or Debtor's Estate granted or pledged as security in connection with the Financing is registered or recorded. Each and every federal, state and local governmental agency or department is hereby directed to accept and record this Order any and all documents and instruments necessary and appropriate to consummate the transactions (including, without limitation, the granting and perfection of any mortgage, security interest, and other liens) contemplated by the Loan Documents and this Order, all without payment of any fee.

30.     The Trustee is authorized to pay, disburse or reserve, as the case may be, the distributions provided for under the Loan Documents from the proceeds of the Financing pursuant to the Loan Documents, together with the costs and expenses under the Loan Documents payable by the Trustee.

31.     The Trustee shall hold the balance, if any, of the proceeds of the Financing not paid or disbursed after any Advance (as defined in the Note) in a segregated account and shall distribute said proceeds only in accordance with the terms of the Loan Documents.

Dated: January __, 2020
      New York, New York

                                            _____
                                            Hon. Sean H. Lane
                                            United States Bankruptcy Judge